RAB/LB
F.#2023R00527

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                          Docket No. 23-CR-516 (KAM)

CHRISTOPHER TERRANOVA,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MOTIONS *IN LIMINE*

BREON PEACE
United States Attorney
Eastern District of New York

Rachel A. Shanies
Lauren Bowman
Assistant U.S. Attorneys
      (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

RELEVANT BACKGROUND ................................................................................... 2

ARGUMENT ............................................................................................................. 6

   I.   The Court Should Issue an Order of Protection Pursuant to 18 U.S.C. §§ 3509(d)(3)(A)
       and 3771 Protecting the Victims' Names and Other Identifying Information From Public
       Disclosure ......................................................................................................... 6

      A.   Applicable Law ............................................................................................ 6

      B.   Discussion ................................................................................................. 10

   II.  Evidence and Argument Regarding Any Sexual Behavior of John Does 1-4 with Anyone
       Other Than the Defendant is Inadmissible Under Federal Rule of Evidence 412 ............ 14

      A.   Applicable Law .......................................................................................... 14

      B.   Discussion ................................................................................................. 15

         i.    The Narrow Exceptions to Rule 412's General Policy of Exclusion Do Not
         Apply ................................................................................................... 15

         ii.   The Exclusion of Other Sexual History Evidence Does Not Violate the Defendant's
         Constitutional Right to Present a Defense ......................................................... 16

         iii.  Any Other Sexual History Evidence Should be Excluded Under Federal Rule of
         Evidence 403 ........................................................................................ 17

  III. Evidence Regarding the Defendant's Possession of Child Sexual Exploitation Material
       Involving Minors Other than John Does 1-4 is Admissible ............................................ 18

      A.   Evidence Regarding the Defendant's Possession of Child Sexual Exploitation Material
         Involving Minors Other than John Does 1-4 is Admissible Pursuant to Federal Rule of
         Evidence 414 ........................................................................................ 19

         i.    Background of Federal Rule of Evidence 414 .................................................... 19

         ii.   Discussion ............................................................................................ 23

      B.   Evidence of the Defendant's Possession of Child Sexual Exploitation Material
         Involving Minors Other than John Does 1-4  is Admissible Pursuant to Federal Rule of
         Evidence 404(b) ..................................................................................... 26

         i.    Background of Federal Rule of Evidence 404(b) ................................................ 26

ii.    Discussion ................................................................................................ 27

a.    Evidence of the Defendant's Other Acts is Admissible Under Federal Rule of Evidence 404(b) ....................................................................................... 27

b.    The Defendant's Other Acts are Not More Prejudicial than Probative ............... 29

IV.  The Court Should Allow The Undercover Law Enforcement Officer Who Communicated with the Defendant to Testify Using A Pseudonym or a UC Identifier ........................... 30

A.    Applicable Law ...................................................................................... 31

B.    Discussion ............................................................................................ 32

V.   The Court Should Allow the Government to Admit Statements by John Doe 4 to His Mother Regarding the Charged Conduct For a Non-Hearsay Purpose ............................ 34

A.    Applicable Law ...................................................................................... 34

B.    Discussion ............................................................................................ 36

VI.  The Court Should Allow the Government to Authenticate The Defendant's Cellphone Extraction by Certification ............................................................................ 37

A.    Applicable Law ...................................................................................... 37

B.    Discussion ............................................................................................ 38

VII. The Court Should Preclude Evidence and Argument Concerning Possible Punishment and Collateral Consequences ......................................................................... 40

A.    Applicable Law ...................................................................................... 40

B.    Discussion ............................................................................................ 41

CONCLUSION ................................................................................................ 42

## TABLE OF AUTHORITIES

Cases

Alford v. United States, 282 U.S. 687 (1931)..............................................................7, 8

Alvarado v. Burge, No. 05-CV-1851, 2006 WL 1840020 (S.D.N.Y. June 30, 2006)..................32

Ayala v. Speckard, 131 F.3d 62 (2d Cir. 1997) ...............................................................31

Brady v. Maryland, 373 U.S. 83 (1963) .........................................................................33

California v. Green, 399 U.S. 149 (1970).........................................................................7

Chambers v. Mississippi, 410 U.S. 284 (1970) ...........................................................7, 31

Davis v. Alaska, 415 U.S. 308 (1974) ...........................................................................42

Delaware v. Fensterer, 474 U.S. 15 (1985).....................................................................31

Delaware v. Van Arsdall, 475 U.S. 673 (1986) ...........................................................7, 17

Doe v. United States, 666 F.2d 43 (4th Cir. 1981) ..........................................................17

Dutton v. Evans, 400 U.S. 74 (1970).............................................................................31

Giglio v. United States, 405 U.S. 150 (1972) ..................................................................33

Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty., 457 U.S. 596 (1982) ..................................6

Johnson v. Elk Lake School Dist., 283 F.3d 138 (3d Cir. 2002) ............................................21

Jones v. Goodwin, 982 F.2d 464 (11th Cir. 1993)............................................................18

Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009) .....................................................38

Nelson v. Crowley, No. 07-CV-849, 2009 WL 498909 (S.D.N.Y. Feb. 23, 2009).....................32

Roviaro v. United States, 353 U.S. 53 (1957) .................................................................31

Shannon v. United States, 512 U.S. 573 (1994) ..............................................................40

Smith v. Illinois, 390 U.S. 129 (1968)........................................................................7, 8

Taylor v. Illinois, 484 U.S. 400 (1988).........................................................................16

United States ex rel. Lloyd v. Vincent, 520 F.2d 1272 (2d Cir. 1975).......................................31

United States v. Alimehmeti, 284 F. Supp. 3d 477 (S.D.N.Y. 2018) ..................................32, 34

United States v. Alvarez, 601 F. App'x 16 (2d Cir. 2015) ........................................................ 14

United States v. Anderson, 563 F. Supp. 3d 691 (E.D. Mich. 2021)........................................ 39

United States v. Archambault, 740 F. App'x 195 (2d Cir. 2018) .............................................. 20

United States v. Asainov, No. 19-CR-402 (NGG) (E.D.N.Y.)................................................... 32

United States v. Axsom, 761 F.3d 895 (8th Cir. 2014) ............................................................. 25

United States v. Baldassare, No. 11-CR-801 (JBW) (E.D.N.Y.) .............................................. 32

United States v. Barnason, 852 F. Supp. 2d 367 (S.D.N.Y. 2012)........................................... 25

United States v. Bennett, 409 F.2d 888 (2d Cir. 1969)........................................................ 8, 12

United States v. Bifield, 702 F.2d 342 (2d Cir. 1983) .............................................................. 17

United States v. Blume, 967 F.2d 45 (2d Cir. 1992) ................................................................ 41

United States v. Bout, 651 Fed. App'x 62 (2d Cir. 2016) ........................................................ 38

United States v. Brand, 467 F.3d 179 (2d Cir. 2006) ............................................................... 29

United States v. Cavallaro, 553 F.2d 300 (2d Cir. 1977)............................................................ 8

United States v. Cephus, 684 F.3d 703 (7th Cir. 2012) ............................................................ 15

United States v. Colon, 880 F.2d 650 (2d Cir. 1989) ............................................................... 27

United States v. Cortez-Grandados, No. 11-CR-657 (SLT) (E.D.N.Y.) ................................... 10

United States v. Cunningham, 103 F.3d 553 (7th Cir. 1996) .................................................... 29

United States v. Daly, 842 F.2d 1380 (2d Cir. 1988) ............................................................... 36

United States v. Davis, 624 F.3d 508 (2d Cir. 2010)................................................................ 23

United States v. Dhingra, 371 F.3d 557 (9th Cir. 2004)........................................................... 28

United States v. DiMarzo, 80 F.3d 656 (1st Cir. 1996) ............................................................ 41

United States v. Doe, 655 F.2d 920 (9th Cir. 1981) ................................................................. 11

United States v. Drewry, 365 F.3d 957 (10th Cir. 2004).................................................... 23, 25

United States v. Dunnican, 961 F.3d 859 (6th Cir. 2020) ........................................................ 39

United States v. Dupree, 706 F.3d 131 (2d Cir. 2013) ............................................................. 35

United States v. Edwards, 631 F.2d 1049 (2d Cir. 1980) ............................................................ 40

United States v. Elbert, 561 F.3d 771 (8th Cir. 2009) ......................................................... 14, 17

United States v. Flores, 945 F.3d 687 .................................................................................... 35

United States v. Foley, 740 F.3d 1079 (7th Cir. 2014) ........................................................... 20

United States v. Gabe, 237 F.3d 954 (8th Cir. 2001) .............................................................. 23

United States v. Gagliardi, 506 F.3d 140 (2d Cir. 2007) ....................................................... 38

United States v. Garcia, 291 F.3d 127 (2d Cir. 2002) ............................................................ 26

United States v. Graham, No. 12-CR-311, 2013 WL 321568 (W.D.N.Y. Jan. 28, 2013)........... 14

United States v. Grecco, 728 F. App'x 32 (2d Cir. 2018) ....................................................... 35

United States v. Griffith, 284 F.3d 338 (2d Cir. 2002)............................................................. 7

United States v. Guidry, 456 F.3d 493 (5th Cir. 2006)............................................................ 23

United States v. Hall, No. 98-6421, 2000 WL 32010 (6th Cir. Jan. 4, 2000)............................. 28

United States v. Harris, 501 F.2d 1 (9th Cir. 1974) ................................................................. 9

United States v. Hunt, 534 F. Supp. 3d 233 (E.D.N.Y. 2021) ................................................. 38

United States v. Kandic, No. 17-CR-499 (NGG) (E.D.N.Y.)..................................................... 32

United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2009) ................................................. 28

United States v. Kelly, 510 F.3d 433 (4th Cir. 2007) ............................................................... 23

United States v. Kelly, No. 07-CR-374 (SJ), 2008 WL 5068820 (E.D.N.Y. Jul. 10, 2008) .... 7, 11

United States v. Langford, 990 F.2d 65 (2d Cir. 1993) ........................................................... 27

United States v. Levy, 594 F. Supp. 2d 427 (S.D.N.Y. 2009)............................................... 21, 25

United States v. Levy, 731 F.2d 997 (2d Cir. 1984)........................................................ 26, 27, 30

United States v. Lewis, 110 F.3d 417 (7th Cir. 1997) .............................................................. 41

United States v. Lewis, 318 Fed. App'x 1 (D.C. Cir. 2009)...................................................... 23

United States v. Livoti, 196 F.3d 322 (2d Cir. 1999) ............................................................... 29

United States v. Lopez-Perez, No. 11-CR-199 (CBA) (E.D.N.Y.) ............................................ 10

United States v. Mackey, No. 21-CR-80-NGG, 2023 WL 2457861, at *4 (E.D.N.Y. Mar. 10, 2023)............................................................................................ 35, 36

United States v. Marcus, No. 05-CR-457 (ARR), 2007 WL 330388 (E.D.N.Y. Jan. 31, 2007)................................................................................................ 8, 9

United States v. Marti, 421 F.2d 1263 (2d Cir. 1970) ........................................... 8, 12

United States v. Mickens, 926 F.2d 1323 (2d Cir. 1991) ..................................... 27, 30

United States v. Naseer, No. 10 CR 19 (RJD), 2015 WL 13843166 (E.D.N.Y. Jan. 26, 2015) ..................................................................................... 31, 32, 33

United States v. Navarro, 737 F.2d 625 (7th Cir. 1984) ............................................. 9

United States v. Nelson, 365 F. Supp. 2d 381 (S.D.N.Y. 2005)............................... 37

United States v. O'Connor, 650 F.3d 839 (2d Cir. 2011) ......................................... 30

United States v. One Feather, 702 F.2d 736 (8th Cir. 1983) .................................... 17

United States v. Ortiz, 857 F.2d 900 (2d Cir. 1988).......................................... 26, 27

United States v. Otufale, No. 24-CR-170 (KAM) (E.D.N.Y.) ................................... 38

United States v. Paulino, 445 F.3d 211 (2d Cir. 2006).......................................... 35, 37

United States v. Pepe, 747 F.2d 632 (11th Cir. 1984) ................................................ 9

United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996)......................................... 30

United States v. Pitre, 960 F.2d 1112 (2d Cir. 1992)....................................... 26, 29, 30

United States v. Purcell, 967 F.3d 159 (2d Cir. 2020) .............................................. 35

United States v. Qualls, 613 F. App'x 25 (2d Cir. 2015) ......................................... 38

United States v. Quraishi, No. 15-CR-598 (CBA) (E.D.N.Y.)................................... 10

United States v. Rivera, No. 09-CR-619 (JMA) (E.D.N.Y.) ..................................... 10

United States v. Rivera, No. 13-CR-149 (KAM), 2015 U.S. Dist. LEXIS 54326 (E.D.N.Y. Apr. 24, 2015) ......................................................................... 14

United States v. Roldan-Zapata, 916 F.2d 795 (2d Cir. 1990) .................................. 29

United States v. Romone, 218 F.3d 1229 (10th Cir. 2000) ....................................... 16

United States v. Ryan, No. 3:23-CR-00291-WHO-1, 2023 WL 7284157, at *1 (N.D. Cal. Nov. 3, 2023) ....................................................................................................... 37

United States v. Schaffer, 851 F.3d 166 (2d Cir. 2017) .............................................. 25

United States v. Sebolt, 460 F.3d 910 (7th Cir. 2006) .................................. 25, 28, 29, 30

United States v. Sibley, 681 F. Appx 457 (6th Cir. 2017) ............................................ 16

United States v. Spoor, 904 F.3d 141 (2d Cir. 2018) ................................................... 24

United States v. Stroming, 838 F. App'x 624 (2d Cir. 2021) ........................................ 19

United States v. Sturm, 673 F.3d 1274 (10th Cir. 2012) .............................................. 20

United States v. Thomas, 116 F.3d 606 (2d Cir. 1997) ................................................ 41

United States v. Thompson, 178 F. Supp. 3d 86 (W.D.N.Y. Apr. 5, 2016) ............................ 9, 11

United States v. Tin Yat Chin, 371 F.3d 31 (2d Cir. 2004) ........................................... 38

United States v. Urena, 8 F. Supp. 3d 568 (S.D.N.Y. 2014) .................................... 32, 33

United States v. Vickers, 708 F. App'x 732 (2d Cir. 2017) .......................................... 23

United States v. Vonneida, 601 F. App'x 38 (2d Cir. 2015) ......................................... 21

United States v. Watts, 934 F. Supp. 2d 451 (E.D.N.Y. 2013) ...................................... 40

United States v. Zackson, 12 F.3d 1178 (2d Cir.1993) ................................................ 27


Statutes

18 U.S.C. § 2251 ............................................................................................... *passim*

18 U.S.C. § 2252 ...................................................................................................... 24

18 U.S.C. § 2422 ............................................................................................. 2, 14, 26

18 U.S.C. § 3500 ...................................................................................................... 33

18 U.S.C. § 3509 ............................................................................................... 6, 7, 11

18 U.S.C. § 3771 ............................................................................................. 6, 12, 15

Rules

Fed. R. Evid. 401 ............................................................................................ *passim*

Fed. R. Evid. 402 ............................................................................................ *passim*

Fed. R. Evid. 403 ............................................................................................ *passim*

Fed. R. Evid. 404 ............................................................................................ *passim*

Fed. R. Evid. 412 ............................................................................................ *passim*

Fed. R. Evid. 414 ............................................................................................ *passim*

Fed. R. Evid. 801 ............................................................................................ *passim*

Fed. R. Evid. 902 ............................................................................... 1, 37, 38, 39

Other Authorities

1 McCormick on Evid. § 193 (7th ed. 2013) ............................................................ 18

137 Cong. Rec. S3212 (1991)………..……………………………………………….22

140 Cong. Rec. H8991-92 (1994)………………………………………………...20, 21, 22

David J. Karp, Evidence of Propensity and Probability in Sex offense Cases and Other Cases, 70 Chi-Kent. L. Rev. 15, 19 (1994) ................................................................ 21, 22

IA Wigmore's Evidence § 62.2, (Tillers rev. 1983)……………..………………………22

Sand, et al., Modern Federal Jury Instructions ("Sand"), Instruction 9-1 (2017 ed.) ................. 40

Thomas J. Reed, Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases, 21 Am. J. Crim. L. 127, 188 (1993) ....................................... 21

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its

motions in limine to:[1]

1)      permit the victims identified in the superseding indictment, as well as the parents
        of certain victims, to testify using a pseudonym or their first name only and to
        preclude public disclosure of other information that could result in identification of
        the victims;

2)      preclude pursuant to Federal Rule of Evidence 412 any evidence of any of the
        victims' sexual acts, sexual communications, or sharing of sexual images with
        anyone other than the defendant;

3)      admit pursuant to Federal Rule of Evidence 414, or in the alternative, pursuant to
        Federal Rule of Evidence 404(b), evidence of sexually explicit materials depicting
        minors other than victims identified in the superseding indictment recovered from
        the defendant's cellular telephone and Snapchat account;

4)      admit statements made by John Doe 4 to his mother reporting inappropriate
        communications from the defendant;

5)      permit the undercover law enforcement officer who communicated with the
        defendant using John Doe 4's social media account to testify under a pseudonym
        or UC identifier;

6)      admit the forensic extraction of the defendant's cellular telephone based on a
        authentication certification without a testifying witness pursuant to Federal Rules
        of Evidence 902(13) and (14); and

7)      preclude any reference to punishment, including reference to mandatory minimum
        or maximum sentences.

---

[1]     As directed by the Court, the government provided an overview of its anticipated
motions to the defense on August 6, 2024.  Defense counsel subsequently advised that the
defendant does not consent to any of the government's motions.

## RELEVANT BACKGROUND[2]

The defendant is a now-suspended Staten Island police officer who, at times, used his role as a law enforcement officer to gain access to and abuse and exploit or attempt to exploit minor children, including at least four victims. For his conduct, the defendant is charged in a six-count superseding indictment with sexually exploiting, attempting to sexually exploit, and enticing and coercing minor boys, in violation of Title 18, United States Code, Sections 2251(a), 2251(e), and 2422(b). ECF No. 29.

The charges are based on the defendant's use of internet-based applications and cellphones to contact four minor boys to engage them in sexual conversations online in an effort to entice the minor victims to engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct for the defendant. The defendant also engaged in hands-on sex acts with two of his minor victims. The government's review of the defendant's device and social media accounts shows that he also had contact similar in nature as to the charged victims with other minors, including receiving and possessing sexually explicit images of apparent minor males. The defendant's interactions with each of the charged victims is briefly described below.

John Doe 4

John Doe 4, who resided in Staten Island, New York, was the victim of a robbery in March 2023. John Doe 4's parents knew the defendant from their neighborhood and encountered the defendant at the precinct where they went to report the robbery. New York City

---

[2]    The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial. In addition, the proffer of facts set forth in this motion as to any witness's anticipated testimony is a collection of the sum and substance of the witness's anticipated testimony and does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce through the respective witness's anticipated testimony.

Police Department ("NYPD") records indicate that the defendant accessed the robbery complaint, which contained John Doe 4's cellphone number, through the NYPD system.  The same day the defendant accessed the complaint, the defendant contacted John Doe 4, who was 15 years old at the time, using the defendant's personal cellphone.  The defendant wrote, "Hey [John Doe 4], it's Chris Terranova the cop you met at the 121 that day with mom , i just wanted to reach out to see if you were doing ok after the incident, I hate seeing these things happen to good Guys like yourself."  In the following messages, the defendant inquired about the investigation, referred to his role as a police officer, asked John Doe 4 if he had any interest in the police department or its youth programs, and wrote things like, "If [sic] here too if you ever want to talk[.] I been through a lot myself over the years so just know that little bro."  The defendant then asked John Doe 4 to add him on "snap" or "the gram," apparently referring to Snapchat and Instagram.

On Snapchat, the defendant began asking John Doe 4 inappropriate questions, including whether John Doe 4 masturbated, what type of pornography John Doe 4 liked to watch, whether John Doe 4 measured his penis, and the color of John Doe 4's pubic hair.  The defendant also advised John Doe 4 of the size of the defendant's penis when "it's hard."  Throughout this conversation, the defendant reassured John Doe 4 that it was "super safe" to talk to him and that they "have trust about EVERYTHING and ANYTHING."  The defendant further wrote, "I thought we would show each others to bond (just the pubes) which we both don't have lol Or an underwear pic" and "Can I show you quick before bed ? Just one It will be fun and brotherly."  The defendant then sent John Doe 4 a photograph of his pubic area and a portion of his penis, after which the defendant wrote, "see it's nothing. Your turn."  When John Doe 4 did not immediately respond, the defendant wrote, "Then we'll get some sleep[.]  If not all good, just was curious and little thing

in life bond us bros[.]  Are you okay?  Say something please[.]  I'm sorry[.]  Can you please respond? Or send something too lol."

John Doe 4 reported communications of this nature to his mother which caused her to review the Snapchat communications herself at which time she viewed the explicit image the defendant sent to John Doe 4.  John Doe 4's mother then sent a message to the defendant through John Doe 4's Snapchat account pretending to be John Doe 4 and telling the defendant that he was making John Doe 4 uncomfortable.  John Doe 4's report to his mother further resulted in the defendant's conduct being reported to the police.  A undercover ("UC") law enforcement officer, and other law enforcement officers, subsequently engaged in controlled messages with the defendant on Snapchat under John Doe 4's account.  In those messages the defendant wrote to John Doe 4's account, among other things, "we have trust and I'm all yours bro" and "did you jerk yours today?"

John Doe 3

Shortly before his attempts to sexually exploit John Doe 4, the defendant engaged in similar conduct with the then-12-year-old John Doe 3.  John Doe 3, who resided in Staten Island, New York, met the defendant when the defendant was providing a law enforcement presence at the football field where John Doe 3 played youth football.  The defendant connected with John Doe 3 using Snapchat and began asking John Doe 3 inappropriate questions, including asking how John Doe 3's "schmeat" was, apparently referring to John Doe 3's genitals, if it was growing, and if John Doe 3 was "playing with it."  The defendant also asked John Doe 3 multiple times for photographs of John Doe 3's pubic hair, penis, and buttocks.

John Doe 2

In 2022, the defendant communicated with another minor male, John Doe 2, who was then 15 years old.  John Doe 2 also resided in Staten Island, New York.  The defendant was a friend of John Doe 2's family member.  As with John Does 3 and 4, the defendant connected with John Doe 2 using social media; in this instance Snapchat and Instagram.  The defendant used these internet-based applications to ask John Doe 2 questions about his sexual behavior and his genitals.  These communications escalated to an incident in which the defendant, using an internet-based phone application, offered to pick up John Doe 2 from a birthday party and drive him home.  The defendant then picked up John Doe 2 and drove him to an isolated area where the defendant began to kiss John Doe 2.  Ultimately, the encounter escalated to the defendant using his hands to force John Doe 2 to perform oral sex on the defendant.  Subsequent to this incident the defendant continued to message John Doe 2 over Snapchat and, among other things, request explicit pictures of John Doe 2.  Specifically, the defendant asked for photographs of John Doe 2's penis and buttocks.  Some of the messages the defendant sent to John Doe 2 on Snapchat include: "You can still send me some surprises here and there that won't hurt[.]  I love your little cute cock" and "I got hard as fuck thinking about you (take it as a compliment)."

John Doe 1

John Doe 1, who resided in Texas during the relevant time period, was another victim of the defendant's.  The defendant met John Doe 1 through social media and communicated with John Doe 1 via text message, Snapchat, and Facetime.  Electronic communications between the defendant and John Doe 1 date back to when John Doe 1 was 15 years old and reference sexual acts between the two.  John Doe 1 sent the defendant sexually explicit images over Snapchat and engaged in live streamed sexual acts while on Facetime with the defendant.  The defendant met

John Doe 1 multiple times in person in Texas and engaged in sex acts with the minor child. The defendant even purchased a second home in Texas that was a few minutes away from John Doe 1's residence at the time. One of the reasons John Doe 1 trusted the defendant was because the defendant told John Doe 1 he was a police officer.

<u>ARGUMENT</u>

I.    <u>The Court Should Issue an Order of Protection Pursuant to 18 U.S.C. §§ 3509(d)(3)(A) and 3771 Protecting the Victims' Names and Other Identifying Information From Public Disclosure</u>

In accordance with Title 18, United States Code, Sections 3509 and 3771, the government respectfully requests an order of protection prohibiting disclosure of the victims' identifying information. Such protections are routinely granted in cases involving minor victims and victims of sexual violence.

A.    <u>Applicable Law</u>

Title 18, United States Code, Section 3509 ("Child Victims' and Child Witnesses' Rights") provides:

> On motion by any person the court may issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child.

18 U.S.C. § 3509(d)(3)(A). Section 3509 defines a "child" as a person under the age of 18 who is or is alleged to be a victim of a crime of physical abuse, sexual abuse, or exploitation. <u>See</u> 18 U.S.C. § 3509(a)(2)(A). In addition, Title 18, United States Code, Section 3771, governing crime victims' rights, affords a victim "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8).

While "the press and general public have a constitutional right of access to criminal trials," that right "is not absolute." <u>Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty.</u>, 457 U.S.

596, 604-06 (1982). The public's interest in access to criminal trials is outweighed where there is reason to believe that disclosure would be detrimental to a victim, including minor children. Indeed, courts routinely preclude reference to the names of victims in sexual assault cases. See, e.g., United States v. Griffith, 284 F.3d 338, 342 n.1 (2d Cir. 2002) (referring to minor victims recruited into prostitution by only their first names in order to comply with 18 U.S.C. § 3509); United States v. Kelly, No. 07-CR-374 (SJ), 2008 WL 5068820, at *2 (E.D.N.Y. Jul. 10, 2008) (granting protective order with respect to victims' names in sex trafficking case including those who were no longer minors).

Similarly, while the Confrontation Clause guarantees defendants in all federal and state criminal prosecutions the right to confront government witnesses testifying against them, California v. Green, 399 U.S. 149, 173-74 (1970), that right is also not absolute. A defendant's rights under the Confrontation Clause must yield to accommodate other legitimate interests in the criminal trial process. Chambers v. Mississippi, 410 U.S. 284 (1970). For instance, the Supreme Court has observed that there is "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). In deciding whether to limit the scope of cross-examination, the court must balance the government's reasons for requesting such limitations against the defendant's interest in the full cross-examination of the witness. See Alford v. United States, 282 U.S. 687, 694 (1931); Smith v. Illinois, 390 U.S. 129, 134 (1968) ("[I]f the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness

must be excused from answering the question.  The trial judge can then ascertain the interest of

the defendant in the answer and exercise an informed discretion in making his ruling.").

In the trial context, courts have found that the potential for reprisals, humiliation,

or annoyance are sufficient to justify nondisclosure of personal identifying information by a

witness.  As Judge Ross has summarized:

> In advancing the contention that the defendant's rights under the
> Confrontation Clause of the Sixth Amendment require full
> disclosure of the witnesses's names, place of employment, and
> home addresses, the defendant relies on Smith v. Illinois, 390 U.S.
> 129 (1968), and Alford v. United States, 282 U.S. 687 (1931).
> Taken together, these cases have been interpreted by the Second
> Circuit to safeguard two main interests of the defendant:
> (1) obtaining information needed for in-court and out-of-court
> investigation of the witness; and (2) enabling defense counsel to
> elicit information that might be relevant to the jury's deliberations
> as to the credibility or knowledgeability of the witness.  See United
> States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970).  In the event
> the government seeks to limit disclosure of identifying information
> in open court, the government must provide a reason for the
> limitation.  Id. (citing Smith, 390 U.S. at 134 (White, J.,
> concurring)).  "[T]he reason may be that the answer may subject the
> witness to reprisals or that the question is being used to humiliate or
> annoy the witness."  Id. (citing Alford, 282 U.S. at 694).  The
> defendant is then required to demonstrate a "particularized need" for
> disclosure of the relevant information, which the court weighs
> against the risks to the witness.  See United States v. Bennett, 409
> F.2d 888, 901 (2d Cir. 1969); see also United States v. Cavallaro,
> 553 F.2d 300, 305 (2d Cir. 1977).

United States v. Marcus, No. 05-CR-457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007)

(internal citations omitted).

In Marcus, the court concluded that there was no prejudice to the defendant where

he was precluded from inquiring about a witness's address, holding that although the government

should come forward with a reason for withholding a witness's address, "the reason may be that

the answer may subject the witness to reprisals or that the question is being used to humiliate or

annoy the witness." See Marcus, 2007 WL 330388, at *1-2 (ruling that potential harassment, potential loss of employment, and the explicit nature of anticipated testimony are legitimate reasons to protect witnesses' full identity and to exclude mention of witnesses' home addresses, and current places of employment); accord United States v. Pepe, 747 F.2d 632, 656 n.33 (11th Cir. 1984) (finding no error in precluding cross-examination regarding witnesses' home addresses); United States v. Navarro, 737 F.2d 625, 633-34 (7th Cir. 1984) (cross-examination of an informant about his home address and current place of employment precluded); United States v. Harris, 501 F.2d 1, 9 (9th Cir. 1974) ("If the answer may subject the witness to harassment, humiliation, or danger, then nondisclosure of the witness' home address may be justifiable."). As the Marcus court concluded, the relevant precedent looks to whether the information is necessary to the defendant in order to engage in an in- or out-of-court investigation of the witness or to attempt discrediting the victim before the jury.

Where the government seeks to limit disclosure of a witness's identifying information in court, the government must articulate a need for withholding the identifiers, such as fear of reprisal, humiliation, or annoyance to the witness. Once the government identifies a need to protect the witness' full identity, the defendant must demonstrate a "particularized need" for the information, which the Court weighs against the harm to the witness. Marcus, 2007 WL 330388, at *1. In Marcus, Judge Ross expressly found, in a case involving sex trafficking allegations, that "[i]n light of the explicit nature of the conduct that the witnesses will be testifying about . . . the court has determined that the witnesses's fear of harassment and reprisals is legitimate." 2007 WL 330388, at *1. In many other cases involving the testimony of victims of sexual abuse, and particularly where the victim was a child, the court has permitted witnesses to testify without disclosing their full names. See, e.g., United States v. Thompson, 178 F. Supp. 3d

86, 96 (W.D.N.Y. Apr. 5, 2016) (finding a compelling interest in limiting the identification of minor victims given the potential for explicit evidence in the underlying case to have adverse personal, professional, and psychological consequences); Order dated April 26, 2011 at 2, United States v. Rivera, 09-CR-619 (JMA) (E.D.N.Y.) (Docket No. 231) (permitting victims testifying in graphic detail about acts of forced prostitution and sexual contact with customers and others to testify using their first names only); Transcript of April 5, 2016 Pre-Trial Conference at 6-10, United States v. Quraishi, 15-CR-598 (CBA) (E.D.N.Y.) (Docket No. 46) (where the defendant was charged with abusive sexual contact and assault on an airplane, Judge Amon permitted the victim-witness to testify using her first name only); United States v. Cortez-Granados, 11-CR-657 (SLT) (E.D.N.Y.) (at sentencings of sex traffickers, victims permitted to give in-court victim impact statements using only their first name or the name Jane Doe); United States v. Lopez-Perez, et al., 11-CR-199 (CBA) (E.D.N.Y.) (same).

B.    Discussion

In light of the sensitive nature of the crimes involved in this case, namely the sexual abuse and exploitation of minors at the hands of the defendant, an order restricting throughout the proceedings the use of the true names of the John Does—all of whom are victims of the defendant's crimes—to only their first names or a pseudonym, as well as restricting disclosure of other identifying information, such as the names of their family members, their addresses, phone numbers or screennames, and their exact place of school or employment (if any), is in accordance with the Crime Victims' Rights Act.  The government anticipates the parents of certain of the John Does will also testify at trial.  The government respectfully requests that the sought after protective order include permission for the parents to testify using only their first names or a pseudonym as well and prohibit the disclosure of the parents' identifying information, including their addresses, phone numbers, and place of employment in order to protect the identities of the victims.

Additionally, to the extent documents are introduced into evidence that reflect the aforementioned information, those documents should be sealed or redacted from the public. These measures are necessary to protect the victims from potential harassment, undue embarrassment, and other adverse consequences. The limited protections requested by the government are reasonable, necessary, and appropriate to protect the victims' safety and well-being, avoid harassment of the John Does, and prevent undue embarrassment and other adverse consequences.

The defendant here is charged with attempting to entice children to create and transmit sexually explicit images of themselves and to send those images to him via the internet. All four victims were minors at the time of the defendant's abuse and all but John Doe 1 will be minors at the time of trial. The John Does are expected to testify about being asked to or actually producing sexually explicit images of themselves and, in the case of John Does 1 and 2, engaging in sexual acts with the defendant when they were minors. Revealing the John Does' identities would cause needless anxiety and subject them to negative social stigma. There is a significant possibility that publicly disclosing the victims' names or identifying information would expose them to the kind of harm that Section 3509 seeks to avoid. See United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (use of pseudonyms justified when necessary to protect individuals from "harassment, injury, ridicule or personal embarrassment"); Thompson, 178 F. Supp. 3d at 96 (finding a compelling interest in limiting the identification of minor victims given the potential for explicit evidence in the underlying case to have adverse personal, professional, and psychological consequences); Kelly, 2008 WL 5068820, at *2 (E.D.N.Y. Jul. 10, 2008) (granting protective order with respect to victims' names in sex trafficking case due to the potentially explicit nature of the expected testimony).

To require the John Does to provide full identifying information in open court also does not serve any of the legitimate purposes identified by the courts, such as the defendant's obtaining information for in- or out-of-court investigation or attempting to discredit the victims before the jury.  Rather, requiring the John Does to provide their identifying information in open court would serve only to harass, to embarrass, and "to humiliate or annoy the [victims]," and could potentially subject them to reprisal.  Marti, 421 F.2d at 1266.  These purposes are directly at odds with the rights that victims are afforded under the Crime Victims' Rights Act, which include the right to be heard, but also to be treated with respect for their dignity and privacy.  See 18 U.S.C. § 3771(a)(8).  Indeed, requiring victims of sexual abuse to provide their names in public could chill their willingness to testify, for fear of having their personal histories publicized, and the embarrassment and humiliation that such publicity could cause them as they rebuild their lives.  In addition, a ruling requiring the John Does to disclose their full identities publicly could cause other victims to fear seeking help from law enforcement as that could subject them to further harassment and embarrassment.

Finally, the government expects that the defendant will be unable to articulate any "particularized need" for the disclosure of the John Does' identity information in open court.  The defendant in this case knows who the John Does are.  Accordingly, the defendant will not be prevented from presenting a defense in the event that the victims are referred to by only their first names or pseudonyms during the trial and to the extent any identifying information is either precluded or, to the extent relevant, admitted only under seal.  The same is true with respect to sealing admitted materials containing the John Does' identifying information.  See Bennett, 409 F.2d at 901 (district court did not err in allowing government witness not to identify place of employment where defense failed to demonstrate a "particularized need" for the information).

12

For the reasons set forth above, the potential harm to the victims—who were all minors at the time of the relevant events—counsels strongly in favor of avoiding the needless disclosure of their identities in connection with the defendant's prosecution.  Accordingly, the government respectfully requests an order of protection, requiring that, throughout the course of motion practice, the victims identified in the Superseding Indictment be referred to only as John Doe 1, John Doe 2, John Doe 3, and John Doe 4, as they are in the Superseding Indictment, and during trial and any ancillary proceedings, the victims only be referred to by their first names or a pseudonym.

The government further requests that testifying victims not be required to disclose uniquely identifying information, such as their addresses, phone numbers, names of family members, the names of the schools they attend(ed), or places of employment.  The government also respectfully requests that, to the extent family members, such as parents, of the victims testify, they also be permitted to testify using only their first name or a pseudonym, and that the Court prohibit the disclosure of the parents' identifying information, including their addresses, phone numbers, and place of employment in order to protect the identities of the victims.

Additionally, the government requests that, during trial, all parties be precluded from publishing documents to the gallery that reflect the victims' names or the identifying information discussed herein and that any such materials admitted into evidence be sealed or redacted in accordance with the protective order.

For the foregoing reasons, the requested measures are necessary to protect child exploitation victims from undue embarrassment, potential harassment, and other adverse consequences.

II.    Evidence and Argument Regarding Any Sexual Behavior of John Does 1-4 with Anyone
Other Than the Defendant is Inadmissible Under Federal Rule of Evidence 412

   The government respectfully requests an order precluding the defendant from
(i) introducing evidence regarding John Does 1-4 engaging in sexual acts or contact with anyone
other than the defendant, or having any type of "sexual predisposition" or (ii) otherwise
referencing such inadmissible evidence during voir dire, opening statements, cross-examination,
and closing arguments.  Such protections are required under Federal Rule of Evidence 412.

  A.    Applicable Law

   Federal Rule of Evidence 412 expressly provides that, in a criminal proceeding
involving sexual misconduct, "evidence offered to prove that a victim engaged in other sexual
behavior" or "evidence offered to prove a victim's sexual predisposition" is not admissible, except
in three narrow circumstances.  Fed. R. Evid. 412(a), (b).  Rule 412 "aims to safeguard the alleged
victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is
associated with public disclosure of intimate sexual details" and to "encourage[ ] victims of sexual
misconduct to institute and to participate in legal proceedings against alleged offenders."  Fed. R.
Evid. 412 advisory committee note.  The provisions of Rule 412 apply in a "civil or criminal
proceeding involving alleged sexual misconduct."  Fed. R. Evid. 412(a).  See, e.g., United States
v. Alvarez, 601 F. App'x 16, at *5 (2d Cir. 2015) (summary order) (applying Rule 412 to exclude
evidence of other sexual behavior by an alleged victim of violations of Title 18, United States
Code, Section 2422); United States v. Elbert, 561 F.3d 771, 776 (8th Cir. 2009) (applying Rule
412 to a violation of Title 18, United States Code, Section 1591 involving minor victims); United
States v. Rivera, No. 13-CR-149 (KAM), 2015 U.S. Dist. LEXIS 54326, at *13 (E.D.N.Y. Apr.
24, 2015) (applying Rule 412 to exclude evidence of other sexual behavior by alleged victims of
violations of Title 18, United States Code, Sections 1591 and 2422); United States v. Graham, No.

12-CR-311, 2013 WL 321568, at *1 (W.D.N.Y. Jan. 28, 2013) (applying Rule 412 to preclude evidence of sex trafficking victims' prostitution both prior to and following the defendant's conduct).

Rule 412 imposes clear limits on a defendant's ability to introduce evidence that a victim engaged in other sexual behavior or has a propensity to engage in sexual acts. As Judge Posner has explained, the policy rationale behind the rule encourages victims of sex offenses to come forward: "If admissible, such evidence would deter many victims of sexual abuse from testifying . . . ." United States v. Cephus, 684 F.3d 703, 708 (7th Cir. 2012) (Posner, J.) (finding that evidence of victim's prior prostitution was irrelevant to charge of sex trafficking); see Fed. R. Evid. 412 advisory committee note ("Rule 412 has been revised . . . to expand the protection afforded alleged victims of sexual misconduct."); see also 18 U.S.C. § 3771(a)(8) ("A crime victim has . . . [t]he right to be treated with fairness and with respect for the victim's dignity and privacy.").

B.    Discussion

In this case, the government is not aware of any other sexual behavior or predisposition of victims that would be relevant to the charged crimes, which involved the defendant attempting to persuade, induce, entice, and coerce children to produce sexually explicit images and enticing and coercing children to engage in sexual acts, much less any other sexual behavior or predisposition that would overcome the preclusive effect of Federal Rule of Evidence 412.

i.    The Narrow Exceptions to Rule 412's General Policy of Exclusion Do Not Apply

As noted above, Rule 412 is subject to three narrow exceptions in criminal cases. These exceptions are: (1) to prove a person other than the defendant was the source of semen,

injury, or other physical evidence; (2) to prove the victim's sexual behavior with respect to the defendant, if offered by the prosecutor, or if offered by the defendant to prove consent; or (3) to avoid a violation of the defendant's constitutional rights.  Fed. R. Evid. 412(b)(1).  If a defendant intends to introduce evidence of a victim's other sexual behavior or alleged sexual predisposition under one of these exceptions, the rule requires the filing of a sealed motion no less than fourteen days before trial that "specifically describes the evidence and states the purpose for which it is to be offered," with notice to the victim or his representative.  Fed. R. Evid. 412(c)(1).  Failure to do so without good cause should result in automatic exclusion.  United States v. Romone, 218 F.3d 1229, 1235-36 (10th Cir. 2000).

In this case, even if the defendant files a timely motion under Rule 412(c), the evidence remains inadmissible.  The first exception does not apply on the facts of this case, as the government is not aware of any evidence that involves "semen, injury, or other physical evidence," which could be alternatively explained by evidence of a different perpetrator.  Similarly, the second exception does not apply to the facts of this case, as John Does 1-4 were at the time of the conduct (and, in several instances, are currently) minors and incapable of consent.  Accordingly, consent is simply irrelevant to the charged crimes.  United States v. Sibley, 681 F. Appx 457, 461 (6th Cir. 2017) (finding that a minor victims "consent is irrelevant to the question whether [the defendant] used her for the purposes of 18 U.S.C. § 2251(a)").  The third exception also does not apply for the reasons discussed below.

ii.    The Exclusion of Other Sexual History Evidence Does Not Violate the Defendant's Constitutional Right to Present a Defense

Although the defendant has the constitutional right to present a defense, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  Taylor v. Illinois, 484 U.S. 400, 410

(1988); United States v. Bifield, 702 F.2d 342, 350 (2d Cir. 1983) ("A criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible."); Elbert, 561 F.3d at 777 ("The Confrontation Clause only requires admission of probative evidence."); Doe v. United States, 666 F.2d 43, 47 (4th Cir. 1981) ("[A]n accused is not constitutionally entitled to present irrelevant evidence."); see also Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Here, any evidence of the victims' sexual behavior with anyone other than the defendant and any purported "sexual predisposition" evidence would be wholly irrelevant to the charges against the defendant.[3]  The exclusion of evidence on these topics is thus appropriate under Rule 412.

      iii.    <u>Any Other Sexual History Evidence Should be Excluded Under Federal Rule of Evidence 403</u>

Even assuming <u>arguendo</u> that evidence of the victims' unrelated sexual activity or predisposition is relevant, any probative value would be marginal at best and substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, and embarrassing the victims, several of whom are still minors, and it should thus be excluded pursuant to Rule 403.  See Fed. R. Evid. 403; United States v. One Feather, 702 F.2d 736, 739 (8th Cir. 1983) ("The policy of Rule 412, to guard against unwarranted intrusion into the victim's private life, may be taken into account in determining the amount of unfair prejudice under Rule 403.").

---

[3]    In addition, prohibiting the defendant from cross-examining the victims about their other sexual behavior or any alleged predisposition will not violate the Confrontation Clause. "[T]he Confrontation Clause guarantees an <u>opportunity</u> for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Van Arsdall, 475 U.S. at 679 (internal quotation marks omitted) (emphasis in original).  Any questions posed to the victims or to third-party witnesses regarding the victims' sexual behavior or any alleged predisposition could result in undue prejudice under Rule 403.

The key issue in this case is whether the defendant attempted to and did entice the victims to produce sexually explicit images and whether he coerced and enticed two of the victims to engage in sex acts. The question is not whether the victims engaged in any other sexual activity, or had any particular "sexual predisposition." Any evidence or argument regarding the victims' sexual behavior with others and any alleged sexual predisposition would "imprudently focus[ ] attention on the minimally probative and collateral issue of [the victim's] character," and "distract the trier of fact from the main question of what actually happened on the particular occasion." Jones v. Goodwin, 982 F.2d 464, 470 n.8 (11th Cir. 1993) (quoting Fed. R. Evid. 404(a) advisory committee note). It could also improperly suggest that the victims are of an immoral character and are undeserving of the law's protection. See generally 1 McCormick on Evid. § 193 (7th ed. 2013) ("Learning of the victim's bad character could lead the jury to think that the victim merely 'got what [she] deserved' and to acquit for that reason."). Thus, even if evidence of a victim's unrelated sexual activity is somehow marginally relevant, its exclusion is still warranted under Rule 403.

For all of these reasons, the Court should preclude the defendant from (i) introducing evidence regarding John Does 1-4 engaging in sexual acts or contact with anyone other than the defendant, or having any type of "sexual predisposition" or (ii) otherwise referencing such inadmissible evidence during voir dire, opening statements, cross-examination, and closing arguments. In addition, to the extent that the defendant intends to introduce such evidence, he should be required to file a motion with the Court in accordance with Rule 412(c) no less than two weeks prior to trial, with notice to the relevant John Does.

III.   Evidence Regarding the Defendant's Possession of Child Sexual Exploitation Material Involving Minors Other than John Does 1-4 is Admissible

The government respectfully submits that evidence of the defendant's possession of child sexual exploitation material involving minors other than John Does 1-4 should be admitted

18

at trial: (i) pursuant to Federal Rule of Evidence 414(a), as evidence of prior child molestation; and (ii) in the alternative, pursuant to Federal Rule of Evidence 404(b), as evidence of intent, motive, knowledge, identity, absence of mistake, and a common scheme or plan. Specifically, at trial, the government will prove that sexually explicit images of apparent minor males were recovered from the defendant's cellular telephone and Snapchat account.

A.     <u>Evidence Regarding the Defendant's Possession of Child Sexual Exploitation Material Involving Minors Other than John Does 1-4 is Admissible Pursuant to Federal Rule of Evidence 414</u>

Evidence of the defendant's possession of child sexual exploitation material involving minors other than John Does 1-4 is presumptively admissible under Federal Rule of Evidence 414. It is also highly probative in countering the defendant's expected defense that he lacked the requisite knowledge, motive, or intent to commit the charged crimes because, for example, he did not believe that his victims were minors, as well as the expected defense that he was not involved in sexually exploiting or attempting to sexually exploit John Does 1-4. Such evidence should therefore be admissible at trial.

      i.     <u>Background of Federal Rule of Evidence 414</u>

Federal Rule of Evidence 414 ("Similar Crimes in Child Molestation Cases") provides, in pertinent part: "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414; <u>see also</u> <u>United States v. Stroming</u>, 838 F. App'x 624, 625-26 (2d Cir. 2021) (summary order).

The rule defines "child molestation," as, among other things, a crime involving "any conduct prohibited by 18 U.S.C. chapter 110," which includes Title 18's child pornography statutes.[4]  Fed. R. Evid. 414(d)(2)(B).

Congress enacted Federal Rule of Evidence 414 (and analogous Rules 413 and 415) as part of the Violent Crime Control and Law Enforcement Act of 1994.  These Rules are designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)."  140 Cong. Rec. H8992 (1994) (Statements of Rep. Molinari and Senator Dole).  They are designed to create a presumption that "evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects."  140 Cong. Rec. H8991-92 (1994) (remarks of principal House sponsor,

---

[4]        Rule 414 defines "child molestation" and a "child" in separate subsections.  It defines a "child" as a person under the age of 14, but places no specific age requirement in defining "child molestation" as including a crime involving conduct prohibited by 18 U.S.C. chapter 110 (which includes Title 18's child pornography statutes).  The Second Circuit has not ruled on whether that definition of a "child" applies to cases, such as this one, involving Title 18, chapter 110.  See United States v. Archambault, 740 F. App'x 195, 200 (2d Cir. 2018).  It has, however, noted that other circuits to consider the issue have squarely rejected the argument that Rule 414 does not apply to cases involving violations of 18 U.S.C. chapter 110, and victims between the ages of 14 and 17.  Id. at 201.  The decisions in these other circuits comport with the most natural reading of the rule.  As noted, the rule defines "child molestation" separately from its definition of a "child."  See Fed. R. Evid. 414(d)(1), (d)(2).  The definition of "child molestation" includes several subsections explicitly requiring the victim of the conduct to be a "child" as defined by the rule.  See id. 414(d)(2)(A), (C)-(E).  However, the relevant subsection here, 414(d)(2)(B), does not include such a limitation, and instead relates to "any conduct prohibited by 18 U.S.C. chapter 110." (emphasis added).  See United States v. Foley, 740 F.3d 1079, 1088-89, n.3 (7th Cir. 2014) ("Although Rule 414(d)(1) defines a 'child' as a person below the age of 14, it defines 'child molestation' to include 'any conduct prohibited by 18 U.S.C. chapter 110' without regard to whether the chapter 110 offense was committed with a person below the age of 14, a 'child' as defined by the Rule.");  United States v. Sturm, 673 F.3d 1274, 1284 (10th Cir. 2012) (finding the assertion that Rule 414 applies only to offenses involving victims under the age of 14 an argument "based on a gross misunderstanding of Rule 414(d)(2)"; noting that the Rule "defines 'offense of child molestation'—independent of the defined term 'child'"; and concluding that the relevant age of the victim "is determined by reference to chapter 110 of title 18, which defines 'minor' as any person under the age of eighteen").

Rep. Molinari); see also Cong. Rec. S12990; David J. Karp, Evidence of Propensity and Probability in Sex offense Cases and Other Cases, 70 Chi-Kent. L. Rev. 15, 19 (1994);[5] United States v. Vonneida, 601 F. App'x 38, 41-42 (2d Cir. 2015) (summary order) (stating that the legislative sponsors of Rule 414 contemplated that, while conduct falling within the ambit of the rule may be highly prejudicial, it is not necessarily unfairly prejudicial); United States v. Levy, 594 F. Supp. 2d 427, 439 (S.D.N.Y. 2009) ("Levy II") ("[I]n sexual assault and child molestation cases, the presumption is that the probative value of the propensity evidence is not outweighed by the risk of unfair prejudice.").

> The legislative sponsors of Rules 413-415 further noted that:
> The reform effected by these rules is critical to the protection of the public . . . [a]nd is justified by the distinctive characteristics of the cases to which it applies.  In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant -- a sexual or sado-sexual interest in children -- that simply does not exist in ordinary people.

140 Cong. Rec. H8991-92 (1994) (remarks of principal House sponsor, Rep. Molinari).

In adopting these rules, Congress built upon a large body of precedent favoring a permissive approach to similar crimes evidence in sex offense cases.  Many jurisdictions have recognized the need for special evidence rules to ensure fully informed decisions by juries in cases involving sexually violent crimes or the sexual abuse of children.  Such jurisdictions historically allowed such evidence through the adoption of special "lustful disposition" rules.  See Thomas J.

---

[5]    The principal sponsors of Rules 413-415 noted that an address delivered to the Evidence Section of the Association of American Law Schools by David J. Karp -- then Senior Counsel at the Office of Policy Development at the Department of Justice and the drafter of Rules 413-415 -- was to serve as an "authoritative" part of the Rules' legislative history.  See 140 Cong. Rec. 23,602 (1994); Johnson v. Elk Lake School Dist., 283 F.3d 138, 153-56 (3d Cir. 2002).

Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases*, 21 Am. J. Crim. L. 127, 188 (1993) (characterizing 29 states as allowing propensity evidence in some category or categories of sex offense cases). Other jurisdictions achieved similar results by interpreting standard exception categories like those found in Rule 404(b) with particular liberality in sex offense cases. See, e.g., IA Wigmore's Evidence § 62.2, at 1334-35 (Tillers rev. 1983) (rule against propensity evidence often not honored in sex offense cases). Furthermore, Congress recognized and intended that this approach would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception. The legislative sponsors noted:

> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

> In line with this judgment, the rules do not impose arbitrary or artificial restrictions on the admissibility of evidence. Evidence of offenses for which the defendant has not previously been prosecuted or convicted will be admissible, as well as evidence of prior convictions. No time limit is imposed on the uncharged offenses . . . as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses.

140 Cong. Rec. H8992 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); see also 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi.-Kent L. Rev. at 19.

The Second Circuit has considered the applicability of Rules 413-415, confirmed the rules' broad principles of admissibility, and affirmed the admission of evidence of prior sex

offenses and child molestation offenses pursuant to these rules.  See, e.g., United States v. Vickers, 708 F. App'x 732, 736 (2d Cir. 2017) (summary order) (finding testimony concerning the defendant's sexual abuse of uncharged victims "plainly admissible under Rule 413 and 414 because it was probative of [the defendant's] propensity for sexually abusing adolescent boys who were entrusted to his care"); United States v. Davis, 624 F.3d 508, 512 (2d Cir. 2010) (evidence of 19-year-old conviction for sodomy by forcible compulsion properly admitted in prosecution for sexual exploitation of a minor to prove defendant's propensity); see also United States v. Lewis, 318 Fed. App'x 1, 2 (D.C. Cir. 2009) (evidence that the defendant possessed child pornography was admissible in a prosecution for attempted coercion and enticement of a minor); United States v. Kelly, 510 F.3d 433, 437 (4th Cir. 2007) (admission of prior conviction for attempted rape of 12-year-old warranted in prosecution for traveling in interstate commerce for purpose of engaging in illicit sexual conduct even though prior offense occurred 22 years earlier); United States v. Guidry, 456 F.3d 493, 502-05 (5th Cir. 2006) (admission of uncharged sexual assaults including forced oral copulation of woman admissible in trial of police officer charged with multiple sexual assaults against women); United States v. Drewry, 365 F.3d 957, 960 (10th Cir. 2004) (testimony from victim regarding acts of child molestation that occurred 25 years earlier admissible where the defendant was charged with several counts of aggravated sexual abuse against minor), vacated on other grounds, 543 U.S. 1103 (2005); United States v. Gabe, 237 F.3d 954, 959-60 (8th Cir. 2001) (finding admissible witness testimony that the defendant had sexually abused the victim 20 years prior).

     ii.   <u>Discussion</u>

The proffered evidence that the defendant previously possessed child sexual exploitation material meets all of the requirements of Rule 414: (1) the defendant is charged with

child molestation offenses; (2) the evidence the government seeks to introduce is evidence of other offenses of child molestation, as defined by the Rule; (3) the evidence is relevant; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

First, the defendant is charged with child molestation offenses.  As set forth above, the defendant is charged with: sexually exploiting and attempting to sexually exploit children, in violation of Title 18, United States Code, Sections 2251(a) and (e).  These charges involve conduct proscribed by Chapter 110 of Title 18.  Hence, the defendant is charged with offenses of "child molestation" within the meaning of Rule 414.  See Fed. R. Evid. 414(d)(2).

Second, the proffered evidence of the defendant's other acts also consists of evidence of child molestation offenses.  As set forth above, sexually explicit images of apparent minor males were recovered from the defendant's cellular telephone and Snapchat account.[6]  The defendant's possession of these images constitutes evidence of violations of Chapter 110 of Title 18, see 18 U.S.C. § 2252, and thus constitute "child molestation" within the meaning of Rule 414.

Third, the proffered evidence is relevant.  Evidence that the defendant has sought or possessed child pornography demonstrates the defendant's sexual interest in minors, his propensity or disposition of character to engage in sexual acts involving minors, and his intent in producing and possessing child pornography.  It is particularly relevant because the other acts involve victims who are of the same demographic as John Does 1-4 – teenage boys.  These similarities render the proffered evidence of the defendant's other acts especially probative.  See United States v. Spoor, 904 F.3d 141, 155 (2d Cir. 2018) ("[E]vidence that [the defendant] had, relatively recently, abused boys who were similar in age to the boys in the [charged] videos was

---

[6]    The government respectfully proposes that, at trial, it will: (i) warn the jury before it shows a child exploitative image; (ii) show child exploitative images for a brief period of time; and (iii) not show any of the images to the courtroom gallery.

relevant to show his attraction to children, thus providing evidence of his motive to make pornography."); United States v. Schaffer, 851 F.3d 166, 182 (2d Cir. 2017) (upholding district court's finding that videos of the defendant molesting two other minors were admissible pursuant to Federal Rule of Evidence 413, where the defendant was charged with enticing a minor to engage in illegal sexual activity, because "acts demonstrating his sexual interest in minor females are extremely relevant to the question of his intent"); United States v. Axsom, 761 F.3d 895, 898 (8th Cir. 2014) (other acts considered probative when similar to charged acts); Drewry, 365 F.3d at 960 (finding evidence of child molestation committed 25 years earlier admissible pursuant to Rule 414 despite age of the uncharged conduct due to factual similarities between the charged and uncharged conduct).

Fourth, the probative value of the defendant's other acts is not substantially outweighed by the danger of unfair prejudice. In the context of Rules 413-415, "the Second Circuit has instructed district courts to apply [Rule] 403 less stringently to avoid having Rule 403 preclude evidence Congress intended to make admissible." United States v. Barnason, 852 F. Supp. 2d 367, 371 (S.D.N.Y. 2012); see also Levy II, 594 F. Supp. 2d at 440 (evidence may be "highly prejudicial" but not "unfairly prejudicial" where "this was the conduct that [the defendant] chose to engage in, and this was evidence that showed, convincingly, that [the defendant] had a sexual interest in children and the intent and desire to commit the charged crimes"); United States v. Sebolt, 460 F.3d 910, 917 (7th Cir. 2006) (evidence that defendant had history of child molestation, while "highly prejudicial," was not "unfairly prejudicial"). Notably, here the other acts (possession or transportation of child sex abuse material) is less inflammatory than the charged crimes (sexual exploitation, attempted sexual exploitation, and sexual abuse of minors).

25

B.      Evidence of the Defendant's Possession of Child Sexual Exploitation Material Involving Minors Other than John Does 1-4 is Admissible Pursuant to Federal Rule of Evidence 404(b)

Evidence of the defendant's other acts of possession or transmission of child sex abuse material is also admissible under Federal Rule of Evidence 404(b) to show the defendant's intent, motive, knowledge, identity, and absence of mistake, as well as a common scheme or plan. Specifically, the evidence the government intends to introduce is admissible because it is evidence: (i) of the defendant's belief that John Does 1-4 were minors, which is an element of the charges for attempted sexual exploitation,[7] and of absence of any mistake with respect to their ages; (ii) of the defendant's intent and motive to create child pornography; and (iii) that establishes the identity of the defendant as the person abusing his victims. The defendant's knowledge, motive, intent, and absence of mistake, as well as his participation in the charged conduct, are issues the government expects the defendant to dispute at trial.

i.      Background of Federal Rule of Evidence 404(b)

Evidence of uncharged crimes or "other acts" may be admitted pursuant to Rule 404(b) for permissible purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b)(2); see United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988). The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application, and applies an "inclusionary or positive approach" to admitting "other acts" evidence. See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (citing United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992)); see also United States v. Levy,

---

[7]      The government does not need to prove the defendant's knowledge of his victims' ages with respect to the completed offense conduct under 18 U.S.C. § 2251(a) and 2422(b). However, for the attempt charges under 18 U.S.C. § 2251(a), (e), the government must prove that the defendant believed his victims to be minors.

731 F.2d 997, 1002 (2d Cir. 1984) ("Levy I") ("We have adopted the inclusionary or positive approach to [404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").

A party must satisfy three requirements in order for evidence of "other crimes, wrongs or acts" to be admitted under the rule.  First, the evidence must be offered for a purpose other than to prove a defendant's bad character or criminal propensity.  See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991); United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989).  Second, the evidence must be relevant under Rules 401 and 402 and not run afoul of Rule 403.  See Mickens, 926 F.2d at 1328 (2d Cir. 1991); Ortiz, 857 F.2d at 903; Levy I, 731 F.2d 997 at 1002.  Third, if the defendant requests that the jury be instructed as to the limited purpose for which the government's evidence is being admitted, the court must furnish such an instruction.  See Mickens, 926 F.2d at 1328-29; Levy I, 731 F.2d at 1002.  It does not matter whether the proffered acts occurred before or after the charged crime as long as relevancy is shown.  United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history.").

ii.    Discussion

a.    Evidence of the Defendant's Other Acts is Admissible Under Federal Rule of Evidence 404(b)

Evidence of the defendant's other acts is admissible "to prove that the defendant acted with the state of mind necessary to commit the offense[s] charged."  United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir.1993).  At trial, the government is required to prove that the defendant knowingly sexually exploited and attempted to sexually exploit his minor victims, and that he knew the nature of the proscribed items – specifically, that he sought sexual materials from his victims and, for the attempt charges, that he believed his victims to be minors.

See 18 U.S.C. § 2251(a), (e).  The proffered evidence shows that the defendant had a sexual interest in underage boys.  See United States v. Kapordelis, 569 F.3d 1291, 1313 (11th Cir. 2009) (admitting in trial for child pornography offenses evidence that the defendant previously traveled abroad to engage in sexual acts with underage boys, regardless of the age-of-consent in the traveled to country, as relevant to knowledge, identity, and absence of mistake); Sebolt, 460 F.3d at 917 (finding that admission into evidence of the defendant's chats, which involved the defendant's recent attempts, missed opportunities, and potential future opportunities to molest children, was appropriate under 404(b) because it was relevant to his motive to possess, transport, and advertise child pornography); United States v. Dhingra, 371 F.3d 557, 566-67 (9th Cir. 2004) (where the defendant was charged with using the Internet to entice a minor to engage in illicit sexual activity, "prior incident was highly probative of [the defendant's] intent and modus operandi with respect to the present act"); United States v. Hall, No. 98-6421, 2000 WL 32010, at *4 (6th Cir. Jan. 4, 2000) (evidence of the defendant's sexually explicit e-mail messages attempting to solicit child pornography was admissible to establish knowledge and intent of receipt of child pornography).

The government anticipates that the defendant may argue that he did not attempt to create sexually explicit material, and that he did not believe that John Does 1-4 were minors.  The proffered evidence of the defendant's other acts is highly relevant to counter these arguments.  The defendant's possession of sexually explicit material involving other underage boys demonstrates the defendant's sexual interest in underage boys and provides significant evidence for purposes other than showing the defendant's proclivity.

The proffered materials evidence the defendant's knowledge of John Does 1-4's ages, as well as his motive and intent to create child pornography; they evidence that the defendant's efforts to create and his creation of child pornography was not due to mistake; and

they evidence that it was the defendant who attempted to create the sexually explicit material.  See Sebolt, 460 F.3d at 917 (finding that prior bad acts toward a young victim may show that a defendant has a sexual interest in that age group and therefore provide evidence of a motive to commit future sexually motivated crimes against children, and may serve to identify the defendant as the perpetrator of the crime); United States v. Cunningham, 103 F.3d 553, 556 (7th Cir. 1996) ("Most people do not have a taste for sexually molesting children.  As between two suspected molesters, then, only one of whom has a history of such molestation, the history establishes a motive that enables the two suspects to be distinguished."); see also United States v. Brand, 467 F.3d 179, 197 (2d Cir. 2006) (finding no abuse of discretion where the district court admitted evidence under Rule 404(b) that the defendant possessed child pornography as highly probative of intent and whether the defendant "intended to engage in illicit sexual activity," noting that "the government is required to establish only a similarity or some connection to establish that a prior act is relevant to one of the elements . . . of the crime charged"), abrogated on other grounds, 13 F.4th 179, 196 (2d Cir. 2006).

### b.  The Defendant's Other Acts are Not More Prejudicial than Probative

The proffered evidence is clearly relevant pursuant to Rules 401 and 402, offered for a purpose other than propensity, and admissible under the Rule 403 balancing test as the evidence "'[does] not involve conduct any more sensational or disturbing than the crimes with which [the defendant has been] charged.'"  Pitre, 960 F.2d at 1120 (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)).  Where the uncharged crimes are similar in nature to the charged crimes, Rule 404(b) evidence is generally admissible under the Rule 403 balancing test.  United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force

with an arrestee, choked another arrestee, on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction").

Specifically, the proffered evidence is limited to a small number of images of nude males who appear to be teenage minors.  This is not "any more sensational or disturbing" than the conduct underlying the crimes charged, which entails the defendant's producing and attempting to produce sexually explicit material depicting children as young as twelve years old and engaging in hands on sexual acts with two minor boys.  As such, there is no risk of unfair prejudice.  See United States v. O'Connor, 650 F.3d 839, 853-54 (2d Cir. 2011) (where the defendant forced a young girl to pose for pornographic photographs, excerpts from the defendant's autobiography describing the defendant molesting young girls who were asleep and describing the defendant's interest in child pornography were properly admitted); Pitre, 960 F.2d at 1120 (finding no error in the admission of 404(b) evidence where the prior conduct "did not involve conduct any more sensational or disturbing than the crimes with which the appellants were charged" (internal quotation marks and alterations omitted)); see also Sebolt, 460 F.3d at 917.  Any potential prejudice is de minimis and can be eliminated through a limiting instruction.  See Mickens, 926 F.2d at 1328-29; Levy I, 731 F.2d at 1002; United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).

IV.    The Court Should Allow The Undercover Law Enforcement Officer Who Communicated with the Defendant to Testify Using A Pseudonym or a UC Identifier

The government intends to introduce at trial messages on Snapchat between the defendant and one UC law enforcement officer using John Doe 4's Snapchat account.  In anticipation of this testimony, the government moves in limine to (i) permit the UC officer to testify under a pseudonym or UC identifier rather than disclose the UC's true identity in open

court; and (ii) preclude the defendant from inquiring into the UC officer's true identity and other investigations unrelated to the defendant or this case.

A.    Applicable Law

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him.  See Dutton v. Evans, 400 U.S. 74, 79 (1970).  The right of confrontation, however, "is not absolute."  United States v. Naseer, No. 10-CR-19 (RJD), 2015 WL 13843166, at *2 (E.D.N.Y. Jan. 26, 2015) (citing Chambers, 410 U.S. at 295).  In appropriate circumstances, the right must "bow to accommodate other legitimate interests in the criminal trial process."  Id.  "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish."  Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original).

The Second Circuit has repeatedly recognized the government's strong interest in protecting the identities of undercover agents based on concerns for their safety and the desire to enable their continued work on ongoing and future investigations.  See, e.g., Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) ("The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest . . . ."); United States ex rel. Lloyd v. Vincent, 520 F.2d 1272, 1274 (2d Cir. 1975) (recognizing the strong government interest in protecting the identities of undercover agents).

The use of an alias by a testifying witness is permissible when the government's interest in maintaining the anonymity of its witness outweighs the defendant's interest in confronting the witnesses without limitation.  See Roviaro v. United States, 353 U.S. 53 (1957). In such instances, courts in this district and elsewhere have been willing to permit the use of an alias, such as a pseudonym.  See United States v. Asainov, No. 19-CR-402, ECF No. 122 at 26-27

(NGG) (E.D.N.Y. Jan. 13, 2023) (permitting confidential informant to testify under a pseudonym and precluding questioning about the informant's true identity); United States v. Kandic, No. 17-CR-449 (NGG), ECF No. 266 at 13-14 (E.D.N.Y. Apr. 28, 2022) (same); Naseer, 2015 WL 13843166 at *3 (permitting undercover officers to testify using personal identification numbers).

The use of a pseudonym or another identifier both have been found to be appropriate because they do not curtail a defendant's trial rights because "[t]he cross-examiner can question the witness' activities in the . . . operation without regard to the witness' name, and similarly has an opportunity to see and hear that which he testifies about." Alvarado v. Burge, No. 05-CV-1851, 2006 WL 1840020, at *2 (S.D.N.Y. June 30, 2006); see also Nelson v. Crowley, No. 07-CV-849, 2009 WL 498909, at *5-6 (S.D.N.Y. Feb. 23, 2009) (observing that anonymous testimony by undercover officer did not violate Confrontation Clause's prohibition against anonymous accusers and absentee witnesses); United States v. Baldassare, No. 11-CR-801 (JBW), ECF No. 58 (E.D.N.Y. July 23, 2012) (granting protective order permitting undercover agent to testify under pseudonym and limiting cross-examination).

B.    Discussion

The Court should (i) permit the UC officer to testify under a pseudonym or UC identifier and (ii) preclude the defense from inquiring on cross-examination about the UC officer's true identity and other investigations unrelated to the defendant or this case. The limited restrictions sought here are similarly reasonable to those granted in prior cases, particularly "insofar as the information that they preclude the defense from publicly eliciting—a UC's [i.e., undercover officer] identity—is neither exculpatory as to [the defendant] nor evidently relevant at trial." United States v. Alimehmeti, 284 F. Supp. 3d 477, 491 (S.D.N.Y. 2018) (citing United States v. Urena, 8 F. Supp. 3d 568, 573 (S.D.N.Y. 2014)); see also Kandic, ECF No. 266, at 13-14 (granting motion to refer to a confidential informant by a pseudonym agreed to by the parties).

This is especially true where, as here, the UC officer's true name has no specific relevance to the case or to the UC officer's credibility or knowledge regarding the topics about which the UC officer will testify. See, e.g., Urena, 8 F. Supp. 3d at 573 ("UC–188's true name is immaterial to defendants' guilt or innocence. The defendants will have access to all Giglio material associated with UC–188's true name, and will be able to freely cross-examine him on all topics other than his identity. Moreover, nothing about UC–188's real name goes to his credibility or knowledge regarding the subject of his testimony. The limitation imposed on the defense is therefore negligible.").

In this case, the UC officer's interactions with the defendant, which the government intends to introduce at trial, were all captured in the Snapchat messages the government intends to introduce at trial. The UC officer will testify regarding those communications. Additionally, the government will provide the defendant with appropriate disclosures under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and 18 U.S.C. § 3500, which will enable the defendant to mount an effective cross-examination. In light of the foregoing, the UC officer's true name has no relevance to the UC officer's testimony and no impeachment value, and the defendant will suffer no prejudice as a result of being precluded from cross-examining on those topics. See Naseer, 2015 WL 13843166 at *3 ("Nothing about the witnesses' true names goes to their credibility or knowledge regarding the subject of their testimony.").

Similarly, the defendant should be precluded from inquiring into other investigations that the UC officer has been involved in that are unrelated to the defendant because such information is irrelevant. Disclosure of information regarding the UC officer's other investigations unrelated to this defendant could provide details regarding other investigations that bear no relevance to the UC officer's testimony regarding this case, and the defense should be

precluded from such inquiry.  See generally Alimehmeti, 284 F. Supp. 3d at 494 (granting, preliminarily, government motion to preclude defense inquiry into UC's participation in unrelated matters where defense had not articulated any basis on which such information was relevant).  For these reasons, the government's motion should be granted.

V.    The Court Should Allow the Government to Admit Statements by John Doe 4 to His Mother Regarding the Charged Conduct For a Non-Hearsay Purpose

The government plans to introduce testimony from John Doe 4 and John Doe 4's mother that John Doe 4 reported to his mother inappropriate communications with the defendant and that this led to (i) his mother reviewing some of those communications and observing an explicit image the defendant sent to John Doe 4 on Snapchat, (ii) his mother sending a message to the defendant using John Doe 4's Snapchat account and pretending to be John Doe 4, and (iii) a report of the defendant's conduct to law enforcement.  Statements regarding these facts are admissible because they are not being offered for the truth of the matter asserted, but rather to establish relevant background facts and to demonstrate the effect of the statement on the listener (John Doe 4's mother): that John Doe 4 told his mother about his communications with the defendant, which led her to review his phone, respond to the defendant herself using John Doe 4's account, and make a report to law enforcement.   If necessary, certain of these statements may also be offered as a prior consistent statement by John Doe 4 to rebut any attack on John Doe 4's credibility by the defendant.

A.    Applicable Law

Under the Federal Rules of Evidence, an out-of-court statement is hearsay only if it is offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  For an out-of-court statement to be received in evidence for a purpose other than its truth, the party offering the statement must satisfy Federal Rules of Evidence 401 and 403 and demonstrate that:

"(1) the non-hearsay purpose for which the evidence is offered [is] relevant and (2) the probative value of the evidence for this non-hearsay purpose [is] not [] outweighed by the danger of unfair prejudice." United States v. Paulino, 445 F.3d 211, 217 (2d Cir. 2006).

An out-of-court statement may come into evidence a number of ways including to show the effect on a witness' state of mind, United States v. Dupree, 706 F.3d 131, 138 (2d Cir. 2013), or as relevant background to "clarif[y] noncontroversial matters without causing unfair prejudice on significant disputed matters," and as "appropriate rebuttal to initiatives launched by the defendant." Paulino, 445 F.3d at 217 (internal citations and quotations omitted). In the latter scenario, pursuant to Federal Rule of Evidence 801(d)(1)(B)(ii), the Second Circuit has upheld district court findings that prior consistent statements are admissible non-hearsay statements under subsection (ii) when introduced to rebut "defendants' attacks on [the declarant's] credibility and memory," United States v. Flores, 945 F.3d 687, 706 (2d Cir. 2019), or "to rebut [defense counsel's] charge of inconsistency and to rehabilitate [the declarant's] credibility by placing the alleged discrepancies in context." United States v. Purcell, 967 F.3d 159, 197 (2d Cir. 2020).

When a party is seeking to admit evidence as relevant background or state of mind evidence, the Second Circuit applies a four-part inquiry: "[1] Does the background or state of mind evidence [bear upon] the defendant's guilt? [2] If so, how important is it to the jury's understanding of the issues? [3] Can the needed explanation of background or state of mind be adequately communicated by other less prejudicial evidence or by instructions? [4] Has the [adversary] engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice[.]" United States v. Grecco, 728 F. App'x 32, 35 (2d Cir. 2018) (internal citations omitted); United States v. Mackey, No. 21-CR-80-NGG, 2023 WL 2457861, at *4 (E.D.N.Y. Mar. 10, 2023) (same).

B.    Discussion

On or about May 19, 2023, John Doe 4, reported to his mother that he had been in contact with the defendant and that communications between them were making him uncomfortable. This led to John Doe 4's mother reviewing the communications, including viewing an explicit image sent by the defendant to John Doe 4 through Snapchat, responding to the defendant using John Doe 4's Snapchat account, and making a report to law enforcement about the defendant's conduct. John Doe 4's report is important because Snapchat images can only be viewed a certain number of times and after John Doe 4's mother viewed the explicit image sent by the defendant to John Doe 4, the image was no longer accessible and could not be viewed by law enforcement. John Doe 4's report to his mother also led to his mother responding to the defendant using John Doe 4's Snapchat account and going to law enforcement. As a result, law enforcement then engaged in controlled messages with the defendant from John Doe 4's Snapchat account. The government intends to introduce the fact that John Doe 4's mother became aware of the communications after John Doe 4 reported the inappropriate contact to her as relevant background information and evidence of her state of mind to explain why John Doe 4's mother reviewed the content of John Doe 4's phone and responded to the defendant using John Doe 4's account, and to explain how the investigation into the defendant began as to John Doe 4.

This evidence is admissible as both evidence of John Doe 4's mother's state of mind and non-controversial background evidence as it shows how charges came to be brought against the defendant as to John Doe 4. United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."). It is also not prejudicial because it does not materially alter or change the evidence that will generally be introduced at trial against the defendant. See Mackey, 2023 WL 2457861,

36

at *4 (admitting non-hearsay evidence where it was related to the defendant's guilt for the charged conduct and important to the jury's understanding of the issues); see also United States v. Nelson, 365 F. Supp. 2d 381, 392-93 (S.D.N.Y. 2005) (finding that background evidence was necessary to avoid jurors having concerns about why police officers went to an apartment to retrieve guns); United States v. Ryan, No. 3:23-CR-00291-WHO-1, 2023 WL 7284157, at *1 (N.D. Cal. Nov. 3, 2023) (admitting messages as non-hearsay evidence related to the charged crime to show why the witness called the police).  Indeed, the controlled messages with law enforcement and the defendant will come in as party admissions and John Doe 4, who is expected to testify and will be subject to cross-examination, will introduce similar admissible evidence of his interactions with the defendant.

Additionally, in the event that the defendant seeks to attack John Doe 4's credibility, the government would seek to introduce John Does 4's report of the defendant's conduct to his mother as a prior consistent statement to rebut that attack.  Paulino, 445 F.3d at 21. Because the government's introduction of this evidence would solely be for a non-hearsay purpose, as detailed herein, it should be admitted.

VI.    The Court Should Allow the Government to Authenticate The Defendant's Cellphone Extraction by Certification

The defendant's cellphone was lawfully seized and reviewed in connection with the charges in this case.  In the interest of streamlining trial and avoiding unnecessary custodial witnesses, the government would like to authenticate evidence from the defendant's seized cellphone through a record certification pursuant to Federal Rules of Evidence 902(13) and (14).

A.    Applicable Law

Federal Rules of Evidence 902(13) and (14), provide a mechanism for parties to authenticate evidence generated by electronic processes or systems.  Specifically, Rule 902(13)

allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification."

"The bar for authentication of evidence under [Federal Rule of Evidence] 901(a) is 'not particularly high.'" United States v. Bout, 651 Fed. App'x 62, 63 (2d Cir. 2016) (quoting United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007)).  "It is met where 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" Id. at 63-64 (quoting United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004)).  Moreover, the Supreme Court has held that admitting evidence that has been authenticated by affidavit or certificate does not violate a defendant's right to confrontation because certifications are not testimonial.  See Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009); see also United States v. Qualls, 613 F. App'x 25, 28 (2d Cir. 2015).  As this Court recently found, the facts concerning the electronic systems that generate electronic records and the processes of making electronic copies, like the processes of maintaining business records, are not testimonial because they only establish authenticity—that the records were generated by a reliable process and are what they purport to be—and can therefore be established by certification without implicating the Confrontation Clause.  United States v. Otufale, No. 24-CR-170 (KAM), at *9-10 (E.D.N.Y. July 12, 2024); United States v. Hunt, 534 F. Supp. 3d 233, 256 (E.D.N.Y. 2021) (holding it permissible to use certifications to authenticate records from social media accounts over the objection of the defendant).

B.    Discussion

In this case, law enforcement lawfully seized the defendant's cellphone and the government intends to introduce relevant communications, images, contacts, and other content

from the extraction of his cellphone.[8]  The content from his cell phone should be admissible through certification because forensic images of cellphones are generated by a standard process that produces an accurate result.  United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (affirming district court's decision to admit text message evidence extracted from defendant's phone as self-authenticating under FRE 902(14)); United States v. Anderson, 563 F. Supp. 3d 691, 695-96 (E.D. Mich. 2021) (finding text messages self-authenticating under FRE 902(14)). Excerpts from such records that are generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification.  Accordingly, electronic evidence can be authenticated by certification of a competent technician who performed the extraction and generated the copies rather than by the live testimony.  Id. (finding digital records sufficiently authenticated by certification).

For these reasons, the government should be permitted to authenticate and offer as evidence content from the defendant's cellphone by certification.  This would streamline the presentation of evidence at trial, eliminate unnecessary persons from the courtroom, and shorten the amount of time that jurors will need to sit for trial, thereby promoting judicial efficiency.

---

[8]    Self-authentication of electronic evidence by certification establishes that electronic evidence is authentic, not that it is relevant or non-hearsay.  In this case, the communications the government will introduce are not hearsay because they are opposing party admissions pursuant to Federal Rule of Evidence 801(d)(2) and they are relevant because the substance relates to the charges.

VII.    The Court Should Preclude Evidence and Argument Concerning Possible Punishment and
        Collateral Consequences

        The Court should preclude the defendant from referencing at trial any consequences

of his conviction because such evidence is irrelevant, unfairly prejudicial, and outside the province

of the jury.

        A.    Applicable Law

        Evidence regarding possible consequences the defendant may face if convicted

should be precluded because it is not relevant.  Pursuant to Rule 401 of the Federal Rules of

Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Generally, relevant evidence is admissible and "[i]rrelevant evidence is not admissible."  See Fed.

R. Evid. 402.  "[T]he district court has broad discretion to exclude evidence that is irrelevant . . . ."

United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980); see also Fed. R. Evid. 403.  The

defendant's punishment is not a fact "of consequence" to be determined at trial.  Therefore, any

evidence of those issues is not relevant.  See Shannon v. United States, 512 U.S. 573, 579 (1994)

("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

        Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are

not within their province, distracts them from their factfinding responsibilities, and creates a strong

possibility of confusion."  Id.  Indeed, jurors are routinely instructed not to consider a defendant's

punishment in determining a defendant's guilt.  See generally Sand, et al., Modern Federal Jury

Instructions ("Sand"), Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should

be admonished to reach its verdict without regard to what sentence might be imposed [and] not to

consider the consequences of their verdicts." (internal citation omitted)); United States v. Watts,

934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should

not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result.").

        Courts have repeatedly precluded evidence of the potential sentences defendants face on the grounds that such evidence is irrelevant, unfairly prejudicial, and outside the province of the jury. See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment); United States v. DiMarzo, 80 F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of a potentially harsh sentence because such evidence "would have necessitated an unwarranted departure from the fundamental division of responsibilities between judge and jury"). In short, guilt should determine punishment, not the other way around. See United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court . . . . We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that the courts may permit it to occur when it is within their authority to prevent.").

    B.    <u>Discussion</u>

        The Court should preclude the defendant from referencing at trial any consequences of his conviction. The defendant faces a mandatory statutory sentence of between fifteen years and life imprisonment if convicted of offenses charged in the Superseding Indictment. The government moves to preclude at trial any discussion of the defendant's possible punishments or collateral consequences of conviction. Such information could only serve to confuse the jury, invite the jury to consider irrelevant information, and potentially ignore the Court's instructions due to sympathy for the defendant. Courts have consistently recognized that juries have no right to nullify, and "trial courts have the duty to forestall or prevent such conduct." Id. at 616.

Therefore, the Court should preclude the defendant from referencing potential punishment and collateral consequences at trial.[9]

<u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the government's motions <u>in</u> <u>limine</u> in their entirety.

Dated:      Brooklyn, New York
            August 22, 2024

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                          By:           _____/s/_____
                                        Rachel A. Shanies
                                        Lauren Bowman
                                        Assistant United States Attorneys
                                        (718) 254-7000

---

[9]      If the defendant exercises his right to testify, the government should be permitted to cross-examine him regarding the potential consequences of conviction that he faces because, under those circumstances, it is relevant to the defendant's credibility as a witness.  <u>See</u> <u>Davis v.</u> <u>Alaska,</u> 415 U.S. 308, 316 (1974) (discussing use of cross-examination to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues . . . in the case at hand.  The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony" (internal quotation omitted)).

42