United States District Court
Eastern District of New York

-----------------------------------X

United States of America,

    - against -                **Memorandum and Order**

Christopher Terranova,           No. 23-cr-516 (KAM)

                  Defendant.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

    The Government has charged Christopher Terranova with sex crimes concerning four minors, John Does 1 through 4. (ECF No. 29, Superseding Indictment.) Terranova has moved to sever the offenses and hold separate trials with respect to each of the four John Does. (ECF No. 42, Mem. Law Supp. Def.'s Mot. Severance ("Def.'s Mot.").) The Government has filed a motion to allow the John Doe witnesses and their testifying family members to use only their first names or pseudonyms and to limit the disclosure of the John Does' and their parents' full names and other identifying information; a motion to permit an undercover officer to testify under a pseudonym; and several motions in limine. (ECF No. 41, Gov't's Mots. Limine ("Gov't's Mots.").) The Government also has filed a motion to redact portions of Terranova's memorandum in opposition to the Government's motions, (ECF No. 47, Sept. 16, 2024, Ltr. from

R. Shanies ("Seal Mot.")).

For the reasons below, the Court respectfully denies Terranova's motion to sever and grants the Government's motions in their entirety except for one motion in limine (to introduce evidence regarding Terranova's possession of sexually explicit images of apparent minor victims other than John Does 1 through 4) that the Court deems withdrawn.

### Background

The following factual background is taken largely from the Superseding Indictment and the Government's pre-trial motions. The Court provides this background as "context for [its] decision[s]" but "make[s] no findings concerning these facts." *See United States v. Jones*, No. 15-cr-153 (VSB), 2017 WL 11368368, at *1 n.3 (S.D.N.Y. Jan. 11, 2017).

The Government alleges that from December 2019 to May 2023, Christopher Terranova, a now-suspended police officer from Staten Island, used internet-based applications and cellphones to contact four minor boys, John Does 1 through 4 in an effort to entice them to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct for Terranova and that Terranova engaged in physical sex acts with two of them.  (*See* Gov't's Mots. 2–6; Superseding Indictment ¶¶ 1–4.)

In December 2019, Terranova allegedly met John Doe 1, who

2

resided in Texas, through social media and communicated with him by text, Snapchat, and Facetime.  (Gov't's Mots. 5; Superseding Indictment ¶ 1.)  Communications between them dating back to when John Doe 1 was fifteen years old reference sexual acts between them.  (Gov't's Mots. 5.)  John Doe 1 also sent Terranova sexually explicit images over Snapchat and livestreamed sexual acts to Terranova over Facetime.  (*Id.*)  Terranova met John Doe 1 multiple times in person in Texas to engage in sex acts with him.  (*Id.* 5–6.)  Terranova also purchased a second home in Texas near John Doe 1's residence. (*Id.* 6.)

In February 2022, Terranova allegedly began communicating with John Doe 2, a family friend who was fifteen years old at the time, over Snapchat and Instagram, and asked him sexual questions.  (*Id.* 5; Superseding Indictment ¶ 2.)  These communications escalated to an incident where Terranova offered to pick up John Doe 2 from a party and drive him home.  (Gov't's Mots. 5.)  Terranova drove John Doe 2 to an isolated area where Terranova engaged in sex acts with him.  (*Id.*)  Terranova continued messaging John Doe 2 afterward, including making sexually explicit comments and requesting nude pictures of John Doe 2.  (*Id.*)

In September 2022, Terranova allegedly met John Doe 3, who was twelve years old at the time, while Terranova was providing

law enforcement presence at a football field on Staten Island. (*Id.* 4; Superseding Indictment ¶ 2.)  Terranova began communicating with John Doe 3 over Snapchat, where he asked him sexual questions and requested nude pictures of John Doe 3. (Gov't's Mots. 4.)

In March 2023, Terranova allegedly began communicating with John Doe 4, who was fifteen years old at the time.  (*Id.* 2–3.) John Doe 4 had been the victim of a robbery, and his parents encountered Terranova, who they knew from the neighborhood, at the precinct when they went to report it.  (*Id.* 2.)  Terranova obtained John Doe 4's cellphone number by accessing the robbery complaint from the New York Police Department's system and then texted John Doe 4 about the investigation and the police department.  (*Id.* 3.)  Terranova asked John Doe 4 to add him on Snapchat and Instagram, where Terranova began asking him sexual questions and requesting nude pictures of John Doe 4.  (*Id.*) John Doe 4 reported the messages to his mother, who messaged Terranova through John Doe 4's Snapchat account pretending to be John Doe 4 and told Terranova that he was making John Doe 4 uncomfortable.  (*Id.* 4.)  John Doe 4's mother reported Terranova's conduct to the police, and an undercover officer engaged in controlled messages with Terranova using John Doe 4's Snapchat account.  (*Id.*)  Terranova sent sexually explicit messages to the undercover officer, thinking the undercover

4

officer was John Doe 4.  (*Id.*)

A grand jury indicted Terranova on December 13, 2023, (ECF No. 1, Indictment), and returned a Superseding Indictment on July 10, 2024.  Count One of the Superseding Indictment charges Terranova with sexually exploiting John Doe 1.  (Superseding Indictment ¶ 1); *see* 18 U.S.C. § 2251(a).  Counts Two through Four respectively charge Terranova with the attempted sexual exploitation of John Does 2 through 4.  (Superseding Indictment ¶ 2); *see* 18 U.S.C. § 2251(e).  Counts Five and Six respectively charge Terranova with the coercion and enticement of John Does 1 and 2.  (Superseding Indictment ¶¶ 3-4); *see* 18 U.S.C. § 2422(b).

## Discussion

Terranova moves to sever the offenses and hold four separate trials, one for each of the John Does.  (*See* Def.'s Mot.)  The Government has filed a motion to limit the disclosure of the John Does' and their parents' names and identifying information, a motion to permit an undercover officer to testify under a pseudonym, and several motions in limine.  (*See* Gov't's Mots.)  The motions in limine include a motion to preclude the introduction of evidence regarding the John Does' prior sexual behavior, a motion to permit the introduction of John Doe 4's statements to his mother, a motion to authenticate the extraction of Terranova's phone by certification, and a motion

5

to preclude the introduction of evidence regarding the consequences of conviction. (*See id.* 14–18, 34–42.)  The Government also has moved to redact information from Terranova's memorandum in opposition to the Government's motions that could be used to identify specific minor victims.  (*See* Seal Mot.)

Terranova has not filed any motions in limine but opposes some of the Government's motions and the redaction motion.  (*See* ECF No. 45, Def.'s Resp. Gov't's Mots. Limine ("Def.'s Opp'n"); ECF No. 50, Sept. 18, 2024, Ltr. from V. Varghese ("Seal Opp'n").)

The Court addresses each motion in turn below.

## I.   **Terranova's Motion to Sever**

Terranova moves to sever the offenses and hold separate trials as to each John Doe.  (Def.'s Mot. 4.)  Specifically, he seeks to hold one trial on Counts One and Five regarding John Doe 1, a second trial on Counts Two and Six regarding John Doe 2, a third trial on Count Three regarding John Doe 3, and a fourth trial on Count Four regarding John Doe 4.  (*Id.*)

In resolving a motion to sever offenses, a court must address two issues.  First, the court must determine whether the offenses were properly joined under Federal Rule of Criminal Procedure 8(a).  If the offenses were not properly joined, the court must order separate trials regardless of whether the defendant would otherwise be prejudiced.  *See United States v.*

*Shellef*, 507 F.3d 82, 100 (2d Cir. 2007).  If the offenses were properly joined, Rule 14(a) requires the court to consider whether severance is nonetheless necessary to avoid undue prejudice.

### A.   Joinder

Terranova first argues that the offenses were improperly joined.  (Def.'s Mot. 7.)  Offenses are properly joined if they are (1) "of the same or similar character," (2) "based on the same act or transaction," or (3) "connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  The Government relies solely on the first ground for joinder, arguing that the six offenses charged in the Superseding Indictment are all of the same or similar character.  (ECF No. 44, Mem. Opp'n Def.'s Mot. Severance ("Gov't's Opp'n"), 9.) Offenses are of the same or similar character when they are generally alike, share a logical connection, or concern overlapping evidence.  *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008).

The Court finds that all six counts in the Superseding Indictment are of the same or similar character because they all charge offenses under 18 U.S.C. § 2422 or § 2251 and "share a 'general likeness' in terms of the conduct and events alleged" and concern overlapping evidence.  *See id.*  In *United States v. Rivera*, for example, the Second Circuit found four offenses

7

under 18 U.S.C. § 2422 and § 2251 properly joined under
Rule 8(a) where the defendant met four minor victims "in
[i]nternet chat rooms[,] exchanged sexually explicit messages
and photographs with them[,] and enticed them to meet for
illicit sexual encounters." *Id.* at 253-54.  Similarly here,
Terranova is alleged to have utilized internet-based
applications and his cellphone to exchange sexually explicit
messages and images with four minors over Snapchat and other
apps and to have enticed two of them to meet for illicit sexual
encounters.  (*See* Superseding Indictment ¶¶ 1-4; Gov't's Mots.
2-6.)  The offenses thus resemble each other in nature and share
a logical connection, as they all concern similar methods of
unlawfully sexually engaging with minors.  *See Rivera*, 546 F.3d
at 253.

Terranova concedes that all six offenses "charge the same
kind of conduct," (Def.'s Mot. 7), but he responds that the
offenses are "factually unconnected" because they concern
different minors and are "temporally and geographically
attenuated," (*id.* 12).  Rule 8(a), however, permits joining
offenses of the same or similar character that concern different
victims.  *See Rivera*, 546 F.3d at 253 (upholding joinder of five
offenses where different offenses concerned different victims).
Because the offenses were similar in nature and occurred during
overlapping periods between December 2019 and May 2023, the mere

8

"fact that different victims were involved" and that Terranova
is alleged to have "used slightly different methods" to sexually
engage with them "do[es] not create sufficient differences so as
to make joinder improper." *See United States v. Meszaros*,
No. 06-cr-0290 (JFB), 2008 WL 5113425, at *7 (E.D.N.Y. Nov. 25,
2008) (quoting *United States v. Orefice*, No. 98-cr-1295 (DLC),
1999 WL 349701, at *7 (S.D.N.Y. May 27, 1999)).

The fact that John Doe 1 resided in a different state from
Terranova and the other John Does, (*see* Gov't's Mots. 5-6), also
does not render joinder improper. *Rivera*, for example, upheld
the joinder of counts involving the sexual abuse of minors in at
least three states. *See* 546 F.3d at 247-48. One count
concerned the defendant driving to engage in sex acts with a
minor in the District of Columbia, another count concerned the
defendant engaging in sex acts with a different minor in
Connecticut, a third count concerned the defendant travelling to
Massachusetts to engage in sex acts with a different minor and
take nude pictures of him, and a fourth count concerned a fourth
minor with whom the defendant exchanged sexual messages and
pictures online. *Id.*

The offenses charged in the instant case share an even
closer geographic connection, as three of the four John Does
resided in Staten Island, where Terranova worked as a police
officer, and all the John Does communicated with Terranova

9

online through Snapchat and other apps. (*See* Gov't's Mots. 2–
6.)

Further, joinder is proper despite Terranova allegedly
having communicated with different John Does at different times.
The conduct alleged as to John Does 2 through 4 occurred during
overlapping periods spanning sixteen months in total.
(Superseding Indictment ¶ 2); *see United States v. Griffin*,
811 F. App'x 683, 685 (2d Cir. 2020) (summary order) (upholding
joinder of offenses concerning different drug transactions
during same "approximately one-year period"). Terranova's
conduct as to John Doe 1 allegedly occurred from December 2019
through September 2022, which overlaps with the allegations
regarding John Doe 2 and possibly John Doe 3 as well depending
on which day in September 2022 Terranova met John Doe 3. (*See*
Superseding Indictment ¶¶ 1–2.) Even the gap between when
Terranova allegedly began communicating with John Doe 1 and
began communicating with John Doe 2 is relatively short,
especially considering that "evidence of the earlier offenses
was uncovered as part of the investigation that took place"
regarding a more recent offense. *See United States v. Pearson*,
No. 15-cr-117 (JRT), 2015 WL 6445439, at *15 (D. Minn. Oct. 23,
2015) (finding "six counts span[ning] an approximately three-
year period" properly joined).

Finally, the offenses also are properly joined because "the

10

same evidence may be used to prove each count." *See Rivera*, 546 F.3d at 253 (quoting *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991)).  For example, the same electronic evidence from Terranova's phone, including his activity and usernames on Snapchat and other apps, would be used to prove each count. (*See* Gov't's Opp'n 14); *Rivera*, 546 F.3d at 254 (upholding joinder where "some of the same exhibits were used to prove" three of five counts).  More importantly, evidence of Terranova's conduct with respect to each John Doe would be admissible in a trial concerning the other minor John Does, and severance would require each John Doe to testify at four separate trials – a very difficult burden for any sexual assault victim.  *See United States v. Brown*, 627 F. Supp. 3d 206, 239 (E.D.N.Y. 2022) (finding joinder proper where severance may have required "victims . . . to relive and testify to traumatic experiences at multiple trials").

Specifically, evidence as to one of the John Does would be admissible in a trial as to another John Doe as an "other child molestation" under Federal Rule of Evidence 414.  Terranova argues that "Rule 404(b) would govern the admissibility determination,"  (Def.'s Mot. 14), but "Rule 414 replaces Rule 404(b)" in "child molestation cases."  *United States v. Levy*, 594 F. Supp. 2d 427, 439 (S.D.N.Y. 2009) (citing *United States v. Castillo*, 140 F.3d 874, 879 (10th Cir. 1998)).  The

11

distinction matters because Rule 414 creates an "exception to the usual proscription" that Rule 404(b) imposes against "propensity" evidence.  *United States v. Davis*, 624 F.3d 508, 511–12 (2d Cir. 2010).

In a criminal case where, as here, the defendant is accused of "child molestation," Rule 414(a) permits the court to admit evidence that the defendant committed "any other child molestation," which "may be considered on any matter to which it is relevant."  Fed. R. Evid. 414(a).  "[C]hild molestation" is a term of art meaning "a crime under federal law or under state law . . . involving" any of the following:

> (A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child; (B) *any conduct prohibited by 18 U.S.C. chapter 110*; (C) contact between any part of the defendant's body – or an object – and a child's genitals or anus; (D) contact between the defendant's genitals or anus and any part of a child's body; (E) deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or (F) an attempt or conspiracy to engage in conduct described in subparagraphs (A)–(E).

Fed. R. Evid. 414(d)(2) (emphasis added).  Chapter 110 of Title 18 of the United States Code includes Section 2251, the statute under which Terranova is charged in Counts One through Four.  (*See* Superseding Indictment ¶¶ 1–2.)

Here, all prerequisites for admissibility under Rule 414 are met.  In the instant criminal case, Terranova is charged with "child molestation" as to each John Doe as defined in

Rule 414(d)(2)(B).  (*See id.*); *Levy*, 594 F. Supp. 2d at 439
(holding that definition of "child molestation" includes conduct
violating 18 U.S.C. § 2251(a)).  Evidence of Terranova's conduct
as to one of the John Does is "relevant to show his attraction
to children," specifically to the other John Does.  *See United
States v. Spoor*, 904 F.3d 141, 155 (2d Cir. 2018).
Additionally, evidence regarding one John Doe is not "inherently
any *more* inflammatory" than evidence regarding any of the other
John Does, as the allegations as to each John Doe describe
sexual misconduct involving children.  *See United States v.
Wager*, 651 F. Supp. 3d 594, 603 (N.D.N.Y. 2023) (emphasis
added).

Terranova implies that the Government has not alleged
"child molestations" as to John Does 1, 2, and 4.  (*See* Def.'s
Opp'n 5–6.)  He relies on Rule 414's definition of "child" as "a
person below the age of [fourteen]," *see* Fed. R. Evid.
414(d)(1), and notes that the Government alleges that Terranova
began exchanging sexually explicit messages with John Does 1, 2,
and 4 when they were fifteen, (*see* Gov't's Mots. 2–6).  The
implication is that Rule 414(d)(1)'s definition of "child" as a
person under fourteen restricts Rule 414(d)(2)(B)'s definition
of "child molestation" to offenses committed against persons
under fourteen, even though the federal statutes referenced in
Rule 414(d)(2)(B) criminalize conduct involving victims under

13

age eighteen.

The Court respectfully disagrees with Terranova's arguments.  The Second Circuit has not yet resolved the question whether Rule 414(d)(1) restricts Rule 414(d)(2)(B) and thus whether a defendant who previously engaged in conduct violating one of the federal statutes listed in Rule 414(d)(2)(B) with respect to a child aged fourteen to seventeen has committed an "other child molestation."  *See United States v. Archambault*, 740 F. App'x 195, 200-01 (2d Cir. 2018) (acknowledging issue but declining to address it under plain error review).  Every circuit to address the question, however, has concluded that Rule 414(d)(1) *does not* restrict the conduct described in Rule 414(d)(2)(B) to conduct involving victims under fourteen. *See United States v. Manning*, 106 F.4th 796, 800 (8th Cir. 2024); *United States v. Hoover*, 95 F.4th 763, 772 (4th Cir. 2024); *United States v. Foley*, 740 F.3d 1079, 1087 n.3 (7th Cir. 2014); *United States v. Sturm*, 673 F.3d 1274, 1284 (10th Cir. 2012); *see also United States v. Caesar*, 582 F. Supp. 3d 216, 224 (E.D. Pa. 2022).

Those decisions are correct.  As shown above, (*supra* 12), Rule 414(d)(2)'s definition of "child molestation" comprises six subparagraphs, *see* Fed. R. Evid. 414(d)(2).  Subparagraph B defines "child molestation" to include "any conduct prohibited by 18 U.S.C. chapter 110," and it does not use the term "child."

*See* Fed. R. Evid. 414(d)(2)(B).  Subparagraph A of
Rule 414(d)(2), on the other hand, includes "any conduct
prohibited by" a different set of federal statutes but with the
qualifier that the conduct must have been "committed with a
child" – a qualifier that *does not* appear in subparagraph B.
*See* Fed. R. Evid. 414(d)(2)(A).  Subparagraphs C through E
define "child molestation" using generic descriptions, each
description using the term "child."  *See* Fed. R. Evid.
414(d)(2)(C)-(E); *see also* Fed. R. Evid. 414(d)(2)(F) (covering
attempts and conspiracies to engage in conduct covered by other
subparagraphs).  Rule 414(d)(1)'s definition of "child" states
that "*[i]n this rule . . .* 'child' means a person below the age
of [fourteen]."  Fed. R. Evid. 414(d)(1) (emphasis added).
Thus, because subparagraphs A, C, D, and E all include the term
"child," the definition of "child" supplied by Rule 414(d)(1)
restricts those subparagraphs to conduct involving victims under
fourteen.  In contrast, subparagraph B omits the term "child"
and applies to *any* conduct prohibited by the federal statutes
listed in that subparagraph, regardless of the victim's age.

In fact, even if the Court were to take Rule 414(d)(1)'s
definition of "child" and graft it onto the statutes covered by
Rule 414(d)(2)(B), it would not affect whether evidence of
Terranova's conduct as to one of the John Does is admissible in
a trial concerning one of the other John Does.  The statute

under which Terranova is charged in Counts One through Four uses
the term "minor," not "child," 18 U.S.C. § 2251, and the
applicable statutory definition of "minor" includes "any person
under the age of eighteen years," 18 U.S.C. § 2256(1).  Thus,
the evidence that would be introduced in a trial as to one of
the John Does would be admissible in a trial as to each of the
other John Does under Rule 414.

Accordingly, Counts One through Six of the Superseding
Indictment all are properly joined under Rule 8(a).

### B.  Severance

Terranova next argues that even if the offenses are
properly joined, severance is necessary to avoid undue
prejudice.  (Def.'s Mot. 12.)  Severance is necessary only when
there is a risk of "substantial prejudice to the right of the
defendant[] to a fair trial." *United States v. Page*, 657 F.3d
126, 129 (2d Cir. 2011) (quoting *Zafiro v. United States*,
506 U.S. 534, 540 (1993)).  Less drastic measures than
severance, "'such as limiting instructions, often will suffice'
to cure any risk of prejudice and permit joinder." *Id.* (quoting
*Zafiro*, 506 U.S. at 539).

Terranova argues that severance is necessary to avoid
"spillover" prejudice "whereby the jury hears evidence about one
victim, decides that Mr. Terranova is the kind of person who
commits these offenses, and then uses evidence from the first to

16

convict as to the second," and so on.  (Def.'s Mot. 13.)  This "generalized claim of prejudice is insufficient" to support severance.  *See Rivera*, 546 F.3d at 254 (rejecting argument that "spillover" prejudice resulted from "cumulative effect of evidence relating to distinct offenses" on jury's "assessment of whether the government had met its burden of proof on any one charge").  A general risk of spillover prejudice arises in every trial with multiple counts and can be cured by instructions to the jury to "consider each count separately," to "return a separate verdict" as to each count, and that the verdict "must be unanimous as to each charge."  *See Rivera*, 546 F.3d 254.  Moreover, "[t]he Federal Rules of Evidence . . . specifically sanction the kind of showing that [Terranova] says is impermissible and conducive to spillover," *see Rivera*, 546 F.3d at 254, because evidence as to one John Doe would be admissible in a hypothetical trial concerning one of the other John Does under Rule 414, (*supra* I.A).

Accordingly, because Counts One through Six are properly joined and their joinder does not risk undue prejudice to Terranova that cannot be cured with appropriate jury instructions, the Court respectfully denies Terranova's motion to sever.

17

## II.  Government's Motion to Restrict Disclosure of the John Does' and Their Parents' Identifying Information

The Government moves for an order restricting the use of the John Does' and their parents' names to their first names or pseudonyms and restricting certain other identifying information.  (Gov't's Mots. 10.)  Federal law authorizes a court to enter "an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child."  18 U.S.C. § 3509(d)(3)(A).

In deciding whether to enter a protective order under this provision, a court must weigh the "testifying witness's interest in anonymity against the defendant's due process and cross examination rights, as well as the rights of the public and the press to access the trial."  *See United States v. Daskal*, No. 21-cr-110 (NGG), 2023 WL 9424080, at *2 (E.D.N.Y. July 12, 2023).  If the Government "'seeks to limit disclosure of identifying information in open court,' it 'must provide a reason for the limitation.'"  *Id.* (quoting *United States v. Marcus*, No. 05-cr-457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007)).  Once the Government provides a valid reason, the defendant may argue that it is overcome by a "particularized

18

need for disclosure of the relevant information, which the court weighs against the risks to the witness." *Id.* (quoting *Marcus*, 2007 WL 330388, at *1).  Relatedly, the public has a qualified "constitutional right of access to criminal trials." *Id.* at *3 (quoting *Globe Newspaper Co. v. Super. Ct. for Norfolk Cty.*, 457 U.S. 596, 603 (1982)).  To restrict public access, the Government must show that the proposed limitation is narrowly tailored to serve a compelling government interest. *Id.* at *3.

The Court finds that the Government's proffered reasons for limiting disclosure of the John Does' identities – to avoid "needless anxiety," "negative social stigma," "potential harassment," and "undue embarrassment" – are valid.  (*See* Gov't's Mots. 11.)  All of the John Does will testify at trial and were "children at the time of the [alleged] sexual abuse," and this case has a "likelihood of significant media coverage" due to Terranova's status as a former police officer. *See Daskal*, 2023 WL 9424080, at *3 (citing these factors as favoring child witness anonymity).  As courts in the Second Circuit have acknowledged, "those who come forward with allegations of sexual assault and abuse," especially "young victims," often face "pain and attendant social stigma" if required to testify. *Id.* (collecting cases).  Courts thus routinely permit alleged victims of sexual abuse to testify under pseudonyms because requiring them to "publicly provide their names could chill

19

their willingness to testify for fear of having their personal histories publicized." *Id.* (quoting *United States v. Maxwell*, No. 20-cr-330 (AJN), ECF No. 465, Pre-Trial Conf. Tr., 8:1–2 (S.D.N.Y. Nov. 1, 2021)). The Court finds that permitting the John Does and their parents to use only first names or pseudonyms will spare the John Does needless embarrassment, anxiety, potential harassment, and social stigma, and will avoid chilling their testimony in the instant case.

The Court also finds that the John Does' interest in anonymity outweighs any countervailing constitutional interests at stake. Terranova already knows who the John Does are, and any further information necessary for him to investigate the case can be and has been provided in discovery without public disclosure pursuant to the Protective Order. (*See* ECF No. 11, Protective Order); *see Daskal*, 2023 WL 9424080, at *5 (finding anonymity appropriate where defendant already knew alleged victim's name and was "free to undertake whatever research he [saw] fit in advance of trial"); *see also United States v. Kidd*, 385 F. Supp. 3d 250, 255 (S.D.N.Y. 2019) ("[T]he right to know the victims' identity is separate from whether the victims may testify at trial anonymously.").

Further, divulging the John Does' identities is unnecessary for effective cross-examination because that information is "immaterial to [Terranova's] guilt or innocence." *See Daskal*,

20

2023 WL 9424080, at *3 (quoting *United States v. Zhong*,
No. 16-cr-614 (DLI), 2018 WL 6173430, at *1–2 (E.D.N.Y. Nov. 26,
2018)).  The jury need not learn the John Does' identities to
assess their credibility, as the anonymity order will not
prevent Terranova from cross-examining the John Does regarding
non-identifying background details that may bear on credibility.
The order also will not violate Terranova's confrontation
rights, which are subject to "reasonable limits," *see Delaware
v. Van Arsdall*, 475 U.S. 673, 679 (1986), that include
protecting minor victims' wellbeing and safety as well as
"protect[ing] witnesses from harassment or undue embarrassment,"
*see* Fed. R. Evid. 611(a); *Daskal*, 2023 WL 9424080, at *5
(concluding that anonymity order would "not impair [defendant's]
Sixth Amendment confrontation rights whatsoever").  Finally,
Terranova has not argued that there is a particularized need to
disclose the John Does' identities.  (*See* Def.'s Opp'n 2–4.)

   As for the public's right of access, the Government's
proposed anonymity order is narrowly tailored to serve the
compelling governmental interests of protecting the John Does
from needless social stigma and encouraging them to testify
candidly.  The anonymity order will not meaningfully interfere
with the public's ability to "see and hear [the John Does]
testify and be present for the entirety of trial." *See Daskal*,
2023 WL 9424080, at *4.  The "minor abridgement" of public

access caused by withholding specific identifying information
will have at most a negligible impact on the public's ability to
understand and monitor the proceedings.  *See id.* (quoting *United
States v. Paris*, No. 06-cr-64 (CFD), 2007 WL 1484974, at *2
(D. Conn. May 18, 2007)).

Terranova does not oppose a protective order with respect
to John Does 1, 3, and 4 but does oppose one with respect to
John Doe 2.  (Def.'s Opp'n 2.)  Essentially, he argues that John
Doe 2 waived his right to anonymity by publicly discussing the
case on a social media platform where he had thousands of
followers and used his real name.  (*Id.* 3-4.)  The Court
respectfully disagrees.  The "choice of a victim to publicly
discuss a crime is not analogous to being put on the stand about
it."  *United States v. Raniere*, No. 18-cr-204 (NGG), ECF
No. 622, Mem. & Order, 34 n.17 (E.D.N.Y. May 4, 2019); *see also*
*Daskal*, 2023 WL 9424080, at *4 (finding it "immaterial" that
alleged victim's "name and allegations [were] already known to
at least some members of her community" because there are
profound "differences between rumors circulating within a
specific community and detailed testimony in a highly publicized
trial"); *Maxwell* at 9:13-25 (permitting alleged victims to
testify anonymously even though some of them "previously
publicly disclosed some of their allegations" because
"[d]eciding to participate in or contribute to a criminal . . .

22

prosecution is a far different matter than simply making a
public statement relating to" defendant).

John Doe 2, who was a minor at the time of the alleged
offense, has not waived his right to anonymity. *See Raniere* at
34 n.17 (rejecting defendant's argument that "the names of
several victims [were] already publicly available" and that
"some victims [had] made themselves public 'by choice'").  Even
if John Doe 2 used his real name, that "does not mean that the
details of [his] experience are already available." *See id.*
The Court has viewed John Doe 2's video, which the Government
provided under seal.  (ECF No. 47, Sept. 16, 2024, Ltr. from
R. Shanies.)  The video reveals certain messages that Terranova
sent John Doe 2, but not that Terranova engaged in physical sex
acts with John Doe 2.  At trial, however, John Doe 2 would "not
be able to choose how and to what level of detail [he] discusses
the crime." *See Raniere* at 34 n.17.  Thus, John Doe 2's trial
testimony has the potential to expose him to a far greater
degree of embarrassment and stigma than his social media post
might have.

Finally, Terranova appears to suggest that it would be
inappropriate to extend the anonymity order to the John Does'
testifying family members.  (*See* Def.'s Opp'n 4 (arguing that
the relevant statutory provisions "are intended to protect
*victims* from psychological damage" and "do <u>not</u> extend to any

23

embarrassment family members may suffer") (emphasis in original).) Limiting the disclosure of the parents' identifying information is necessary not to protect the parents, however, but rather to prevent the parents' identifying information from being used to identify the John Does. *See, e.g.*, *United States v. Glatz*, No. 19-cr-218 (DCP), 2024 WL 3735946, at \*6 (E.D. Tenn. Aug. 8, 2024) ("The Court also requires that the names of the minor's parents be redacted to the individual's initials, because the parents' names reveal the last name of the minor.").

Accordingly, the Court grants the Government's motion to limit the disclosure of the John Does' and their parents' identities. Throughout all pre-trial proceedings, the parties are ordered to refer to the alleged victims identified in the Superseding Indictment only as "John Doe 1," "John Doe 2," "John Doe 3," and "John Doe 4," and not to publicly disclose any uniquely identifying information about any of them. At trial, the parties are ordered to refer to the John Does only by their first names or by pseudonyms. The parties are ordered not to ask the John Does to disclose uniquely identifying information such as addresses, phone numbers, usernames, names of family members, names of schools they attended, or places of employment. The parties are ordered not to publish any document to the gallery that reflects any John Doe's name or his uniquely

identifying information.  Should any party admit such a document into evidence, the party is ordered to seal or redact the document to remove any uniquely identifying information.  Any testifying family members of the John Does will be permitted to testify using only a first name or pseudonym.  The parties are ordered not to publicly disclose the names or personally identifying information of any of the John Does' family members.

### III. Government's Motion to Permit Undercover Officer to Testify Under a Pseudonym

The Government moves for an order permitting the undercover officer, (*see supra* 4), to testify under a pseudonym and to preclude Terranova from inquiring into the undercover officer's identity or their other investigations unrelated to the instant case, (Gov't's Mots. 30–31).

A motion to protect an undercover officer's identity implicates the defendant's constitutional right to confront adverse witnesses.  *United States v. Mial*, No. 21-cr-499 (PAE), 2022 WL 5240988, at *6 (S.D.N.Y. Oct. 6, 2022).  The confrontation right is not absolute, however, and sometimes must yield to "other legitimate interests in the criminal process." *Washington v. Walsh*, No. 08-cv-6237 (DAB), 2010 WL 423056, at *6 (S.D.N.Y. Feb. 5, 2010) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).  Those "other legitimate interests" include protecting the "safety and effectiveness" of undercover

25

officers, *Mial*, 2022 WL 5240988, at *7, and courts in this circuit thus routinely permit undercover officers to testify under pseudonyms, *see, e.g.*, *United States v. Sterritt*, No. 21-cr-193 (KAM), 2023 WL 7386660, at *11-12 (E.D.N.Y. Nov. 8, 2023); *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 490-91 (S.D.N.Y. 2018); *United States v. Naseer*, No. 10-cr-19 (RJD), 2015 WL 13843166, at *2-3 (E.D.N.Y. Jan. 26, 2015); *United States v. Urena*, 8 F. Supp. 3d 568, 573 (S.D.N.Y. 2014).

In opposing the Government's motion, Terranova argues that the Government offered no "proof" that use of the testifying undercover officer's true name would pose a risk to their safety or effectiveness.  (Def.'s Opp'n 8.)  In reply, however, the Government submitted a sealed *ex parte* submission describing the undercover officer's service, scope of engagement, and other undercover investigations.  (*See* ECF No. 52, Sept. 20, 2024, Ltr. from R. Bennek.)  The Court finds based on the Government's submission that the Government and the undercover officer have strong interests in maintaining the confidentiality of the undercover officer's identity in order to protect their safety and the integrity of their other investigations.

Terranova's confrontation interest is comparatively weak. The officer's identity "is neither exculpatory as to [Terranova] nor evidently relevant at trial."  *See Alimehmeti*, 284 F. Supp. 3d at 491.  Nor is the officer's identity relevant

26

to their "credibility or knowledge" regarding the Snapchat messages, the primary "subject of [the officer's] testimony." *See Urena*, 8 F. Supp. 3d at 573.  The Government represents that it will provide Terranova appropriate impeachment-related disclosures under *Giglio v. United States*, 405 U.S. 150 (1972), (Gov't's Mots. 33), which will enable Terranova to "freely cross-examine [the officer] on all topics other than [the officer's] identity," *see Urena*, 8 F. Supp. 3d at 573.  As to the officer's other matters, Terranova has not "articulated any basis on which" that work "would be relevant here where such matters are unrelated to the investigation into [Terranova's] conduct."  *See Alimehmeti*, 284 F. Supp. 3d at 494.

Accordingly, the Court grants the Government's motion and permits the undercover officer to testify under a pseudonym. The Court also precludes cross-examination of the undercover officer as to matters that might reveal their true identity and the nature of any unrelated undercover investigations.  If the Government's Jencks Act or *Giglio* material reveals a specific reason "why [the undercover officer's] other work is relevant here," Terranova may seek leave to "inquire into such matters upon a proper showing of relevance" with "meaningful advance notice to the Court and opposing counsel."  *See id.* at 494–95.

## IV.  Government's Motions in Limine

The Government has filed several motions in limine.  (*See*

27

Gov't's Mots. 14-29, 34-42.)  A motion in limine is a request
for the court to resolve a forecasted evidentiary dispute before
trial.  *United States v. James*, 607 F. Supp. 3d 246, 251
(E.D.N.Y. 2022).  Despite the benefits of resolving potential
evidentiary disputes before trial, the court may exclude the
disputed evidence only if the evidence is clearly inadmissible
on all potential grounds.  *Id.*  If the court needs additional
factual context to resolve the motion, the court may reserve its
decision until an appropriate time during trial.  *Id.* at 252.  A
ruling on a motion in limine is preliminary and subject to
change as the case unfolds.  *Id.*

Evidence is generally admissible if it is relevant.
Fed. R. Evid. 402.  Evidence is relevant if it has any tendency
to make a consequential fact more or less probable than it
otherwise would be.  Fed. R. Evid. 401.  Irrelevant evidence is
not admissible.  Fed. R. Evid. 402.  The court may exclude
relevant evidence if its probative value is "substantially
outweighed" by a danger of unfair prejudice, confusing the
issues, misleading the jury, wasting time, or needlessly
presenting cumulative evidence.  Fed. R. Evid. 403.

**A.    The John Does' Sexual Behavior**

The Government moves to preclude Terranova from introducing
evidence regarding the John Does sexual acts or contact with any
persons other than Terranova or regarding the John Does' sexual

28

predisposition.  (Gov't's Mots. 14.)  The Government further
moves to preclude Terranova from otherwise referencing these
topics during jury selection, opening statements, cross-
examination, or closing arguments.  (*Id.*)

Federal Rule of Evidence 412 generally prohibits the
defendant in a criminal case involving alleged sexual misconduct
from offering evidence to prove that a victim engaged in "other
sexual behavior" or to prove a victim's "sexual predisposition."
Fed. R. Evid. 412(a).  The court may admit evidence of specific
instances of a victim's sexual behavior, however, if offered to
prove (1) that someone other than the defendant was the source
of physical evidence or (2) consent.  Fed. R. Evid.
412(b)(1)(A), 412(b)(1)(B).  The court also may admit evidence
of the victim's sexual behavior if excluding it would violate
the defendant's constitutional rights.  Fed. R. Evid.
412(b)(1)(C); *see United States v. Rivera*, 799 F.3d 180, 184–85
(2d Cir. 2015) (listing as examples the defendant's rights to
present a complete defense, confront adverse witnesses, and
conduct effective cross-examinations).

Terranova does not oppose the Government's motion as to
John Does 1, 3, and 4 but opposes it as to John Doe 2.  (Def.'s
Opp'n 4.)  He seeks to introduce evidence from John Doe 2's
"social media profiles," where John Doe 2 allegedly "sp[oke]
sexually about adult males" and "boast[ed] about sexual activity

with men." (*Id.* 4–5.)  He argues that this social media

evidence is necessary to establish "the importance to John Doe 2

of having a greater social media following" and thus that John

Doe 2 "lied about his alleged sexual encounter" with Terranova

"to gain social media followers." (*Id.* 5.)

   This social media evidence relates to John Doe 2's other

sexual behavior and sexual predisposition and thus is explicitly

covered by Rule 412.  "[I]mpeaching the victim's truthfulness

and showing [his or] her capability to fabricate a story are not

recognized exceptions to Rule 412." *United States v. Pumpkin

Seed*, 572 F.3d 552, 560 (8th Cir. 2009) (quoting *United States

v. Withorn*, 204 F.3d 790, 795 (8th Cir. 2000)); *accord United

States v. Baker*, No. 22-cr-34 (RAW), 2023 WL 3851968, at *3

(E.D. Okla. June 6, 2023) (excluding evidence of minor victim's

YouTube videos that were "sexual in nature" under Rule 412 over

defendant's argument that videos were intended to show that

victim was a "talented storyteller" who previously "told

fictional accounts of sexual behavior"); *United States v.

Russell*, No. 14-cr-2563 (PJK), 2018 WL 2122938, at *2 (D.N.M.

May 6, 2018) (excluding purported "impeachment" evidence of

victim's prior sexual encounter); *United States v. Charles*,

No. 13-cr-558 (MAS), 2016 WL 355073, at *4 n.3 (D.N.J. Jan. 28,

2016) (holding defendant was properly precluded from questioning

victim about "sexual history" where "victim had not admitted

that the accusations were false"); *United States v. Davis*,
No. 13-cr-589 (CAS), 2015 WL 519455, at *4 (C.D. Cal. Feb. 5,
2015) (rejecting defendant's argument that "Rule 412 is
inapplicable to evidence . . . offered to prove dishonesty or
bias"); *see also* Fed. R. Evid. 412 advisory committee's note to
1994 amendment (explaining that Rule 412 generally "bar[s]
evidence relating to the alleged victim's sexual behavior or
alleged sexual predisposition, *whether offered as substantive
evidence or for impeachment*") (emphasis added).

Further, none of Rule 412's recognized exceptions apply.
The exception for physical evidence is "inapplicable in this
case based on the charges and type of proof the Government
intends to present," which do not concern a disputed source of
physical evidence. *See United States v. Kidd*, 385 F. Supp. 3d
250, 252–53 (S.D.N.Y. 2019). The exception for consent also is
inapplicable because "as a matter of law minors cannot consent
to sexual abuse or exploitation." *See id.* at 253. Finally, the
constitutional rights exception is inapplicable because
Terranova's "constitutional right to present a defense" does not
include "unfettered presentations of inadmissible and irrelevant
evidence." *See United States v. Rivera*, No. 13-cr-149 (KAM),
2015 WL 1886967, at *5 (E.D.N.Y. Apr. 24, 2015) (excluding
evidence under Rule 412 and rejecting argument that exception
under Rule 412(b)(1)(C) applied).

31

Even if John Doe 2's social media activity were not covered by Rule 412, it still would be excluded because its marginal relevance is substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403. Terranova posits that John Doe 2 "boast[ed] about sexual activity with men . . . to increase [his] number of followers," (Def.'s Opp'n 5), but does not claim that these "boasts" were themselves lies. Thus, these "boasts" regarding John Doe 2's sexual history with other people have little if any relevance to whether John Doe 2 lied about his sexual encounter with Terranova. On the other hand, evidence of John Doe 2's social media activity poses a substantial risk of unfair prejudice, as "it suggests to the jury that the alleged victim is promiscuous and therefore not worthy of either belief or protection." *See United States v. Saunders*, 736 F. Supp. 698, 704 (E.D. Va. 1990). On balance, evidence of John Doe 2's social media activity poses a risk of improperly inviting the jury to consider John Doe 2's moral character that substantially outweighs its minimal relevance to the facts at issue in the instant case.

Accordingly, the Court grants the Government's motion to preclude Terranova from (1) introducing evidence regarding the John Does sexual acts or contact with any persons other than Terranova or regarding the John Does' sexual predisposition and (2) otherwise referencing these topics during jury selection,

opening statements, cross-examination, or closing arguments.

**B.   Terranova's Possession of Child Sexual Exploitation Material Depicting Minors Other than the John Does**

The Government originally moved to introduce evidence that Terranova possessed child sexual exploitation material depicting minors other than the John Does. (Gov't's Mots. 18-19.)  In reply, however, the Government represented that it "no longer intends to offer" such evidence. (*See* ECF No. 53, Gov't's Mots. Limine Reply, 10.)  Accordingly, the Court deems this motion withdrawn.

**C.   John Doe 4's Statements to His Mother**

The Government moves to admit testimony from John Doe 4 and his mother that John Doe 4 reported Terranova's Snapchat messages to his mother, which prompted John Doe 4's mother to (1) review some of the messages, (2) send a message using John Doe 4's account expressing discomfort to Terranova, and (3) report Terranova to law enforcement. (Gov't's Mots. 34; *see supra* 4.)  Snapchat messages "typically disappear after they are viewed," *Brantley v. Prisma Labs, Inc.*, No. 23-cr-1566 (JLA), 2024 WL 3673727, at *2 (N.D. Ill. Aug. 6, 2024), though it is unclear whether the Government has possession of the Snapchat messages at issue after extracting Terranova's phone and searching his Snapchat account.  The Government thus seeks to introduce John Doe 4's report to his mother to explain why John

Doe 4's mother wrote her own message to Terranova under John Doe 4's name.  (Gov't's Mots. 36.)

Hearsay, a statement not made by the declarant while testifying at the current trial and offered to prove the truth of the matter asserted in the statement, is generally inadmissible.  Fed. R. Evid. 801(c), 802.  An out-of-court statement offered for any other purpose, however, including to explain the listener's subsequent behavior, *United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016), or as background to explain relevant facts, *United State v. Paulino*, 445 F.3d 211, 218 (2d Cir. 2006), is not hearsay.

A statement with both hearsay and non-hearsay relevance should be excluded only if its non-hearsay value is substantially outweighed by a risk of unfair prejudice resulting from the jury accepting the statement for its truth.  *United States v. Graham*, 51 F.4th 67, 83 (2d Cir. 2022).  In making that determination, courts consider such factors as (1) the extent to which the statement "contribute[s] to the proof of the defendant's guilt," (2) the extent to which the statement helps the jury understand the issues, (3) whether the necessary background can be presented through other means, (4) whether the defendant has "open[ed] the door" to the statement's introduction, (5) whether the statement concerns a disputed issue, (6) the likelihood the jury would credit the declarant,

34

(7) whether the declarant will testify, and (8) the extent to which a curative or limiting instruction could mitigate any resulting prejudice. *United States v. Midyett*, 256 F.R.D. 332, 337 (E.D.N.Y. 2009) (quoting *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994)).

Here, John Doe 4's report to his mother could be offered both as hearsay (to prove the content of the messages Terranova sent John Doe 4) and as non-hearsay (to provide background that explains John Doe 4's mother's subsequent behavior);  however, the risk of improper hearsay use does not substantially outweigh the statement's explanatory value.  John Doe 4's report to his mother offers a simple explanation "for something about which the jury" otherwise "would be curious," *see Ryan v. Miller*, 303 F.3d 231, 253 (2d Cir. 2002), specifically John Doe 4's mother's subsequent behavior.  The Government has indicated that John Doe 4 and his mother will both testify, which will enable Terranova to cross-examine them and mitigate any defense concerns regarding the content of the messages.  Additionally, the jury may be able to see the extraction of Terranova's phone – whose authenticity Terranova has not disputed – which would include the messages that prompted John Doe 4 to alert his mother.  The jury then would be able to compare the testimony of John Doe 4 and his mother regarding the messages against the true content of the messages themselves and use that comparison

to assess the credibility of John Doe 4 and his mother. Additionally, at trial, the Court will instruct the jury to consider John Doe 4's statements only for their proper purpose if Terranova requests that instruction.

Terranova's counterarguments are unpersuasive. He first objects that the Government should not be allowed to "bolster" John Doe 4's testimony "with that of his mother." (Def.'s Opp'n 9.) That objection is misplaced because although the practice of "bolstering" is restricted in New York state courts, it is not forbidden by the Federal Rules of Evidence or by the federal Constitution. *See Franco v. Lee*, No. 10-cv-1210 (SJF), 2013 WL 704655, at *8 (E.D.N.Y. Feb. 26, 2013). In any event, the evidence explains the sequence of events and will contextualize the testimony offered. Terranova next objects that John Doe 4's mother's "state of mind is irrelevant" and that evidence of John Doe 4's report will trigger "the jury's sympathy for his mortified mother." (Def.'s Opp'n 9.) The Court finds that John Doe 4's report is relevant not for John Doe 4's mother's state of mind, however, but as a logical explanation for her subsequent behavior and how the incident came to the attention of law enforcement. The Court will curb any gratuitous discussion of John Doe 4's mother's emotional reaction to John Doe 4's report by sustaining appropriate relevance objections at trial.

36

Accordingly, John Doe 4's report of Terranova's messages to his mother is not hearsay.

### D.   Authentication of the Phone Extraction

The Government moves to authenticate evidence from Terranova's seized cellphone through a certification rather than live testimony.  (Gov't's Mots. 37.)  Terranova does not oppose this motion.  (*See generally* Def.'s Opp'n.)

An exhibit's proponent generally must "authenticate" the exhibit by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Rule 902, however, provides that certain exhibits are "self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902.  As relevant here, Rule 902(14) provides that "[d]ata copied from an electronic device . . ., if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11)," is self-authenticating.  Fed. R. Evid. 902(14).  Under Rule 902(11), the proponent must give "reasonable written notice" and "make the record and certification available for inspection" so that the adverse party "has a fair opportunity to challenge them." Fed. R. Evid. 902(11).

"[D]ata that the [G]overnment extract[s] from [a] cellular

telephone" may be authenticated under  Rule 902(14).  *United States v. Dunnican*, 961 F.3d 859, 871 (6th Cir. 2020); *see United States v. Anderson*, 563 F. Supp. 3d 691, 695-96 (E.D. Mich. 2021) (same as to "text message evidence recovered from . . . cellular phones seized during [an] operation"); *United States v. Streb*, 477 F. Supp. 3d 835, 865 (S.D. Iowa 2020) (same as to "cell phone extraction reports").  Further, the admission of the certification in a criminal trial absent live testimony will not offend the Sixth Amendment's Confrontation Clause because the certification is not "testimonial."  *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009); *United States v. Carter*, No. 21-cr-681 (NSR), 2024 WL 268248, at *3 (S.D.N.Y. Jan. 24, 2024) (finding that decrypted iCloud data was self-authenticating under Rule 902(14) and that authentication by certification did not implicate defendant's confrontation rights).

Accordingly, assuming that it produces an appropriate certification from a qualified person, the Government may authenticate the extraction of Terranova's phone without live testimony.  Authenticity does not imply admissibility, however, and this order will not preclude Terranova from making proper objections at trial based on relevance or hearsay.

**E.   Consequences of Conviction**

The Government moves to preclude Terranova from referencing

the potential consequences of conviction in the instant case.
(Gov't's Mots. 40.)  Terranova does not oppose this motion.
(*See generally* Def.'s Opp'n.)

"[J]uries are not to consider the consequences of their
verdicts." *Shannon v. United States*, 512 U.S. 573, 579 (1994).
Thus, "it would be improper for the jury to hear about any
potential . . . consequences of a guilty verdict" because such
evidence "do[es] not bear on the charged crimes." *United States
v. Adelekan*, 567 F. Supp. 3d 459, 471 (S.D.N.Y. 2021) (granting
motion to preclude introduction of "evidence concerning the
punishment or . . . consequences of conviction").

Accordingly, the Court grants the Government's motion to
preclude Terranova from introducing any evidence or making any
argument to the jury regarding the potential consequences of
conviction in the instant case.

## V.   Government's Motion to Redact Portions of Terranova's Opposition Memorandum

On December 22, 2023, the parties jointly proposed a
protective order, (ECF No. 10, Dec. 22, 2023, Ltr. from
R. Shanies), which the Court approved on January 9, 2024, (ECF
No. 11, Stip. & Order ("Protective Order")).  The Protective
Order prohibits defense counsel from disseminating "[a]ny and
all sensitive discovery material produced . . . by the
[G]overnment" or "information derived or prepared from this

sensitive discovery material." (*Id.* ¶ 2.) If defense counsel "wishes to disclose any portion of the sensitive discovery material" or "information derived or prepared from" that material, counsel must provide "advance notice to the [G]overnment and make an application to the Court." (*Id.* ¶ 6.) Notice must be given "sufficiently in advance of the contemplated application so as to permit briefing and argument on the propriety of such disclosure." (*Id.*)

On September 13, 2024, Terranova submitted his memorandum in opposition to the Government's pre-trial motions. (Def.'s Opp'n.) He did not provide notice to the Government, seek the Court's approval under paragraph 6 of the Protective Order, or make any redactions of sensitive material before filing the memorandum. The memorandum attaches a declaration stating that defense counsel "view[ed] what the [G]overnment labelled 'sensitive discovery'" under FBI supervision. (ECF No. 45-1, N. Wong Decl. ("Decl."), ¶ 8.) The declaration describes "two videos seemingly sent to Mr. Terranova" contained in the "first group of sensitive discovery" and discloses the username of the person who sent the videos. (*Id.* ¶ 9.) The declaration further describes "four photos" and "one video" from the "second group of sensitive discovery," again disclosing the username of the sender. (*Id.* ¶ 10.) The two usernames also appear in memorandum itself. (*See* Def.'s Opp'n 6.)

40

The declaration includes nine "screenshots" from John Doe 2's "social media" profiles. (*Id.* ¶ 12; *see id.* pp. 3–11.) The first image lists John Doe 2's username, the name of the social media platform, and John Doe 2's number of followers on that platform. (*Id.* p. 3.) Defense counsel placed a black bar over the username, but the bar is transparent and leaves John Doe 2's name clearly visible. The second and fifth images blur only John Doe 2's face. (*Id.* pp. 4, 7.) The fourth and sixth images place a black bar only over John Doe 2's eyes but keep the rest of his face visible. (*Id.* pp. 6, 8.) The ninth image includes a circle over John Doe 2's face. (*Id.* p. 11.) The third, seventh, and eighth images do not redact any part of the images. (*Id.* pp. 5, 9–10.) John Doe 2's eyes are clearly visible in the eighth image though partially obscured by the text of the caption. (*Id.* p. 10.) Defense counsel blurred or blocked John Doe 2's profile picture thumbnail and username in all the images, but the full text of the captions and all other aspects of the images are visible. (*See id.* pp. 3–11.) In sum, the declaration does not reflect a remotely serious effort to comply with the Protective Order or protect sensitive material regarding John Doe 2.

Noting that defense counsel "may have publicly divulged information derived from 'sensitive discovery material'" in violation of "paragraph 6 of the . . . Protective Order," the

Court placed the memorandum under seal and ordered the parties
to address whether and the extent to which the memorandum should
remain under seal.  (Order, Sept. 15, 2024.)

The Government moves to keep the memorandum public but with
the images and usernames redacted.  (Seal Mot. 1.)  The
Government represents that the identifying information of each
John Doe was "produced pursuant to the Protective Order."  (*Id.*
1-2.)  The Government further represents that the video of John
Doe 2 discussed above, (*supra* II), was "produced as sensitive
discovery material," (Seal Mot. 3), as were the usernames that
were wrongfully disclosed in Terranova's opposition memorandum
and supporting declaration, (*id.* 4).  Without explanation as to
why he blatantly violated the Protective Order, defense counsel
opposes the Government's motion and insists that the images of
John Doe 2 and two usernames he included in his opposition
papers remain available for the public to view.  (*See generally*
Seal Opp'n.)

The public has a presumptive right of access to judicial
documents.  *Olson v. MLB*, 29 F.4th 59, 87 (2d Cir. 2022).  The
weight of the presumption depends on the "role of the material
at issue" in the exercise of the judicial power and the
"resultant value of such information to those monitoring the
federal courts."  *Id.* at 88-89 (quoting *United States v. Amodeo*,
71 F.3d 1044, 1049 (2d Cir. 1995)).  To seal a judicial

document, the court must find that the presumption of public access is outweighed by a countervailing interest. *Id.* at 88. The restriction must be narrowly tailored to serve that interest. *In re Demetriades*, 58 F.4th 37, 46 (2d Cir. 2023).

After weighing these competing interests, the Court finds that Terranova's memorandum must be redacted to remove the images of John Doe 2 and usernames.  The Court recognizes that motion in limine opposition submissions are judicial documents to which a strong presumption of public access attaches. *United States v. Silver*, No. 15-cr-93 (VEC), 2016 WL 1572993, at *5–6 (S.D.N.Y. Apr. 14, 2015).  Under the circumstances, however, the Court finds that the privacy interests of third parties, who are alleged minor victims of the charged offenses, outweigh the presumption of public access.  The Court further finds that redacting the images of John Doe 2 and usernames while keeping the rest of the memorandum and supporting declaration unsealed is a narrowly tailored means of properly balancing those interests.

As explained at length above, (*supra* II), disclosing the identities of alleged minor sex crime victims would subject them to needless anxiety and stigma.  The same concerns supporting an anonymity order support limited redactions to avoid disclosing the specific identities of John Doe 2 and other alleged minor victims.  Courts have found redactions appropriate to protect

43

the "privacy interests of innocent third parties" in cases
concerning far less sensitive topics.  *See Silver*, 2016 WL
1572993, at *6–7 (quoting *In re New York Times Co.*, 828 F.2d
110, 116 (2d Cir. 1987)) (ordering redactions from motion in
limine papers of names of adult Jane Does with whom defendant
allegedly had extramarital affairs despite "strong" presumption
of public access).  The Government's proposed redactions will
enable the public to understand the "nature of the evidence that
the Government sought to admit" without compromising the
"specific identities" of alleged minor sex crime victims.  *See
id.* at *7.  The usernames of other alleged minor sex crime
victims in particular are entitled to protection and are covered
by the Court's Protective Order.  And placing the pictures of
John Doe 2 on the public docket accomplishes nothing aside from
increasing the risk that members of John Doe 2's community will
be able to identify him and that he will be subject to
humiliation and adverse personal and psychological consequences.

Terranova's counterarguments are unpersuasive.  He first
argues that the images of John Doe 2 are "necessary to aid the
Court in deciding" the Government's pre-trial motions, (Seal
Opp'n 2), but *publication* of the images is not necessary for the
Court to decide the instant motions.  Terranova next argues that
the public must be able to see images of John Doe 2 so that
Terranova may defend himself "in the court of public opinion."

(*Id.* (quoting *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1043 (1991) (plurality opinion).)  Terranova is free to defend himself in the Court of public opinion, but not in a manner that is likely to inflict "totally unnecessary collateral damage at the expense of" alleged minor sex crime victims and subjects them to "public ridicule and embarrassment."  *See Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 20-cv-1277 (KGS), 2022 WL 1203099, at *2 (N.D. Tex. Apr. 21, 2022) (denying motion to unseal plaintiff's medical records over defendant's objection that unsealing was necessary for defendant to "undermine[] [p]laintiff's public narrative" and avoid "prejudice 'in the eyes of the public'") (quoting defendant's brief).  Finally, the Court respectfully rejects Terranova's argument that John Doe 2 waived his right to anonymity through his social media activity as a minor, (*see* Seal Opp'n 3), for the reasons already discussed above, (*see supra* II).

Terranova also opposes redacting the usernames of other alleged minor sex crime victims that he listed on page 6 of his memorandum.  (*See* Seal Opp'n 3.)  His arguments on this point all ignore the fact that he divulged those usernames in flagrant violation of the Protective Order.  As he states in his memorandum, he learned the usernames from his review of "sensitive discovery" under FBI supervision, (*see* Def.'s Opp'n 6), yet he failed to provide notice to the Government or obtain

45

the Court's approval before publicly disclosing them, (*see* Protective Order ¶ 6).  The Court finds it remarkable that defense counsel would agree to be bound by a protective order, flagrantly violate that order, and then object to the Court imposing measures to mitigate the problem that he created.

Violating a court order is sanctionable misconduct. *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 54 (2d Cir. 2018).  That includes the Protective Order that has already been entered as well as the Section 3509(d)(3)(A) order that is being entered today.  (*See supra* II.)  By defying the Court's orders and disclosing identifying details of minor sex crime victims to gain leverage in the "court of public opinion," defense counsel is warned that his contemptuous and troubling conduct will not be tolerated.  The Court need not issue a formal warning before imposing sanctions for violations of court orders.  *See Huebner*, 897 F.3d at 54.  Defense counsel is advised that he has been warned and that the Court will likely sanction him for further violations.

## Conclusion

For the reasons above, the Courts resolves the parties' motions as follows:

- Terranova's motion to sever is denied.  (*Supra* I.)

- The Government's motion for an order restricting the disclosure of the John Does' and their parents' identifying information is granted.  (*Supra* II.)

- The Government's motion for a protective order permitting the undercover officer to testify under a pseudonym and to preclude cross-examination of the officer as to matters that might reveal their true identity and the nature of any unrelated undercover investigations is granted. (*Supra* III.)

- The Government's motion to preclude Terranova from introducing evidence regarding the John Does' prior sexual acts or sexual contact with persons other than Terranova is granted. (*Supra* IV.A.)

- The Government's motion to introduce evidence of Terranova's possession of child sexual exploitation material depicting minors other than the John Does is deemed withdrawn and denied as moot. (*Supra* IV.B.)

- The Government's motion to introduce evidence of John Doe 4's report to his mother regarding Terranova's messages to him is granted. (*Supra* IV.C.)

- The Government's motion to authenticate the extraction of Terranova's phone through a certification is granted. (*Supra* IV.D.)

- The Government's motion to preclude Terranova from referencing the potential consequences of conviction is granted. (*Supra* IV.E.)

- The Government's motion to keep Terranova's memorandum in opposition to the Government's pre-trial motions under seal and to file a redacted version on the public docket is granted. (*Supra* V.)

The Government – not defense counsel because the Court no longer has confidence in defense counsel's ability to comply with his obligation to treat the minor victims' identifying information with adequate care – is ordered to file a copy of Terranova's opposition to the Government's pre-trial motions containing the Government's proposed redactions, (*see* ECF No 47-1), on the public docket by September 30, 2024.  The

47

unredacted versions of the Government's motion to seal, (ECF No. 47), and Terranova's response, (ECF No. 50), will remain under seal.  The parties are ordered to meet and confer on appropriate redactions to ECF Nos. 47 and 50 that will allow the Government to publicly file them by October 3, 2024.

**So ordered.**

Dated:     September 26, 2024
           Brooklyn, New York

                                    _____
                                    **Kiyo A. Matsumoto**
                                    United States District Judge
                                    Eastern District of New York