UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>CHRISTOPHER TERRANOVA,<br><br>              Defendant. | 23 cr. 516 (KAM) |

**MR. CHRISTOPHER TERRANOVA'S RESPONSE
TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

|  |  |
|---|---|
| By: | Varghese & Associates, P.C.<br>Vinoo P. Varghese<br>2 Wall Street<br>New York, NY 10005<br>(212) 430-6469<br>info@vargheselaw.com<br><br>*Counsel for Mr. Christopher Terranova* |

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................. 1

    The Charges And Their Respective Elements ......................................................... 2

II. ARGUMENTS............................................................................................................. 2

    A. Except For John Doe 2, Who Chose To Publicize His Alleged Conduct With Mr. Terranova In A TikTok Post To Tens Of Thousands Of Followers, The Defense Has No Objection To Orders Protecting The Other John Does' Identifying Information From Public Disclosure ................... 2

    B. Mr. Terranova Does Not Anticipate That He Will Seek To Introduce Independent Evidence Of The Sexual Activity Or Predisposition of John Does 1, 3, & 4; However, With Regard To John Doe 2, His Public Boasting Of His Sexual Activity Bears Directly On His Motive To Lie—Namely That Claiming He Had Sex With A Police Officer Boosted The Number Of Followers—Gaining Followers Is Critical To John Doe 2's Identity .. 4

    C. Where Three Of The Four John Does Were Fifteen Years Of Age At The Times Of Their Alleged Victimization, FRE 414 Forbids A Joint Trial .. 5

    D. The Rationale For Permitting An Undercover Law Enforcement Officer To Testify Under A Pseudonym Is Inapplicable Here .............................. 7

    E. John Doe 4's Statements To His Mother Are Inadmissible Hearsay ........ 8

III. CONCLUSION............................................................................................................ 10

TABLE OF AUTHORITIES

**Cases**

Brown v. Keane, 229 F. Supp. 2d 298 (S.D.N.Y. 2002) ...................................................... 3
Luce v. United States, 469 U.S. 38 (1984) ........................................................................ 1
United States v. Archambault, 740 F. App'x 195 (2d Cir. 2018) ...................................... 5
United States v. Broxmeyer, 616 F.3d 120 (2d Cir. 2010) ................................................ 2
United States v. Delvi, 275 F. Supp. 2d 412 (S.D.N.Y. 2003) .......................................... 3
United States v. Douglas, 626 F.3d 161 (2d Cir. 2010) .................................................... 2
United States v. Grecco, 728 F. App'x 32 (2d Cir. 2018) ................................................. 8
United States v. Hamlett, 2018 U.S. Dist. LEXIS 172179, 2018 WL 4854627 (D. Conn. 2018) ................................................................................................................................. 1
United States v. Johnson, 2017 U.S. Dist. LEXIS 190968, 2017 WL 5125770 (E.D.N.Y. 2017) ................................................................................................................................. 1
United States v. Larson, 112 F. 3d 600 (2d Cir. 1997) ..................................................... 5
United States v. Mackey, 2023 U.S. Dist. LEXIS 40796, 2023 WL 2457861 (E.D.N.Y. 2023) ................................................................................................................................. 8
United States v. Naseer, 2015 U.S. Dist. LEXIS 193032, 2015 WL 13843166 (E.D.N.Y. 2015) ................................................................................................................................. 7
United States v. Paredes, 176 F. Supp. 2d 179 (S.D.N.Y. 2001) ...................................... 1
United States v. Rangel, 534 F.2d 147 (9th Cir. 1976) ........................................................

**Statutes**

18 USC § 2251(a) ......................................................................................................... 2, 5
18 USC § 2251(e) ......................................................................................................... 2, 5
18 USC § 2422(b) ............................................................................................................. 2
18 USC § 3509 .................................................................................................................. 3
18 USC § 3509(a)(2)(A) ................................................................................................... 3
18 USC § 3509(d)(3)(A) ................................................................................................... 3
18 USC § 3509(d)(3)(B)(ii) .............................................................................................. 4
18 USC § 3771(e)(2)(A) ................................................................................................... 4
18 USC 2422(b) ................................................................................................................ 2

**Rules**

Fed. R. Evid. 414 .............................................................................................................. 4
Fed. R. Evid. 414(d)(2)(B) ............................................................................................... 5
Fed. R. Evid. 414(d)(2)(A) ............................................................................................... 5

I. **PRELIMINARY STATEMENT**

Defendant Christopher Terranova respectfully responds to the government's August 22, 2024 motions *in limine*. *See* Government's Motions *In Limine*, ECF No. 41 ("Gov. Mot.").

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Hamlett, 2018 U.S. Dist. LEXIS 172179, at *3, 2018 WL 4854627 (D. Conn. 2018) (internal citations omitted). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Moreover, "a district court's ruling on a motion in limine is preliminary and 'subject to change when the case unfolds.'" United States v. Johnson, 2017 U.S. Dist. LEXIS 190968, at *5, 2017 WL 5125770 (E.D.N.Y. 2017), quoting Luce v. United States, 469 U.S. 38, 41 (1984).

For the reasons set forth below, Mr. Terranova requests the following pre-trial rulings from the Court:

1. decline to issue an order of protection for John Doe 2;
2. rule inadmissible allegations that Mr. Terranova engaged in other acts of child molestation;
3. refuse to permit the undercover law enforcement officer to testify using a pseudonym; and
4. refuse to admit John Doe 4's hearsay statements to his mother.

**The Charges And Their Respective Elements**

Mr. Terranova is charged in a six-count superseding indictment with sexually exploiting, attempting to sexually exploit, and enticing and coercing minors, in violation of Title 18, United States Code, Sections 2251(a), 2251(e), and 2422(b).  ECF No. 29.

"To secure a conviction under § 2251(a), the government must prove beyond a reasonable doubt that: '(1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and [as one way of proving the jurisdictional element] (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce.'"  United States v. Broxmeyer, 616 F.3d 120, 124 (2d Cir. 2010).

The essential elements of 18 USC Section 2422(b) are "that an individual (i) used a facility of interstate commerce; (ii) to knowingly persuade, induce, or entice, or attempt to persuade, induce, or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature."  United States v. Douglas, 626 F.3d 161, 164 (2d Cir. 2010).

**II.    ARGUMENTS**

      **A.    Except For John Doe 2, Who Chose To Publicize His Alleged Conduct With Mr. Terranova In A TikTok Post To Tens Of Thousands Of Followers, The Defense Has No Objection To Orders Protecting The Other John Does' Identifying Information From Public Disclosure**
(responding to the government's Point I argument seeking orders of protection pursuant to 18 USC §§ 3509(d)(3)(A) and 3771 protecting the John Does' names and other identifying information from public disclosure)

18 USC Section 3509, entitled "Child Victims' and Child Witnesses' Rights," permits the court to issue an order protecting an alleged child victim's name from public

2

disclosure during court proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child. 18 USC § 3509(d)(3)(A). Section 3509 defines a "child" as a person under the age of 18 who is alleged to be a victim of a crime of physical abuse, sexual abuse, or exploitation. 18 USC § 3509(a)(2)(A). Likewise, 18 USC Section 3771, governing crime victims' rights, affords an alleged victim "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 USC § 3771(a)(8).

Here, John Doe 2 posted a TikTok video to the social media platform's 1.04 billion users featuring screenshots of the Snapchat messages from Mr. Terranova on which Count 2 is founded, and a report of Mr. Terranova's arrest all set to music in which John Doe 2 appears lip-synching improvised lyrics about pedophilia to the music from the Culture Club pop tune *Karma Chameleon*. See Wong Declar. at ¶4; *see also* Gov. Mot. at 5. John Doe 2's TikTok video was visible to his account's 45,000 followers; his posted videos have generated over 2.7 million likes, and he uses his real name.[1] See Wong Declar. at ¶5.

The theory of such established evidentiary concepts as "present sense impression" and "excited utterance" is that a witness's first reaction is likely to be their most sincere reaction. *See e.g.*, Brown v. Keane, 229 F. Supp. 2d 298 (S.D.N.Y. 2002) ("The present sense impression exception is based on a premise [that] the contemporaneity of an event and its description […] limits the possibility for intentional deception"); United States v. Delvi, 275 F. Supp. 2d 412 (S.D.N.Y. 2003) ("The rationale underlying the 'excited utterance' exception is that 'the excitement of the event limits the declarant's capacity to fabricate…'").

---

[1] The defense is unable to ascertain the exact number of views as John Doe 2 removed this video from public viewing.

3

Thus, contrary to the government's argument as to John Doe 2 and any testifying family members, at least, disclosing their identities is unlikely to cause needless anxiety *to John Doe 2* or subject *him* to negative social stigma. The pertinent portions of both statutes, Section 3509(d)(3)(B)(ii) ("provide for any other measures that may be necessary to protect the privacy of *the child*") and Section 3771(e)(2)(A) (the term "*crime victim*" means a person *directly* and proximately harmed), are intended to protect *victims* from psychological damage. The protections do not extend to any embarrassment family members may suffer because of their testimony in support of minor victims. As John Doe 2 chose to mock Mr. Terranova *publicly* and *without* attempting to hide his own identity, there is no harm here that Section 3509 seeks to avoid. Thus, the Court shouldn't preclude the public disclosure of John Doe 2's name or identifying information.

    **B.**    **Mr. Terranova Does Not Anticipate That He Will Seek To Introduce Independent Evidence Of The Sexual Activity Or Predisposition of John Does 1, 3, & 4; However, With Regard To John Doe 2, His Public Boasting Of His Sexual Activity Bears Directly On His Motive To Lie— Namely That Claiming He Had Sex With A Police Officer Boosted The Number Of Followers—Gaining Followers Is Critical To John Doe 2's Identity**
(responding to the government's Point II argument seeking to preclude Mr. Terranova from (i) introducing evidence regarding John Does 1-4 engaging in sexual acts or contact with anyone other than Mr. Terranova or having any type of "sexual predisposition")

Like the government, Mr. Terranova is unaware "of any other sexual behavior or predisposition" of John Does 1, 3, & 4. *See* Gov. Mot. at 15. Nevertheless, the defense theory of the case with regard to John Doe 2 is that he lied about his alleged sexual encounter with Mr. Terranova, then an NYPD cop, to gain social media followers. Indeed, he mocked Mr. Terranova publicly without hiding his own identity. Moreover, John Doe 2's TikTok account contains multiple videos of him speaking sexually about adult males.

4

*See* Wong Declar. at ¶6. The public nature and boasting about sexual activity with men, meant to increase the number of followers, unequivocally demonstrate the importance to John Doe 2 of having a greater social media following. Additionally, he brags about the number of followers he has on social media. See <u>Id</u>. at ¶7. Accordingly, the defense would seek to introduce pictures and videos from his social media profiles to establish John Doe 2's motive to lie about his alleged sexual encounter with Mr. Terranova.

>   C. **Where Three Of The Four John Does Were Fifteen Years Of Age At The Times Of Their Alleged Victimization, FRE 414 Forbids A Joint Trial**
>   (responding to the government's Point III argument that evidence of Mr. Terranova's possession of child sexual exploitation material involving minors other than John Does 1-4 is admissible as evidence of prior child molestation)

Entitled, "Similar Crimes in Child Molestation Cases," "[i]n a criminal case in which a defendant is accused of child molestation," Federal Rule of Evidence 414 permits the Court to admit evidence that the defendant *committed child molestation* on other occasions. At least as reflected in the discovery, the government has no such evidence and has acknowledged as much. *See* Gov. Mot. at 25 ("sexually explicit images of *apparent* minor males were recovered from the defendant's cellular telephone and Snapchat account").

"[U]nder Rule 414(d)(1), "a 'child' means a person below the age of 14."" <u>United States v. Archambault</u>, 740 F. App'x 195, 200 (2d Cir. 2018). "[B]y its terms, [Rule 414] authorizes the admission of evidence of molestation only of persons under the age of 14." <u>United States v. Larson</u>, 112 F. 3d 600, 604 (2d Cir. 1997). The rule defines "child molestation," as, *inter alia*, a crime involving "any conduct prohibited by 18 USC chapters

5

109 and 110." Fed. R. Evid. 414(d)(2)(A),(B). Chapter 110 includes 18 USC Sections 2251(a) and 2251(e). 18 USC Section 2422(b), sexual abuse, is codified in Chapter 109.

On June 19, 2024, members of the defense team viewed at an FBI office what the government labelled "sensitive discovery" under the supervision of Special Agent Angela Tassone. *See* Wong Declar. at ¶8. The first group of sensitive discovery included two videos seemingly sent to Mr. Terranova in a Snapchat conversation with " ██████ — these videos show a nude penis and one photo of a nude male body focused on the buttocks, but no face was shown. *See* Id. at ¶9. Indeed, if the government had been able to identify the individuals in these photos as minors, it would have charged Mr. Terranova with child pornography. Without identifiable individuals under 14, the government is unable to establish the foundational requirements that the images are depictions of c*hild* victims of child *molestation*.

The second group of sensitive discovery included four photos, and one video shared by " ██████ " via Snapchat. Two photos were of the buttocks of a male. A third photo featured a male's scrotum and anus. The fourth photo was frontal and focused on a phallus. The video, which didn't show the face, was of a male masturbating. *See* Id. at ¶10. Again, there was nothing to establish that the images were of a child or different children and nothing to establish that the depictions were produced or shared at Mr. Terranova's behest, much less in violation of any state or federal criminal statute.

The third group of sensitive discovery included fifteen videos of penises, some in underwear, some naked; some videos showed masturbation; but none showed a face. *See* Id. at ¶11. In that none of the videos featured a face, they suffer the same foundational flaws as to admissibility.

6

### D. The Rationale For Permitting An Undercover Law Enforcement Officer To Testify Under A Pseudonym Is Inapplicable Here
(responding to the government's Point IV argument that the undercover law enforcement officer who communicated electronically with Mr. Terranova while posing as a John Doe to testify using a pseudonym or a UC identifier)

"[T]he very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives." Smith v. Illinois, 390 U.S. 129, 131 (1968). Smith considered the propriety of concealing a witness' identity "against a background of factors weighing conversely, such as personal safety of the witness." United States v. Rangel, 534 F.2d 147, 148 (9th Cir. 1976). Smith recognized the discretionary power of the trial judge to protect a witness "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate." *See also* Smith, 390 U.S. at 133-34 (White, concurring) (placing "in the same category those inquiries which tend to endanger the safety of the witness").

United States v. Naseer involved the prosecution of an al-Qaeda operative for conspiring to use a destructive device in relation to terrorist attacks in England. *See* United States v. Naseer, 2015 U.S. Dist. LEXIS 193032 at *7, 2015 WL 13843166 at *3 (E.D.N.Y. 2015). There, six MI-5 officers, who witnessed operational activities undertaken by the defendant, had legitimate safety concerns about disclosing their identities. *See* Id.

Here, in contrast, where he successfully posed as 15-year-old John Doe 4, the undercover law enforcement officer's interaction with Mr. Terranova was remote. He never saw or even spoke to Mr. Terranova and Mr. Terranova never did anything more than text him. In the government's papers, there is a noticeable absence of any suggestion, much less evidence, that any anticipated professional interactions between the undercover and future suspects are expected to be anything other than such remote impersonations

7

through typed words. In other words, without proof that testifying under his true identity would in any way devalue him as a future law enforcement asset, or that he or any officers engaged in similar remote roleplaying in child sex offense cases have been credibly targeted for retribution, permitting the undercover to testify under a pseudonym is unjustified.

The use of an alias by a testifying witness is permissible when the government's interest in maintaining the anonymity of its witness outweighs the defendant's interest in confronting the witnesses without limitation. Roviaro v. United States, 353 U.S. 53 (1957). Where the government can cite no credible tangible security concerns to balance against Mr. Terranova's ability to conduct meaningful cross-examination, however, the scale cannot but tip in the favor of affording him his full Sixth Amendment confrontation and cross-examinations rights.

    **E.**    **John Doe 4's Statements To His Mother Are Inadmissible Hearsay**
(responding to the government's Point V argument seeking to admit hearsay statements by John Doe 4 to his mother regarding the charged conduct)

When a party is seeking to admit evidence as relevant background or state of mind evidence, the Second Circuit applies a four-part inquiry: "[1] Does the background or state of mind evidence [bear upon] the defendant's guilt? [2] If so, how important is it to the jury's understanding of the issues? [3] Can the needed explanation of background or state of mind be adequately communicated by other less prejudicial evidence or by instructions? [4] Has the [adversary] engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice[.]" United States v. Grecco, 728 F. App'x 32, 35 (2d Cir. 2018) (internal citations omitted); United States v. Mackey, 2023 U.S. Dist. LEXIS 40796, at *11, 2023 WL 2457861, at *4 (E.D.N.Y. 2023) (same).

8

Its protestations to the contrary, in seeking to introduce testimony from John Doe 4 and his mother that John Doe 4 reported to his mother alleged inappropriate communications with Mr. Terranova that led (i) his mother to review some of those communications and observing an explicit image Mr. Terranova sent to John Doe 4 on Snapchat, (ii) his mother to pose as John Doe 4 on her son's Snapchat account and send a message to the defendant, and (iii) report the defendant's conduct to law enforcement, the government is seeking to admit inadmissible hearsay for its truth.  Where the jury will hear John Doe 4's recollection of what he read, the Court should <u>not</u> permit the government to bolster his testimony with that of his mother.  Her state of mind is irrelevant to Mr. Terranova's guilt.  His mother can explain her actions without repeating the hearsay substance of what she read.  The defense has <u>not</u> prejudiced the government.  Allowing his mother to bolster John Doe's testimony and offer testimony about her own irrelevant state of mind when reviewing the images and messages needlessly prejudices Mr. Terranova by permitting the government to seek the jury's sympathy for his mortified mother.

9

### III.  CONCLUSION

In sum, while Congress and the courts have fashioned and/or embraced policies in the prosecution of sex offenders that put a finger on the scale to protect minor or otherwise vulnerable complainants, in making its evidentiary rulings, the Court must take care that the collective effect of putting so many fingers favoring the prosecution on the scales of justice that they become so skewed against a defendant that they extinguish the presumption of innocence and infringe on his right to a fair trial.  Policies that might be individually defensible when considered in a vacuum can collectively conspire to condemn a defendant before a trial even commences.

Dated: September 13, 2024
       New York, NY

                                        Respectfully submitted,

                                        Varghese & Associates, P.C.
                                        _____/s_____
                                    By: Vinoo P. Varghese

                                        *Counsel for Mr. Christopher Terranova*