UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

   - against -　　　　　　　　　　　　　**MEMORANDUM AND ORDER**
　　　　　　　　　　　　　　　　　　23-CR-516(KAM)
CHRISTOPHER TERRANOVA,

　　　　　　　　　　　*Defendant.*
----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        On November 22, 2024, following a one-week trial, a jury found Christopher Terranova, a former New York City Police Officer, guilty of six counts of a superseding indictment charging him with the actual or attempted sexual exploitation of minors to engage in sexually explicit conduct for purposes of producing one or more visual depictions of such conduct in violation of 18 U.S.C. § 2251(a) and (e), and of persuading, inducing, enticing, or coercing minors to engage in sexual activity chargeable under state law in violation of 18 U.S.C. § 2422(b).  Before the Court is Mr. Terranova's motion pursuant to Federal Rule of Criminal Procedure ("Rule") 29 for a judgment of acquittal or, in the alternative, his Rule 33 motion for a new trial.  Mr. Terranova moved during trial after the government rested and again before the jury began its deliberations, and the Court reserved its ruling.  (*See* Tr.[1] 706-11, 726-28.)

---

[1] Citations to "Tr." refer to the transcript of Mr. Terranova's trial in this action, which commenced on November 18, 2024 and concluded on November 22, 2024.

At the parties' request, the Court scheduled post-trial briefing on Mr. Terranova's motion. (*Id.* at 906-07.) On December 19, 2024, Mr. Terranova's counsel filed a letter which states, in full, "Mr. Terranova will not be filing written Rule 29 & 33 motions. Mr. Terranova preserved these motions orally during trial." (ECF No. 103 (emphasis retained).) On January 21, 2025, the government responded in kind, writing that it would not file a written opposition to Mr. Terranova's motion because it had orally responded during trial. (ECF No. 104.)

For the reasons set forth below, the Court respectfully DENIES Mr. Terranova's Rule 29 motion for a judgment of acquittal and, in the alternative, his Rule 33 motion for a new trial.

## BACKGROUND

### A.    The Charges Against Mr. Terranova

Mr. Terranova was charged as the sole defendant in a six-count superseding indictment filed on July 10, 2024. (ECF No. 29 (the "Superseding Indictment").) These charges stem from allegations that, from approximately December 2019 through May 2023, Mr. Terranova employed, used, persuaded, induced, enticed, or coerced four minors to engage in sexually explicit conduct with the intent that those minors engage in sexually explicit conduct for the purpose of producing sexually explicit depictions of the four minors, identified in the Superseding Indictment (and at trial by the parenthetically designated initials) as John Doe 1 ("G"),

John Doe 2 ("N"), John Doe 3 ("M"), and John Doe 4 ("S"),[2] or that he attempted to do so, and that Mr. Terranova knowingly persuaded, induced, enticed, or coerced two of those minors, G and N, to engage in sexual activity for which any person can be charged with a criminal offense.

The Superseding Indictment charges six counts as follows: Count One charges Mr. Terranova with sexual exploitation of G in violation of 18 U.S.C. § 2251(a), or in the alternative attempted sexual exploitation of G in violation of § 2251(e); Count Two charges Mr. Terranova with attempted sexual exploitation of N in violation of § 2251(e); Count Three charges Mr. Terranova with attempted sexual exploitation of M in violation of § 2251(e); Count Four charges Mr. Terranova with attempted sexual exploitation of S in violation of § 2251(e); Count Five charges Mr. Terranova with coercion and enticement of G in violation of § 2422(b); and Count Six charges Mr. Terranova with coercion and enticement of N in violation of § 2422(b).

**B.  Mr. Terranova's Trial and the Jury's Verdict**

Jury selection for Mr. Terranova's trial commenced on November 18, 2024, and trial commenced later that same day. (Tr. 2–185.)  After preliminary instructions by the Court and opening statements by both parties, the government presented its case-in-

---

[2] The remainder of this Memorandum and Order will refer to each John Doe by the initial used to refer to that John Doe at trial, consistent with Rule 49.1(a)(3).

chief over the course of the next three days.  (*Id.* at 186-253, 268-449, 461-80, 515-615, 636-58, 672-706.)  On November 20, 2024 and November 21, 2025, outside the presence of the jury but in Mr. Terranova's presence, the Court held charging conferences with the parties.  (*Id.* at 485-513, 664-70.)  The government rested on November 21, 2024.  (*Id.* at 706.)

After his initial Rule 29 motion, Mr. Terranova presented a defense case (Mr. Terranova did not testify but instead called two law enforcement witnesses) and rested on the same day. (*Id.* at 712-25.)  Mr. Terranova then renewed his Rule 29 motion and, in the alternative, moved for a new trial pursuant to Rule 33.  (*Id.* at 726-28.)  The Court reserved its decision on Mr. Terranova's motion.  (*Id.* at 711, 728.)  On November 22, 2024, both parties presented their closing arguments to the jury, the Court charged the jury, and, following its deliberations, the jury convicted Mr. Terranova of Counts One through Six.  (*Id.* at 736-905.)  As to Count One, the jury, by use of a special verdict form, found that Mr. Terranova had committed both attempted and completed sexual exploitation of G.  (*Id.* at 903.)

**LEGAL STANDARD**

**I.**    **Rule 29 Motion for a Judgment of Acquittal**

In deciding a Rule 29 motion, a court should "avoid usurping the role of the jury," *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999), and must consider the totality of

4

the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. White*, 7 F.4th 90, 98 (2d Cir. 2021) (quoting *United States v. Aquart*, 912 F.3d 1, 17 (2d Cir. 2018)); *see also United States v. Bala*, 236 F.3d 87, 93–94 (2d Cir. 2000) (A court must "defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." (citing *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997))). Moreover, a court cannot "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Guadagna*, 183 F.3d at 129 (alteration adopted) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)); *see also United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016); *United States v. Hampton*, 676 F. Supp. 3d 283, 291 (S.D.N.Y. June 9, 2023) (citing *United States v. Dore*, No. 12-cr-45(RJS), 2013 WL 3965281, at *2 (S.D.N.Y. July 31, 2013)). A court must evaluate the evidence in a sufficiency challenge "in conjunction," rather than "piecemeal or in isolation." *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019); *see also Guadagna*, 183 F.3d at 130 (noting that "each fact may gain color from others" (citing *United States v. Monica*, 295 F.2d 400, 401 (2d Cir. 1961))).

Finally, a court may enter a judgment of acquittal "only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Guadagna*, 183 F.3d at 130 (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)); *see also United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) ("a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt"); *White*, 7 F.4th at 98 ("A conviction must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis retained) (internal quotation marks omitted) (quoting *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016))). Thus, a defendant challenging his conviction on sufficiency grounds "faces a heavy burden, as the standard of review is exceedingly deferential to the jury's apparent determinations." *United States v. Davis*, No. 21-1486, 2023 WL 4582002, at *1 (2d Cir. July 18, 2023) (alteration adopted) (quoting *United States v. Flores*, 945 F.3d 687, 710 (2d Cir. 2019)).

## II.        Rule 33 Motion for a New Trial

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The

6

defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted.'" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)); *see also United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) ("In determining whether to grant a Rule 33 motion, the ultimate test is whether letting a guilty verdict stand would be a manifest injustice." (alteration adopted) (quoting *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005))); *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 159 (2d Cir. 2008) ("Generally, a motion for a new trial 'should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" (quoting *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003))).

Although the Second Circuit "generally allow[s] district courts greater deference to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, courts must nonetheless exercise Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Coté*, 544 F.3d 88, 101 (2d Cir. 2008) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

**DISCUSSION**

Mr. Terranova made his first Rule 29 motion after the government rested, and then renewed the motion after the defense rested. If, as occurred at Mr. Terranova's trial, "a defendant offers evidence after the court has denied [a] motion for acquittal at the close of the government's case in chief, [the defendant] waives any claim as to the sufficiency of the government's case considered alone." *United States v. Ramos*, 26 F. App'x 80, 82 (2d Cir. 2002) (citations omitted). Thus, the Court will assess whether all admitted evidence is sufficient to sustain Mr. Terranova's convictions.

Construing the evidence in the light most favorable to the government, *see White*, 7 F.4th at 102-03 (reversing partial grant of Rule 29 motion because "district court failed to view the evidence in the light most favorable to the government and overlooked or minimized [inculpatory] evidence"), the following discussion summarizes evidence from trial, as is necessary to resolve Mr. Terranova's challenge to the sufficiency of the evidence undergirding his convictions. *See, e.g.*, *United States v. Ray*, No. 20-cr-110(LJL), 2022 WL 17175799, at *3 (S.D.N.Y. Nov. 23, 2022) ("The Court describes below only some of the overwhelming evidence that supports the Jury's verdict. The other evidence that is not described is no less damning, but it is unnecessary to detail this evidence to support the Court's (and the Jury's)

conclusions."); *cf. United States v. McDade*, 663 F. App'x 34, 37 (2d Cir. 2016) (rejecting defendant's argument that allegedly inconsistent evidence undermined sufficiency of described evidence to support defendant's conviction because the court "must assume the jury resolved all evidentiary conflicts and drew all reasonable inferences in favor of the government" (citing *United States v. Salameh*, 152 F.3d 88, 151 (2d Cir. 1998))).

I.      **Rule 29: Sexual Exploitation of G (Count One)**

The trial evidence amply supports the jury's conviction of Mr. Terranova for sexual exploitation of G, as charged in Count One, in violation of 18 U.S.C. § 2251(a). The Court charged the jury that to find Mr. Terranova guilty of completed sexual exploitation in violation of § 2251(a), the government must prove beyond a reasonable doubt: (1) that the victim was under the age of 18; (2) that the defendant used, employed, persuaded, induced, enticed, or coerced the victim to engage in sexually explicit conduct for the purposes of producing or transmitting a visual depiction or live visual depiction of that conduct; and (3) that the visual depiction was mailed or actually transported or transmitted in or affecting interstate or foreign commerce, or that the defendant knew or had reason to know that the visual depiction would be mailed or transported or transmitted in or affecting interstate or foreign commerce, or that the visual depiction was produced using materials that had been mailed or

transported in or affecting interstate or foreign commerce. (Tr. 872); *see United States v. X-Citement Video, Inc.*, 513 U.S. 64, 77 (1994); *United States v. Griffith*, 284 F.3d 338, 349 (2d Cir. 2002); Sand, Modern Federal Jury Instructions—Criminal, Instructions ("Sand Criminal Instructions") 62-1 to 62-10. The Court instructed the jury that, although the government must prove the victim was actually younger than 18 years old at the time of the acts alleged in the Superseding Indictment, the government need not prove that Mr. Terranova knew that the relevant minor was under the age of 18. (Tr. 872–73.)[3] The Court further instructed the jury that the government must prove beyond a reasonable doubt that Mr. Terranova used, employed, persuaded, induced, enticed, or coerced a minor to produce a visual depiction of sexually explicit conduct, and provided instructions on the definitions of visual depictions and factors to consider in deciding whether sexually explicit conduct is depicted. (Tr. 873–76.) Finally, the Court instructed the jury on how the government could prove the interstate commerce element of Count One. (*Id.* at 876–79.)

---

[3] Mr. Terranova objected at the November 20, 2024 charging conference to the Court's instruction that the government need not prove that Mr. Terranova knew that the relevant minor was under the age of 18 to establish this element. (*See* Tr. 497–500.) The Court nonetheless retained that instruction in its final charge, as it is clearly supported by controlling authority. *See Griffith*, 284 F.3d at 349 (rejecting defendant's argument "that the district court's charge to the jury omitting scienter of age under § 2251(a) was erroneous").

### A.    Sufficiency of the Evidence (Count One)

There is abundant evidence to satisfy each element of Count One, which charges that Mr. Terranova sexually exploited G between approximately December 2019 and September 2022, when G was between approximately 15 years old and 17 years old.  G testified at trial that, while he was in high school, he and Mr. Terranova engaged in communications over Snapchat[4] in which Mr. Terranova requested, and G sent, visual depictions of sexually explicit conduct, including nude images of G's genitals and a live video of G's penis and of G masturbating at Mr. Terranova's request.  (Tr. 680–84 (G's testimony on direct examination).)  This testimony alone, which the jury was entitled to credit, is sufficient to support Mr. Terranova's conviction of completed sexual exploitation, as charged in Count One.  *See United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (concluding testimony of single witness "was sufficient to convict" (citing *United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990))); *see also United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006) (noting lack of corroboration of witness testimony "raises a question as to the weight a jury might choose to give that testimony, not its legal

---

[4] Evidence at trial established that messages sent over Snapchat are designed to disappear so, although some communications were saved, other communications could not be retrieved.

sufficiency to support a conviction" (citing *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989))).

"Furthermore, even if corroborating evidence were necessary (and it is not), there was in fact ample corroborating evidence here to support the potential 'inference[s] that the jury may have drawn in the government's favor' on the basis of [G's] testimony alone." *Baker*, 899 F.3d at 130 (first alteration in original) (quoting *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008)). Admitted into evidence was a letter addressed to G, dated August 9, 2020, and signed by Mr. Terranova. (Government Exhibit ("GX") 502R.) The letter describes how on December 22, 2019, when Mr. Terranova was 29 years old and G was 15 years old, Mr. Terranova made his initial contact with G by sending him a direct message on Instagram. (*Id.* at 1.) The August 9, 2020 letter was found in a locked safe in Mr. Terranova's bedroom. (Tr. 210–14.) Also in Mr. Terranova's safe were additional letters, multiple photographs of G, and notes about his family, activities, likes, dislikes, and other personal details. (*Id.*; GX 503S, GX 503R, GX 504S, GX 504R, GX 505, GX 506S, GX 506R, GX 508, GX 509S, GX 509R, GX 511S, and GX 511R.) Handwritten on one of those notes is G's September 2004 birthday. (*Compare* GX 506S (handwritten note), *with* GX 804S (records showing G's birthday).)

The government also called Federal Bureau of Investigation ("FBI") Staff Operations Specialist ("SOS") Ashley

Cummings to testify at trial, and through her testimony introduced a series of records found in Mr. Terranova's phone and Snapchat account. (Tr. 417-421.) Mr. Terranova's phone contained multiple pictures of G individually (*e.g.*, GX 100AS, at 3806; GX 200AS, at 9-11), with his friends (*e.g.*, GX 200AS, at 2, 12-28, 30-33), in his high school sports team uniform (*e.g.*, *id.* at 29), and with Mr. Terranova (*id.* at 51, 140), as well as images of G's high school ID (*id.* at 122), and of his high school (*id.* at 146).

Mr. Terranova's phone also contained hundreds of messages between himself and G. (GX 100AS, at 3132-3790.) These messages, examples of which are provided herein, range from the sentimental[5] to the sexually graphic.[6] In one message dated April 8, 2021, Mr. Terranova wrote, "And like I told you[,] Going forward if you are horny I like when you flirt with me and when you are [*sic*] I love it actually[.] [I]f I'm not around bc [because] of work or something else at least I know when you are doing it without me and I might feel a lot better about it[.] If it's only a few times like you say it shouldn't be that hard." (GX 100AR,

---

[5] On July 31, 2020, G wrote, "I love u Chris Terranova." (GX 100AS, at 3167.)

[6] On August 2, 2020, Mr. Terranova wrote the following to G:
> Playing with each other's cocks moaning while we so [*sic*] removing my pants and you start giving me head then I pull yours down and give you the same amazing head slowly after you getting on top of my warm body and we grind our dicks against each Others [*sic*] releasing warm cum as I kiss your neck and tell you I will always be here for you.

(*Id.* at 3169.)

at 3283.)  On its face, this message encourages G to "flirt with"
Mr. Terranova.  The jury might have reasonably concluded that this
message, when considered within the context of an extensive
messaging history and sexual contact between Mr. Terranova and G
including descriptions of graphic sexual activity, amounted to a
request that G send sexually explicit depictions of what he was
doing "if [he] [was] horny" which would foreseeably include G's
own sexually explicit conduct.

Also admitted in evidence is a video of G lifting his
shirt up, pulling his pants down, and rubbing his penis over his
underwear.  (Tr. 536 (SOS Cummings's testimony on direct
examination); *id.* 686–87 (G's testimony on direct examination); GX
613S (video).)  The video was found in Mr. Terranova's
phone. (Tr. 536 (SOS Cummings's testimony on direct
examination).)  The jury could have reasonably concluded, again
within the context of all the evidence admitted concerning Mr.
Terranova's communications with G, that G produced this video for
Mr. Terranova and sent it to him at his request.

It is unnecessary to summarize all of the evidence
corroborating G's testimony.  It suffices that each element of
completed sexual exploitation charged in Count One in violation of
§ 2251(a) finds substantial support in the trial record: The
evidence shows that Mr. Terranova requested that a then-underage
G engage in sexually explicit conduct, produce and transmit visual

depictions of G engaging in such sexually explicit conduct, and that on at least one occasion, G did, in fact, produce and send such depictions over a telecommunications network, the internet, or an internet application such as Snapchat. Thus, this Court will not disturb the jury's finding that Mr. Terranova committed completed sexual exploitation of G in violation of § 2251(a), as charged in Count One.

II.      **Rule 29: Attempted Sexual Exploitation of G (Count One in the Alternative); Attempted Sexual Exploitation of N (Count Two); Attempted Sexual Exploitation of M (Count Three); Attempted Sexual Exploitation of S (Count Four)**

There is more than sufficient evidence supporting the jury's conviction of Mr. Terranova for attempted sexual exploitation of G, as charged in Count One in the alternative, of N, as charged in Count Two, of M, as charged in Count Three, and of S, as charged in Count Four, in violation of 18 U.S.C. § 2251(e). The Court instructed the jury that to find Mr. Terranova guilty of attempted sexual exploitation, the government must prove beyond a reasonable doubt: (1) that the defendant intended to commit the crime of sexual exploitation of a minor (i.e., the elements explained to the jury in connection with Count One); and (2) that the defendant acted in a manner that was a substantial step in an effort to bring about or accomplish the crime. (Tr. 881–83); *see* Sand Criminal Instruction 10–1. The

Court charged the jury on the distinction between mere preparation and a substantial step.  (Tr. 883.)[7]

### A.   Sufficiency of the Evidence (Count One in the Alternative)

The same fulsome evidence that supports the jury's verdict that Mr. Terranova committed completed sexual exploitation of G supports the jury's alternative finding that Mr. Terranova committed the attempted sexual exploitation of G.  By completing the offense of sexual exploitation of G, Mr. Terranova evinced an intention to commit the completed offense and necessarily took substantial steps in an effort to accomplish the offense.  *See*

---

[7] Government counsel argued to the jury in summation that "[f]or the defendant to be guilty of attempted sexual exploitation, he has to believe that the victim is a minor, regardless of whether they are."  (Tr. 753.)  Government counsel continued, "That's because for an attempt, the defendant has to have the intent to commit the substantive crime of sexual exploitation." (*Id.*)  This point of law was argued for the first time in the government's summation despite many opportunities to request that the jury be so charged in the government's pretrial submissions (including proposed jury instructions), during the November 20, 2024 charging conference where scienter of age was discussed at length for purposes of Counts One, Five, and Six, or at any of a dozen or more opportunities during trial where the Court asked the parties whether they had anything to raise on the record before the jury entered the Courtroom or before proceedings concluded for the day.

The jury was instructed that counsel's summations are not evidence and that the jury must follow the Court's instructions on the law.  (Tr. 801 ("To the extent that any of the lawyers may have tried to tell you what the law is, they are out of their lane.  That is my job."); *id.* at 847 ("On each of these legal matters, you must take the law as I give it to you.  If any attorney or witness has stated a legal principle different from any that I will give you now, it is my instruction that you must follow.").)  The jury is presumed to have followed the Court's instructions.  *See, e.g., CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) ("juries are presumed to follow the court's instructions"); *see also United States v. Green*, No. 16-cr-281(PGG), 2021 WL 2667129, at *3 (S.D.N.Y. June 29, 2021) ("In considering motions aimed at overturning a jury verdict, courts presume that the jury followed the legal instructions delivered by the court." (citations omitted)).  Nonetheless, out of an abundance of caution, the Court will analyze whether sufficient evidence was admitted for the jury to determine that Mr. Terranova knew each relevant victim was less than 18 years old at the time of each relevant attempt.

*United States v. Martinez*, 775 F.2d 31, 35 (2d Cir. 1985) (finding, where evidence demonstrated that defendant took "the last step required . . . to accomplish the actual commission of the crime," the same evidence "clearly sufficed to permit a rational juror to find" the defendant guilty of attempt).  Evidence introduced at trial also supports a finding that Mr. Terranova knew that G was a minor at all relevant times.  For instance, Mr. Terranova is quoted in a recorded phone call saying that G told him he was 16 years old.  (*See* GX 905 (demonstrative of Mr. Terranova's recorded call in which the other caller states as to G, "When you were talking to him, he was 15 years old," and Mr. Terranova responds, "Well, he told me 16 but OK.").)  And as noted above, the safe in Mr. Terranova's bedroom contained a handwritten note of G's September 2004 birthday, as well as other personal information, such as the name of G's high school.  (*See* GX 506S.)

## B.    Sufficiency of the Evidence (Count Two)

Turning to Count Two, which charges that Mr. Terranova attempted to sexually exploit N between approximately February 2022 and October 2022, when N was between approximately 15 years old and 16 years old, N testified at trial that at the time of his trial testimony in November 2024 he was 18 years old, and that in 2022, he and Mr. Terranova exchanged Snapchat messages in which Mr. Terranova asked, "can I see like your private areas," and N responded by sending at least one picture of his nude penis.  (Tr.

566–71 (N's testimony on direct examination).)  N characterized
Mr. Terranova's requests as follows: "He just kept begging, like,
come on, I want to see you.  Like don't be afraid, but I need
something, like it'll be good."  (*Id.* at 571.)  N's testimony is
corroborated by Mr. Terranova's communications with N over
Snapchat, which among other messages, include the following
message written by Mr. Terranova: "Your [*sic*] 16 and I'm proud to
hear you say all this[.]  So you have a boyfriend though?  What
about jerking off?  Does that count lol?  You can still send me
some surprises here and there that won't hurt[.]  I love your
little cute cock 🙈."[8]  (GX 602S, at 2.)  The jury reasonably could
have found that after N sent Mr. Terranova a picture of his penis
in response to Mr. Terranova's request, Mr. Terranova's note that
N could send him "surprises here and there" was intended as a
request for N to produce, and to transmit to Mr. Terranova over
Snapchat, depictions of N engaging in sexually explicit conduct.

N testified that he believed Mr. Terranova knew N's age
because the two of them had talked about how N was a sophomore in
high school.  (Tr. 566–71.)  N also testified that Mr. Terranova
was a friend of N's family.  (*Id.* 568.)  And finally, as noted
above, in the same message to N in which Mr. Terranova discusses

---

[8] Mr. Terranova punctuated certain of his messages with emojis.  This Memorandum
and Order includes versions of the emojis (obtained from *Emojipedia*, *available
at* https://emojipedia.org/) where they would otherwise appear in quotations.

masturbation and requests depictions of N engaging in sexually explicit conduct, Mr. Terranova wrote "Your [*sic*] 16," all but confirming he knew N was 16 years old at that time. Presented with this evidence, it was reasonable for the jury to infer that Mr. Terranova knew N's age.

Thus, there was sufficient evidence for the jury to find both that Mr. Terranova intended to commit the completed offense of sexual exploitation of N and that he took a substantial step in an effort to accomplish the offense.

### C. Sufficiency of the Evidence (Count Three)

Turning next to Count Three, which charges that Mr. Terranova attempted to sexually exploit M between approximately September 2022 and April 2023, when M was approximately 12 years old, M testified that at the time of his trial testimony in November 2024 he was 14 years old, and that he and Mr. Terranova previously exchanged Snapchat messages in which Mr. Terranova "asked [M] to send pictures of [his] pubes[; and] asked [M] to send pictures of [his] private areas and all that kind of stuff," and even when M refused, Mr. Terranova "would just keep on going at [M] until [M] gave him an answer." (Tr. 553–57 (M's testimony on direct examination).) M testified that Mr. Terranova would ask M, via Snapchat, about his "private area" and would tell M to "measure [his] private parts." (*Id.* at 556.) Forensic evidence showed that when M was 12 years old, he sent Mr. Terranova an

unrecoverable media file via Snapchat. (*See* GX 100AS, at 3791–92.) The jury could have reasonably concluded that Mr. Terranova's request for pictures of M's "pubes" constituted a request for M to produce, and to transmit to Mr. Terranova over Snapchat, depictions of M engaging in sexually explicit conduct.

M further testified that Mr. Terranova met him through a youth football league when M was 11 years old. (Tr. 554–55.) At one point, M sent Mr. Terranova a picture of himself and a teddy bear. (*Id.* at 559.) The jury could have reasonably inferred that Mr. Terranova was aware that M was a minor after M sent Mr. Terranova a picture of M with a teddy bear, an object commonly associated with children, *cf. United States v. Levy*, 594 F. Supp. 2d 427, 432 (S.D.N.Y. Jan. 27, 2009) (noting inclusion of teddy bear in video of minor's sexually explicit conduct), and based on having met M at a youth football game when M was 11 years old.

Mr. Terranova argues that acquittal is particularly appropriate as to Count Three, his attempted sexual exploitation of M, because the evidence presented by the government was insufficient due to the fact that "there was one request for something explicit, not much more than that." (Tr. 706–07 (argument on Mr. Terranova's Rule 29 motion).) This argument is untenable in light of the law in this circuit. First, even one attempt to sexually exploit a minor is sufficient to sustain a conviction of Mr. Terranova's conviction for attempted sexual

exploitation of M.  *See United States v. Deutsch*, No. 23-6423, 2024 WL 2972810, at *2 (2d Cir. June 13, 2024) ("In the instances where [the defendant] explicitly asked for photos or videos of the [minors]—'can I get a pic or two?'—the element of enticement is clear."). Moreover, the Second Circuit has sustained a defendant's conviction for attempted sexual exploitation in violation of § 2251(e) where he "did not specifically request a photo or video of the victims" at all, but instead where "a reasonable juror could infer that the overall scheme, the sexually explicit nature of their conversations, and certain comments by [the defendant] collectively support a finding that he attempted to or actually did persuade, induce, or entice the victims to send him explicit photos or videos of themselves." *Id.*  In other words, the law does not require multiple requests for sexually explicit photos from a minor because it does not require even one request for such photos.  A defendant's conviction for attempted sexual exploitation may be sustained where, as here, sufficient evidence exists for a rational trier of fact to conclude that the overall nature of the defendant's communications with the victim supports a finding that he attempted to persuade, induce, or entice the victim to send sexually explicit photos.

Applying the foregoing to Count Three, the jury reasonably found, based on the trial evidence, that Mr. Terranova attempted to sexually exploit M.  Specifically, in light of the

sexual nature of the messages sent from Mr. Terranova to M, including for example, requests for M to measure his "private parts" and to send pictures of his "pubes" and "private areas," the jury could have reasonably inferred that Mr. Terranova's request for M to send Mr. Terranova pictures of his "pubes" amounted to an attempt to persuade, induce, or entice M into producing sexually explicit photos and for M to send such photos to Mr. Terranova.

Thus, there was sufficient evidence for the jury to find both that Mr. Terranova intended to commit the completed offense of sexual exploitation of M and that he took a substantial step in an effort to accomplish the offense.

D.    **Sufficiency of the Evidence (Count Four)**

Finally, as to Count Four, which charges that Mr. Terranova attempted to sexually exploit S between approximately March 2023 and May 2023, when S was approximately 15 years old, S testified that at the time of his trial testimony in November 2024 he was 17 years old, and that he and Mr. Terranova previously exchanged many Snapchat messages in which, after Mr. Terranova sent an image of his own pubic region to S, Mr. Terranova then wrote, "See. It's nothing. Your turn." (Tr. 270–89 (S's testimony on direct examination).) The forensic evidence admitted at trial, including Snapchat messages between Mr. Terranova and S, provides further support to S's testimony. For instance, Mr.

Terranova wrote to S over Snapchat to ask S what he "like[d] to watch" while masturbating and then wrote, "Don't think I'm weird for asking but like send me something to see lol." (GX 604S, at 5-7.) In a later exchange, also over Snapchat, S wrote that he was "getting a little chubby," to which Mr. Terranova responded, "You can show if you want 🙈😜." (*Id.* at 20.) S replied, "I know😜😝," to which Mr. Terranova responded, "So do it🙂." (*Id.*) The jury could have reasonably inferred that these messages constituted requests for S to produce, and to transmit to Mr. Terranova over Snapchat, depictions of S engaging in sexually explicit conduct. That inference would be even more reasonable in light of the other sexual messages exchanged between Mr. Terranova and S, including Mr. Terranova's questions about what pornography S liked to watch (*id.* at 6), the color of S's pubes (*id.* at 10), how often S masturbated (*id.* at 11), the size of S's penis (*id.* at 12), and Mr. Terranova's comments about his own erection (*id.* at 13-14). Indeed, S testified that he understood at least one of Mr. Terranova's messages to mean that Mr. Terranova "wanted [S] to send a photo" of his "pubic area" to Mr. Terranova. (Tr. 288-89.)

As to Mr. Terranova's knowledge of S's age, evidence admitted at trial demonstrates that S had been robbed and had reported the crime to the police, and that Mr. Terranova, using his credentials as a New York City Police Officer, repeatedly

reviewed a report of S's robbery complaint that included biographical and personal information about S. (Tr. 243–44; GX 401S (robbery complaint); GX 402 (audit report showing Mr. Terranova accessing robbery complaint four times).) Specifically, the robbery report contains S's birthday. (GX 401S, at 2.) Moreover, Mr. Terranova's first text message to S refers to meeting S and his mother in person at a police precinct. (GX 603R, at 1.) The jury could have reasonably inferred that Mr. Terranova was aware of S's age based on having spoken to S and S's mother, as well as based on having repeatedly reviewed a robbery complaint containing S's birthday.

Thus, as with the other counts of attempted sexual exploitation, there was sufficient evidence for the jury to find both that Mr. Terranova intended to commit the completed offense of sexual exploitation of S and that he took a substantial step in an effort to accomplish the offense.

III.    **Rule 29: Coercion and Enticement of G (Count Five); Coercion and Enticement of N (Count Six)**

As with Counts One through Four, there is more than sufficient evidence to support the jury's conviction of Mr. Terranova for coercion and enticement of G, as charged in Count Five, and of N, as charged in Count Six, in violation of 18 U.S.C. § 2422(b). The Court charged the jury that to find Mr. Terranova guilty of these counts, the government must prove beyond a

reasonable doubt: (1) that the defendant used a facility of interstate commerce to commit the offense as alleged in the Superseding Indictment; (2) that the defendant knowingly persuaded, induced, enticed, or coerced the relevant victim to engage in sexual activity; (3) that the defendant acted with the intent to engage in the relevant sexual activity with the relevant victim, which activity is punishable under, (i) as to Count Five involving G, Texas Penal Law Section 21.11(a)(1), or (ii) as to Count Six involving N, New York Penal Law Section 130.40(2); and (4) that the relevant victim was under the age of 17 at the time of the acts alleged in the Superseding Indictment, as provided by Texas and New York Penal Law.   (Tr. 883-89, 895-98); *see* Sand Criminal Instructions 64-10 to 64-14.[9]

The Court instructed the jury on how the government could prove the interstate commerce element, and the persuasion, inducement, enticement, or coercion element of Counts Five and Six.  (Tr. 886-87.)  The Court also instructed the jury on how the government could prove that the defendant acted with the intent to

---

[9] The Court omitted, over the government's objection, an instruction that the government need not prove, for purposes of Counts Five and Six the defendant's knowledge of the relevant victim's age.  (*See* Tr. 486-93 (charging conference).)  For purposes of this Memorandum and Order, the Court assumes without deciding that proof of a defendant's knowledge of a victim's age is required to prove coercion and enticement in violation of § 2422(b).  Evidence supporting Mr. Terranova's knowledge of both G's and N's ages is described above in connection with Mr. Terranova's attempted sexual exploitation of G, as charged in Count One in the alternative, and Mr. Terranova's attempted sexual exploitation of N, as charged in Count Two.

engage in sexual activity chargeable under, as relevant, either Texas or New York state law. (*Id.* at 886–89; 895–98.)

As to Count Five involving G, the Court charged the jury: (1) that under Texas Penal Law Section 21.11(a)(1), a person commits the offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person engages in sexual contact with the child or causes the child to engage in sexual contact; (2) that Texas law defines "sexual contact" in this context to mean the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (a) the touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (b) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person; (3) that under Texas law, a person is incapable of consenting to sexual contact when that person is less than 17 years old; and (4) that Texas law, therefore, deems sexual contact with a person less than 17 years old to be without that person's consent, even if in fact that person did engage in the sexual contact voluntary. (*See* Tr. 896–97.)

And as to Count Six involving N, the Court charged the jury: (1) that a person violates New York Penal Law Section

26

130.40(2) when, being 21 years old or more, he or she engages in oral sexual conduct or anal sexual conduct with a person less than 17 years old; (2) that under New York law, (a) "oral sexual conduct" means "conduct between persons consisting of contact between the mouth and the penis, the mouth and the anus, or the mouth and the vulva or vagina," and (b) "anal sexual conduct" means "conduct between persons consisting of contact between the penis and the anus"; (3) that under New York law, a person who is less than 17 years old is incapable of consenting to oral or anal sexual conduct with anyone who is 21 years old or more; and (4) that New York law, therefore, deems oral sexual conduct and anal sexual conduct with a person less than 17 years old to be without that person's consent, even if in fact that person did engage in the sexual conduct voluntary. (*See* Tr. 897–98.)

The evidence adduced at trial supports the jury's finding that these elements were satisfied for both Counts Five and Six.

### A.    Sufficiency of the Evidence (Count Five)

Turning first to Count Five, which charges that Mr. Terranova coerced and enticed G between approximately December 2019 and September 2021, when G was between approximately 15 years old and 16 years old, G testified at trial that, in 2020, when G was either 15 of 16 years old and when Mr. Terranova was buying a house in Texas close to G's house, the two met in person and had

27

between five and ten sexual encounters which included oral sex. (Tr. 687–88 (G's testimony on direct examination).) Mr. Terranova admitted on a recorded phone call that G told Mr. Terranova that G was 16 years old. (*See* GX 905.)

G's testimony on its own would be sufficient to support a conviction for coercion and enticement, as charged in Count Five, but it was supplemented by extensive forensic evidence. Much of this forensic evidence is detailed above in connection with Count One. Additional pertinent forensic evidence includes exhibits and stipulations that reveal Mr. Terranova's repeated travel between the New York City metropolitan area where he lives and works to or near G's location in Texas in 2020 and 2021, with approximately half a dozen of those trips occurring before G turned 17. (GX 804R; GX S4 ¶¶ 1–17.) Mr. Terranova's August 9, 2020 letter, addressed to G and signed by Mr. Terranova, refers to one occasion where G rode his bicycle by Mr. Terranova, who was sitting in a car, further corroborating that the two met during one of Mr. Terranova's trips to Texas. (GX 502R at 2 ("I was nervous up until day one where you past by [*sic*] on your bike and just looked at me in the car.").) The records found in Mr. Terranova's phone and Snapchat account include an undated video from Mr. Terranova's Snapchat account showing G riding his bicycle on the street, approaching the person filming the video, while a narrator states, "That's exciting." (GX 200AS, at 201.) The government separately

introduced a recorded call capturing Mr. Terranova's voice (Tr. 654; GX 904), from which the jury was entitled to find that Mr. Terranova was the person who took and narrated the video of G riding his bicycle, which would establish at least one encounter between the two in Texas. And of course, the photos of Mr. Terranova and G standing together, the authenticity of which has not been disputed, also establish that the two met each other in person. (GX 200AS at 51, 140.)

The evidence corroborates not only that Mr. Terranova met with G in person many times, but that the two had sexual encounters as well. For instance, on August 13, 2020, when G was 15 years old (*See* GX 804S), after Mr. Terranova had flown from New York to Texas and back so that he could see G in person, Mr. Terranova and G had the following exchange over Snapchat. Mr. Terranova wrote, "What's hot was us making love to each other[.] And finding each other[.] And how we will keep one another." (GX 100AR, at 3178-79.) G responded, "That was so hot[.] I loved every second of it." (*Id.* at 3179.) On August 15, 2020, Mr. Terranova wrote, "I fucking love your Mexican cock." (*Id.* at 3181.) G replied, "I love ur [your] big Italian sausage." On October 21, 2020, when G was 16, Mr. Terranova sent the following message via a social media platform to G:

> We are coming up on 10 months of talking, to meeting, to experiencing things we both haven't ever. [Y]ou have opened my eyes to

> such more in life and made me realize how much life is really out there[.]  [Y]ou being with me in my own house 400 feet away and making love to me and the fact that I was able to pull this off with getting a house to be so close to you is more than a sign of everything happens for a reason[.]  [I]t's a blessing from God that we should be together and that I need to be here for you[,] and you need to be here for me to help with our struggles in this life[.]  I appreciate what you said about the family part[.]  [H]opefully that changes next time when the ice is broken a little more[.]  [B]ottom line is I am so in love with you[.]  [P]lease never change[.]  [G]row with me[,] listen to me[,] be positive and continue to be loyal and we will have some amazing times together and would love more and more memories with you as you get older[.]  I love you my Prince[,] my one and only[,] my forever babe[,] love you so much[,] Chris.

(*Id.* at 3224.)

A rational juror reviewing this evidence could have found that Mr. Terranova flew from New York to Texas in August 2020 and intentionally had sexual contact with G, knowing that G was, at that time, 15 years old, and on that basis properly found Mr. Terranova guilty of Count Five.  A rational juror could also find, based on the trial evidence, that Mr. Terranova, during his October 2020 trip from New York to Texas and back (*see* GX S4 ¶ 6), intentionally had sexual contact with G, knowing that he was, at that time, 16 years old, and on that basis properly found Mr. Terranova guilty of Count Five.  Further, based on the trial evidence, the jury could have inferred that Mr. Terranova intentionally had sexual contact with G on any of the other half

30

dozen trips that Mr. Terranova made to Texas before G turned 17 years old. Whichever evidentiary basis or bases the jury actually relied on in convicting Mr. Terranova of coercion and enticement of G, as charged in Count Five, it is clear that the jury's ultimate finding is supported not merely by sufficient evidence, but by extensive and compelling evidence.

After the government rested, Mr. Terranova called FBI Special Agent Russell Beverly to testify and inquired as to G's arguably inconsistent statement, offered during a February 2024 interview, that he was either 17 or 18 years old when he began his sexual encounters with Mr. Terranova. (*See* Tr. 717–18.) The government cross-examined Special Agent Beverly, however, and adduced that during the same FBI interview in which G initially said he was 17 or 18 when he began having sexual contact with Mr. Terranova, G later authenticated a letter written by G to Mr. Terranova (GX 503S) that refreshed his recollection that he was, in fact, younger than 17 years old at the time of his earlier sexual encounters with Mr. Terranova. (*See* Tr. 719–23.) Moreover, messages in August and October 2020 from Mr. Terranova to G recount their sexual contact when G was 15 and 16 years old. (GX 100AR, at 3178–79, 3224.) Although Mr. Terranova's counsel was justified in pursuing his strategy of eliciting G's prior statements for their potential impeachment value, the jury was nonetheless entitled to credit G's in-court testimony (and other admitted

31

evidence) over the statements in his February 2024 FBI interview, to the extent there were any inconsistencies between these accounts. *See, e.g.*, *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (citations omitted) ("Where there are conflicts in the testimony, [the court] must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses.").

**B.    Sufficiency of the Evidence (Count Six)**

Turning to Count Six, which charges that Mr. Terranova coerced and enticed N on or about May 21, 2022, when N was approximately 16 years old, N testified at trial that he was 15 years old between February and April of 2022, and that on May 21, 2022, Mr. Terranova, a family friend, arranged over Snapchat to drive N home from the sixteenth birthday party of N's friend. (Tr. 570–76 (N's testimony on direct examination).)  N testified that Mr. Terranova picked him up in a black jeep and that on the ride home from the party, Mr. Terranova pulled over his car to the side of the road, directed N to the back seat of his car, and that the two performed oral sex on each other. (*Id.* at 576–78.)  The government also introduced recorded calls in which Mr. Terranova admitted to "picking N up from the party." (GX 906S.)  In a separate recorded call, he also admitted to parking on the street with N for "maybe 25 minutes," but states that they "sat [and] talked" during that time. (GX 901.)  As noted above in connection with Count Two, trial evidence supports a finding that Mr.

Terranova was aware of N's age because, in addition to being a friend to N's family, Mr. Terranova wrote "Your [*sic*] 16" to N over Snapchat.

The government also introduced corroborating statements through N's friend, who testified under the name "Gabriella." Gabriella testified that on May 21, 2022, N attended her sixteenth birthday party and afterward was picked up by a white male in a black car. (Tr. 641–42.)[10] She further testified that the following week, N told Gabriella that on the way home from her birthday party, N had oral sex with the same man who had picked him up from her party. (Tr. 642.)[11] The jury, presented with this evidence, could have reasonably inferred that Mr. Terranova coerced and enticed N, as charged in Count Six.

Mr. Terranova argues in support of his motion that N's testimony "regarding the physical contact" with Mr. Terranova is "stunning" and "incredible as a matter of law" (Tr. 707) because, although N testified on cross-examination that he told his guidance counselor about sexual conduct between himself and Mr. Terranova when he first contacted his guidance counselor about the incident

---

[10] Mr. Terranova is Caucasian. (*See* GX 400A (photo of Mr. Terranova).)

[11] The Court permitted this testimony over Mr. Terranova's objection pursuant to Federal Rule of Evidence 801(d)(1)(B). (*See* Tr. 253–57, 457–59, 507–10 (argument on the objection); *id.* at 507 ("THE COURT: . . . John Doe 2's prior statements to his friend Gabriella before your purported date for fabrication would be admissible because you have called into question John Doe 2's veracity."); ECF Nos. 84, 85 & 89 (letter briefing).)

(*id.* 614), his guidance counselor testified that she did not recall N telling her that N's conduct with Mr. Terranova was sexual in nature (*id.* 707).

The standard to find a witness's testimony incredible as a matter of law is demanding, and Mr. Terranova's identification of a possible prior inconsistent statement by N falls short. A court may not find a witness's testimony incredible as a matter of law unless the testimony is "patently incredible or defies physical realities." *Sanchez*, 969 F.2d at 1410 (citations omitted). In one instance, the Second Circuit reversed a district court's finding that a witness's testimony was incredible as a matter of law where that witness: testified under a cooperation agreement, breached that agreement and the government repudiated his testimony, had a criminal record and history of substance abuse, had previously perjured himself in state court, and refused to answer certain questions on cross-examination. *United States v. Truman*, 688 F.3d 129, 139–40 (2d Cir. 2012). When a court considers a Rule 29 motion, if "there are conflicts in the testimony, [the court] must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *O'Connor*, 650 F.3d at 855 (quoting *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011); citing *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998)). The jury is entitled to weigh the

evidence and decide credibility issues for itself. *See id.* (citing *United States v. Josephberg*, 562 F.3d 478, 494 (2d Cir. 2009)).

The Second Circuit's decision in *O'Connor* is instructive on this point. In that case, the minor victim, S.O., shortly after being placed in foster care, disclosed that she had been sexually abused by her mother's landlord, but she did not disclose at that time that she had been abused by her mother, who had also been sexually abusing S.O. for many years. *O'Connor*, 650 F.3d at 845–47. At trial, S.O. was cross-examined at length as to, among other issues, why she did not initially disclose that she had been abused by her mother as well as her mother's landlord. *Id.* at 855. On appeal, the mother challenged the sufficiency of the evidence to convict her of violating §§ 2251A(a) (selling a child for the purpose of producing child pornography), 1591 (sex trafficking of a minor), and 2251(b) (permitting a child to be used in the production of child pornography), "arguing generally that S.O.'s testimony was inconsistent, contradictory, and not credible." *Id.*

The Second Circuit in *O'Connor* rejected the mother's argument, noting that S.O. had offered a reason for not initially disclosing her mother's abuse: she was scared that she would be returned to her mother's custody and would face consequences for having accused her mother. *Id.* at 855–56. The Second Circuit found that "it was well within the province of the jury to consider all of the evidence, and to conclude that S.O.'s early disclosures

35

were merely incomplete and that her trial testimony was truthful." *Id.* at 856.

The same reasoning adopted by the Second Circuit in *O'Connor* requires this Court to reject Mr. Terranova's argument that any inconsistencies between N's in-court testimony and his prior statements to his guidance counselor require Mr. Terranova to be acquitted on Count Six. The jury was entitled to conclude that even if N did not disclose any physical contact between himself and Mr. Terranova during N's initial meeting with his guidance counselor, his "early disclosures were merely incomplete and [his] trial testimony was truthful." *Id.*

The proper method to challenge the credibility of witness testimony is "in cross-examination and in subsequent argument to the jury." *See United States v. Robinson*, 749 F. App'x 35, 37 (2d Cir. 2018). And Mr. Terranova indeed did, through his counsel, extensively cross-examine N on the witness stand, including by attacking his credibility on the very same grounds that Mr. Terranova now urges make N's testimony incredible as a matter of law. (*See* Tr. 613–14 (cross-examining N on what he initially told his guidance counselor).) Based on Mr. Terranova's contention that N's initial disclosure to the guidance counselor was inconsistent with N's trial testimony, Mr. Terranova requested, and the Court authorized, a trial subpoena directing the counselor to appear and testify. (Tr. 620–31.)

36

The guidance counselor testified the following day under the name "Samantha," appearing as a witness on behalf of the government. (*Id.* at 700.) On direct examination, Samantha testified that she had been a guidance counselor for almost four years at the time of her trial testimony in November 2024. (*Id.* at 701.) She testified that in May of 2023, N came to her office after seeing a news article containing accusations that Mr. Terranova did "some sexual things with students." (*Id.* 701–02.) N told Samantha that he was also "a victim of Chris Terranova and that he wanted to discuss it with [Samantha] because he was finally ready to talk about everything, because he had been holding it in for so long," (*id.* at 702), i.e., since May 2022. Although Samantha noted that the details of N's disclosure to her were "a little blurry" because of the time that had elapsed since her May 2023 meeting, she testified, "There was Snapchat conversations that he provided to me. They [N and the other Snapchat user] had sexual contacts." (*Id.*) Samantha testified that there was "a correlation between the article and that [Snapchat] screen name" that led her to believe the other Snapchat user was Mr. Terranova. (*Id.* at 702–03.) In addition to the Snapchat conversation, Samantha testified that "[t]here was a brief conversation about a possible ride" and that "the information around this ride kind of what [*sic*] made him vulnerable." (*Id.* at 703.) She did not remember further details about what N disclosed to her in May 2023

37

concerning the ride he had received from Mr. Terranova one year earlier, in May 2022. (*Id.*)

The government then asked Samantha if she "recall[ed] receiving any report regarding physical contact with the defendant." (*Id.* at 705.) Mr. Terranova, through his counsel, at this point interposed his first set of objections to Samantha's testimony. (*Id.*) The Court overruled the objection by defense counsel and instructed the witness to answer. (*Id.*) Samantha testified that, though she "would love to give that you [*sic*] information," she did not remember those details. (*Id.*) Mr. Terranova was given the opportunity to cross-examine Samantha but chose not to do so. (*Id.*)

In his summation, defense counsel urged the jury to disregard N's trial testimony that he had engaged in sexual conduct with Mr. Terranova. Defense counsel lodged several attacks on N's credibility, including that N's testimony was inconsistent with his initial disclosure to Samantha. He argued, in part, "She can't recall that a student came to her about an alleged incident of oral sex with a cop, who had already been in the newspapers? Folks, none of you would forget that detail[.]" (*Id.* 804-06.)

Mr. Terranova's closing argument highlighted at length the purported inconsistencies between N's testimony and his guidance counselor's recollection. The jury clearly rejected

defense counsel's argument, choosing to believe N's trial testimony and other corroborating evidence.

The jury, having diligently observed each witness and considered the evidence, counsels' summations, and the Court's charge, chose to credit N's testimony. The Court is "not entitled to second-guess that choice." *United States v. Bishunath*, 763 F. App'x 50, 52 (2d Cir. 2019) (rejecting defendant's challenges to sufficiency of the evidence based on conflicting and allegedly "absurd" testimony because jury was entitled to credit contrary testimony offered at trial). Thus, sufficient evidence in the trial record provides a basis for the jury's guilty verdict on Count Six.

IV.     **Rule 29: General Argument Regarding "Missing Evidence"**

In addition to the specific considerations discussed above, Mr. Terranova also asks the Court to enter a judgment of acquittal because of what he describes as "missing evidence." Specifically, he argues that "in this case of all this alleged inappropriate conduct or conversations, and all of this testimony from these individuals regarding what Mr. Terranova said to them, there isn't -- and with all the image files and videos recovered, there isn't a single thing in evidence that Mr. Terranova actually sent an inappropriate or nude photograph." (Tr. 709–10 (argument on Rule 29 motion).) Mr. Terranova continues, "So, you know, that also goes to the fact that . . . there's testimony or there's

testimony [*sic*], there's all this missing evidence. And so that's, you know, part also [*sic*] a reason to sustain a Rule 29 motion on behalf of the defendant." (*Id.* at 710.)

Mr. Terranova's argument that his Rule 29 motion should be granted based on allegedly "missing evidence" of sexually explicit material being sent by Mr. Terranova to the minor victims fails for at least two reasons. ***First***, none of the statutes Mr. Terranova was convicted of violating, the elements of which are detailed above, require him to have sent any images. Instead, Counts One through Four, charging violations of § 2251(a) and (e), each require that Mr. Terranova employ, use, persuade, induce, entice, or coerce a minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, or that he attempt to do so. In other words, the relevant visual depiction of sexually explicit conduct for purpose of producing or transmitting such depiction is not of Mr. Terranova, but of each minor victim. That is not to say that evidence that Mr. Terranova sent such images is irrelevant—far from it. *See Deutsch*, 2024 WL 2972810, at *2 (reasoning that "the fact that their [defendant's and victim's] conversations were almost entirely sexually explicit in nature" permitted jury to infer defendant's requests were for sexually explicit images). But the point remains that a defendant need not send any picture

40

of himself to commit the crime of completed or attempted sexual exploitation.

For the same reason, the existence *vel non* of inappropriate images of Mr. Terranova has no impact on the sufficiency of evidence to support the jury's finding that Mr. Terranova coerced or enticed G and N in violation of § 2422(b). The charge of coercion and enticement of a minor, as detailed above, requires the government to prove that a defendant engaged in sexual activity with a minor. The coercion and enticement charges (Counts Five and Six) do not require the government to proffer evidence of visual depictions of any kind.

In short, no element of any charged offense required the jury to find that Mr. Terranova sent a nude or sexually explicit image, and therefore even if the government had failed to offer evidence that Mr. Terranova sent nude or inappropriate images to his minor victims, the jury would still have been entitled to find that Mr. Terranova committed each charged offense based on the abundant supporting evidence detailed above.

**Second**, Mr. Terranova's "missing evidence" argument also fails because witness testimony and forensic evidence established that Mr. Terranova did, in fact, send sexually explicit images to each victim. The images themselves were unavailable at trial in part because Mr. Terranova elected to send those images on Snapchat, a communication platform which features the non-

41

preservation of images sent between its users. (*See, e.g.*, Tr. 474 (SOS Cummings testimony on direct examination that "Snapchat is known for" disappearing messages and media).) But each victim nonetheless testified that they received inappropriate images from Mr. Terranova. (*See id.* at 682-83 (G's testimony on direct examination that Mr. Terranova sent him photos of his clothed and unclothed penis); *id.* at 570-71 (N's testimony on direct examination that Mr. Terranova sent him a picture of his unclothed penis); *id.* at 557 (M's testimony on direct examination that Mr. Terranova sent him "a picture of him in his underwear"); *id.* at 279-80, 288 (S's testimony on direct examination that he received photos of Mr. Terranova's "lower region" including images of "his pubes" in which "the back part of his penis" was also visible).) That testimony was corroborated by evidence extracted from Mr. Terranova's phone, which indicates that Mr. Terranova sent images to the victims (*see* GX 100AS, at 3132-43 (reflecting some of many images exchanged between G and Mr. Terranova); *id.* at 3375-76 (reflecting that after Mr. Terranova sent an image file on July 22, 2021, G commented, "Wow sexyyy," to which Mr. Terranova responded, "That pic did come Out [*sic*] good"); *id.* at 3066 (reflecting image sent to S); GX 604S, at 33-34 (showing that Mr. Terranova asked if he could "show [S] quick before bed" an "underwear pic" before sending S a Snapchat image)), and that Mr.

Terranova was Snapchat "friends" with each victim (Tr. 425–31; GX 10S; GX 11S; GX 602S; GX 605S; GX 1003S; GX 1004S).

## V.    Rule 33

In the alternative to his Rule 29 motion, Mr. Terranova moves for a new trial pursuant to Rule 33.  In deciding a Rule 33 motion, a court must determine if a manifest injustice would result from allowing the guilty verdict to stand.  *See United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (citation omitted); *United States v. Stewart*, 433 F.3d 273, 296 (2d Cir. 2006) (motions for new trial "should be granted only with great caution and in the most extraordinary circumstances" (citations omitted)).

Based on the trial record, for the same reasons that Mr. Terranova's Rule 29 motion fails, the Court finds Mr. Terranova has not demonstrated extraordinary circumstances exist or that a manifest injustice would result from allowing the guilty verdict to stand.  He is therefore not entitled to a new trial.  See *United States v. Curry*, 542 F. Supp. 3d 197, 206–07 (W.D.N.Y. 2021) (denying defendant's Rule 33 motion for the same reasons that warranted denial of defendant's Rule 29 motion), *aff'd*, No. 22-50, 2023 WL 8073057 (2d Cir. Nov. 21, 2023).  Indeed, Mr. Terranova's Rule 33 motion is based largely, if not entirely, on the same arguments offered in support of his Rule 29 motion. (*See* Tr. 727 ("THE COURT: All right.  What are the grounds for a new trial, sir?  MR. VARGHESE: In this case, Judge, the government has

43

failed to -- at the least, failed to put forward a case that sustains and establishes all these charges.   I am moving, alternatively, I'm preserving my Rule 33 [*sic*], but, you know, primarily moving under Rule 29, Judge.").)   Apart from his general argument that "the government has failed to . . . put forward a case that sustains and establishes all these charges," and that certain of the witnesses at trial lacked credibility, Mr. Terranova does not articulate a compelling reason why justice requires vacating his conviction and ordering a new trial.   Therefore, the Court respectfully denies his alternative Rule 33 motion.   *See United States v. Mack*, No. 18-cr-823(PAE), 2020 WL 114509, at *8–9 (S.D.N.Y. Jan. 10, 2020) (denying Rule 33 motion where defendant offered no arguments in support of the motion beyond those already rejected in connection with defendant's Rule 29 motion), *aff'd*, No. 20-788-cr, 2022 WL 4391802 (2d Cir. Sept. 23, 2022).

In addition to the abundant and compelling evidence introduced to prove each element of every count of the Superseding Indictment, Mr. Terranova's trial was fair in all other respects. He retained and received the assistance of able and experienced counsel; he received fulsome discovery from the government; he had the opportunity before trial to file legal motions and motions *in limine*; he obtained early access to § 3500 material; he had the opportunity to cross-examine each of the government's witnesses; he had the opportunity to call witnesses on his own behalf,

including witnesses identified for the first time on the third day of trial; and he had the opportunity to admit exhibits relevant to his defense.  The jurors fulfilled their sworn duty to observe witnesses and consider the exhibits conscientiously and with care and attention, and returned a verdict consistent with both that evidence and this Court's instructions.  Mr. Terranova's motion for a new trial is therefore denied.

### CONCLUSION

For the foregoing reasons, the Court respectfully **DENIES** Mr. Terranova's Rule 29 motion for a judgment of acquittal on all counts, and in the alternative, his Rule 33 motion for a new trial. As previously directed, Mr. Terranova's sentencing will proceed on March 18, 2025 at 11:00 a.m. in Courtroom 6B South.

**SO ORDERED**

Dated:     February 11, 2025
           Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

45