UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

23 cr. 516 (KAM)

CHRISTOPHER TERRANOVA,

Defendant.

# MR. CHRISTOPHER TERRANOVA'S SENTENCING MEMORANDUM

Varghese & Associates, P.C.
By:  Vinoo P. Varghese
2 Wall Street
New York, NY 10005
(212) 430-6469
info@vargheselaw.com

*Counsel for Mr. Christopher Terranova*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………...1

I.  THE COURT SHOULD IMPOSE THE MINIMUM SENTENCE OF 15 YEARS BECAUSE SUCH A SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY TO COMPORT WITH THE PURPOSES OF SECTION 3553(a)(2) .................................................................................2

A.  Under Section 3553(a)(1) The Court Should Impose A Sentence Of 15 Years Based On The Nature And Circumstances Of Mr. Terranova's Offenses And His History And Characteristics ...................................3

1.  Sentencing Mr. Terranova to a sentence greater than 15 years and lifetime supervision would not adequately achieve the goals of sentencing; accordingly, the life sentence recommended by Probation is substantively unreasonable ....................................3

2.  Sex offenders have among the lowest recidivism rates of all criminal populations....................................................................4

3.  Concurrent sentences, in addition to a lifetime term of supervised release, would greatly reduce any risk of Mr. Terranova's recidivism and would allow him to once again positively contribute to society....................................................................6

4.  Mr. Terranova presents a low risk of recidivism according to court-appointed forensic psychiatrist Dr. Richard Krueger, M.D. 7

5.  Dr. Richard Krueger, M.D. concluded that Mr. Terranova's risk of re-offense is moderate and could be managed by the usual condition of federal supervision of sexual offenders..................8

B.  Under Section 3553(a)(2) Concurrent Sentences Of 15 Years And 10 Years And A Lifetime of Supervised Release Sufficiently 1) Reflect The Seriousness Of The Offenses, Promote Respect For The Law, And Provide Just Punishment For The Offenses; 2) Afford Adequate Deterrence To Others Similarly Situated; 3) Protect The Public From Further Crimes By Mr. Terranova; And 4) Provide Mr. Terranova With The Needed Correctional Treatment—Professional Mental Health Treatment And Time With His Family And Support Network ...........9

i

1.  Mr. Terranova faced undue hardship, including childhood abuse and struggles with his sexual identity .........................................9

2.  Mr. Terranova suffers from several mental health conditions which contributed to his behavior in the instant offenses.........11

3.  Despite his conviction, Mr. Terranova was a productive member of society…………………………………………………………...13

4.  Mr. Terranova's impact on his community, along with his natural compassion, is demonstrated by the 15 attached support letters…………………………………………………………………15

5.  Mr. Terranova takes accountability for the actions charged in the conviction………………………………………………………17

6.  Concurrent sentences of 15 years and 10 years and a lifetime of supervised release will provide sufficient deterrence to others similarly situated ....................................................................20

CONCLUSION ..........................................................................................22

EXHIBIT LIST ...........................................................................................23

# TABLE OF AUTHORITIES

**Cases**

Esquivel-Quintana v. Sessions, 137 S.Ct. 1562 (2017)...........................................18

Gall v. United States, 552 U.S. 38 (2007) ...................................................................3

Kimbrough v. United States, 552 U.S. 85 (2007)........................................................3

Nelson v. United States, 555 U.S. 350 (2009)..............................................................3

United States v. Cavera, 550 F.3d 180 (2d Cir. 2008)................................................3

United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006) ............................................3

United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017),...............................................3

United States v. McGinn, 787 F.3d 116 (2d Cir. 2015)...............................................3

United States v. Pepper, 562 U.S. 476 (2011) .............................................................4

United States v. Rigas, 490 F.3d 208 (2d Cir. 2007)...................................................3

United States v. Rigas, 583 F.3d 108 (2d Cir. 2009)...................................................3

United States v. Rivera, 281 F. Supp. 3d 269 (E.D.N.Y. 2017) (Weinstein, J.) .......7

Williams v. New York, 337 U.S. 241 (1949) ................................................................6

**Statutes**

8 USC § 1101(a)(43)(A) ..............................................................................................17

18 USC § 3553(a) ..........................................................................................................1

18 USC § 3553(a)(1).....................................................................................................2

18 USC § 3553(a)(2)(A)................................................................................................2

18 USC § 3553(a)(2)(B)................................................................................................2

18 USC § 3553(a)(2)(C)................................................................................................2

18 USC § 3553(a)(2)(D)................................................................................................2

18 USC § 3553(a)(2).....................................................................................................3

**Other Authorities**

Age of Consent by State, available at http://www.legalmatch.com/law-
library/article/age-of-consent-by-state.html ......................................................18

Annual Determination of Average Cost of Incarceration Fee (COIF). Available at
https://www.federalregister.gov/documents/2023/09/22/2023-20585/annual-
determination-of-average-cost-of-incarceration-fee-coif. FEDERAL REGISTER,
September 22, 2023 ................................................................................................5

*Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prisons Institutions*. Available at https://oig.justice.gov/reports/evaluation-issues-surrounding-inmate-deaths-federal-bureau-prisons-institutions. .........................12

*Ex-Cop Convicted of Exploiting and Assaulting Minors*. Available at https://brooklyneagle.com/articles/2024/11/26/ex-cop-convicted-of-exploiting-and-assaulting-minors/. Brooklyn Eagle, November 26, 2024. ..........................20

*Ex-NYPD Cop Convicted of Using Position to Sexually Abuse Young Boys*. Available at https://www.nydailynews.com/2024/11/22/ex-nypd-cop-convicted-using-position-sexually-abuse-young-boys/. New York Daily News, November 22, 2024. ...................................................................................20

*Ex-NYPD Officer Convicted of Sex Offenses Involving 4 Underaged Boys*. Available at https://abc7ny.com/post/ex-nypd-officer-convicted-sex-offenses-involving-4-underaged-boys/15577714/. ABC7 New York, November 22, 2024 ...................................................................................20

K.L. Nunes et al., Incarceration and Recidivism among Sexual Offenders, 31 Law & Hum. Behav. 305 (2007) ...................................................................6

*Love Letter Allegedly Written by Staten Island NYPD Officer to Boy Read in Court, Alleged Grooming Tactics Detailed*. Available at https://www.silive.com/crime-safety/2024/11/love-letter-allegedly-written-by-staten-island-nypd-officer-to-boy-read-in-court-alleged-grooming-tactics-detailed.html. SILive, November 26, 2024 ........................................20

*Mandatory Minimum Penalties for Sex Offense in the Federal Criminal Justice System.* Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf. United States Sentencing Commission..................................................5

*NYPD Officer Accused of Sexual Abuse of Boys Used His Position to Gain Access, Prosecutors Say*. Available at https://www.nytimes.com/2024/11/22/nyregion/nypd-sex-crime-christopher-terranova.html. The New York Times, November 22, 2024................................20

*Sex Offender Exceptionalism and Preventative Detention. Available at https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7407&context=jclc. Northwestern University School of Law* ....................................5

Valerie Wright, Ph. D., *Deterrence in Criminal Justice*, The Sentencing Project, Nov. 2010 ...................................................................................7

## PRELIMINARY STATEMENT

Through counsel, Mr. Terranova respectfully submits this letter to assist the Court in determining an appropriate sentence. The proper sentence for Mr. Terranova—a first-time offender—is concurrent sentences of 15 years and 10 years and a lifetime of supervised release. Such a sentence comports with 18 USC Section 3553(a) objectives.

In support of our request for concurrent sentences, we respectfully request the Court consider Mr. Terranova's history and character as well as the nature and circumstances of the conviction. Specifically, we respectfully request the Court consider the following:

1. Sentencing Mr. Terranova to a sentence greater than 15 years and lifetime supervision would <u>not</u> adequately achieve the goals of sentencing; accordingly, the life sentence recommended by Probation is substantively unreasonable;

2. Sex offenders have among the lowest recidivism rates of all criminal populations;

3. Concurrent sentences, in addition to a lifetime term of supervised release, would greatly reduce any risk of Mr. Terranova's recidivism and would allow him to once again positively contribute to society;

4. Mr. Terranova presents a low risk of recidivism according to court-appointed forensic psychiatrist Dr. Richard Krueger, M.D.;

5. Dr. Richard Krueger, M.D. concluded that Mr. Terranova's risk of re-offense is moderate and could be managed by the usual condition of federal supervision of sexual offenders;

6. Mr. Terranova would instead benefit from a longer sentence of supervised release;

7. Mr. Terranova faced undue hardship, including childhood abuse and struggles with his sexual identity;

8. Mr. Terranova suffers from several mental health conditions which contributed to his behavior in the instant offenses;

1

9. Despite his conviction, Mr. Terranova was a productive member of society;

10. Mr. Terranova's impact on his community, along with his natural compassion, is demonstrated by the 15 attached support letters;

11. Mr. Terranova takes accountability for the actions charged in the conviction; and

12. Concurrent sentences of 15 years and 10 years and a lifetime of supervised release will provide sufficient deterrence to others similarly situated.

I.     **THE COURT SHOULD IMPOSE THE MINIMUM SENTENCE OF 15 YEARS BECAUSE SUCH A SENTENCE IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY TO COMPORT WITH THE PURPOSES OF SECTION 3553(a)(2)**

The Court should sentence Mr. Terranova to 15 years because, in this case, such a ruling is sufficient, but not greater than necessary. First, the Court should impose such a sentence based on the nature and circumstances of Mr. Terranova's offenses, as well as his history and characteristics. Next, under Section 3553(a)(2)(A), concurrent 15-year and 10-year sentences sufficiently reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses. Thus, under Section 3553(a)(2)(B), such a sentence is sufficient to afford adequate deterrence to others similarly situated. Furthermore, under Section 3553(a)(2)(C), such a sentence sufficiently protects the public as Mr. Terranova will be incarcerated, monitored for a minimum of five years upon release, and publicly identifiable as a sex offender under the Sex Offender Registration And Notification Act. Finally, under Section 3553(a)(2)(D), such a sentence can include programs that sufficiently provide Mr. Terranova with correctional treatment as the Court sees fit.

Probation has calculated a Guidelines range of life imprisonment—the Court, however, should reject this. *See* PSR at ¶ 188. Probation's range is based on a total offense level of 47 and Criminal History Category I. The mandatory minimum term for Counts 1 through 4 is 15 years; the mandatory minimum term for Counts 5 and 6 is 10 years. The Court should reject Probation's Guidelines range because it is far greater than necessary to promote the goals of sentencing in this case. The Guidelines fail to account for Mr. Terranova's low risk of recidivism, his mental

2

health issues, and his family dynamics.

**A.    Under Section 3553(a)(1) The Court Should Impose A Sentence Of 15 Years Based On The Nature And Circumstances Of Mr. Terranova's Offenses And His History And Characteristics**

The Court should impose a sentence of 15 years based on the nature and circumstances of Mr. Terranova's offenses and his history and characteristics.

**1)    Sentencing Mr. Terranova to a sentence greater than 15 years and lifetime supervision would <u>not</u> adequately achieve the goals of sentencing; accordingly, the life sentence recommended by Probation is substantively unreasonable**

As the Second Circuit summarized in United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017), a sentence is substantively unreasonable if it "cannot be located within the range of permissible decisions." United States v. Cavera, 550 F.3d 180 (2d Cir. 2008) (en banc) (quoting United States v. Rigas, 490 F.3d 208 (2d Cir. 2007)). The Second Circuit will "patrol the boundaries of reasonableness." *See* Id. at 191. While "the district court is in a different fact-finding position [with] insights that are not always conveyed by a transcript … the length of a sentence may make it excessively punitive or needlessly harsh. Id. (citing United States v. Rigas, 583 F.3d 108 (2d Cir. 2009)). A life sentence here would be substantively unreasonable.

Such a sentence as the one recommended by Probation here is "shockingly high" and "serve no valid public purpose." Id. (citing United States v. McGinn, 787 F.3d 116 (2d Cir. 2015)). "Reasonableness review does not entail the substitution of [appellate] judgment for that of the sentencing judge. Rather, the standard is akin to review for abuse of discretion." *See* United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006). However, substantive reasonableness review "provide[s] a backstop" to prevent sentences that are "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *See* United States v. Rigas, 583 F.3d 108 (2d Cir. 2009).

While the Court must correctly calculate the Guidelines range in each case, it may <u>not</u> treat that range as mandatory. *See* Gall v. United States, 552 U.S. 38 (2007); Nelson v. United States, 555 U.S. 350 (2009). Rather, this range is "one factor among several" to be considered in imposing an appropriate sentence under Section 3553(a). *See* Kimbrough v. United States, 552 U.S. 85 (2007). The Court

must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. <u>Gall</u>, 552 U.S. at 49-50, 53-60. The Court's "overarching" duty is to ""'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." <u>Kimbrough</u>, 552 U.S. 85 at 101; see also <u>Pepper v. United States</u>, 562 U.S. 476 (2011).

There are substantial mitigating factors here that warrant the imposition of concurrent sentences and lifetime. Such a sentence is sufficient, but not greater than necessary to meet the basic goals of sentencing: retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

Counsel requests a 180-month sentence for Mr. Terranova. Such a request aligns with national sentencing trends and would <u>not</u> create an unwarranted sentencing disparity. According to the United States Sentencing Commission, the average sentence for individuals convicted of traveling to engage in prohibited sexual conduct with a minor is 155 months. [1] For such cases, those subject to mandatory minimums, the average increases to 182 months. <u>Id</u>. Thus, a 180-month sentence falls within this range and does not deviate from established sentencing practices.

### 2) Sex offenders have among the lowest recidivism rates of all criminal populations

Moreover, data indicates that the average sentence imposed with mandatory minimums is now shorter than the average guideline minimum sentence, signaling judicial recognition of the imbalance in the statutory scheme. [2] Mandatory minimums have been criticized for perpetuating mass incarceration, exacerbating dangerous prison conditions, and disproportionately impacting marginalized communities. Eliminating mandatory minimums is "essential to creating a more just and equitable criminal justice system. Widespread evidence shows that mandatory minimum sentences produce substantial harm with no overall benefit to crime

---

[1] *Sexual Abuse | United States Sentencing Commission*. Available at https://www.ussc.gov/research/quick-facts/sexual-abuse. United States Sentencing Commission. Last visited June 25, 2025.

[2] *How Mandatory Minimums Perpetuate Mass Incarceration and What to Do About It.* Available at https://www.sentencingproject.org/fact-sheet/how-mandatory-minimums-perpetuate-mass-incarceration-and-what-to-do-about-it/. The Sentencing Project. Last visited June 12, 2025.

control."[3]  Sentencing offenders with social services and preventive programs as a rehabilitative component would be a far more effective alternative.  In alignment with sentencing goals and empirical findings, sentencing Mr. Terranova beyond the mandatory minimum would be unjust.

Indeed, a 180-month sentence is longer than necessary to achieve the goals of sentencing.  While the legislators intended mandatory minimums to standardize punishment and deter future crime,[4] empirical evidence reveals that such sentences are overly punitive and do not progress public safety.[5]  The Bureau of Justice Statistics found that sex offenders, as a group, have among the lowest recidivism rates of all criminal populations.[6] Overly punitive sentencing, particularly when not supported by individualized assessments, results in excessive incarceration without any corresponding social benefit.

Rather, excessive incarceration is a social cost.  A longer sentence for Mr. Terranova would be financially wasteful.  Federal prisons are funded with taxpayer dollars, and, according to the Federal Register, it costs the United States over $42,000 a year to house a single inmate.[7]  Further, losing Mr. Terranova to prison would cost his community incalculably more.  A lifetime sentence of community supervision and sex offender treatment will allow Mr. Terranova to contribute as a productive member of society.

---

[3] *The Growth of Incarceration in the United States: Exploring Causes and Consequences*. Available at https://nap.nationalacademies.org/catalog/18613/the-growth-of-incarceration-in-the-united-states-exploring-causes. The National Academies Press. Last visited June 12, 2025.

[4] *Sex Offender Exceptionalism and Preventative Detention. Available at https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=7407&context=jclc. Northwestern University School of Law. Last visited March 12, 2025.*

[5] *Mandatory Minimum Penalties for Sex Offense in the Federal Criminal Justice System.* Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190102_Sex-Offense-Mand-Min.pdf. United States Sentencing Commission. Last visited June 12, 2025.

[6] *Mandatory Minimum Sentences for Federal Sex Offenses: What You Need to Know*. Available at https://federal-criminal.com/sex-crimes/mandatory-minimum-sentences-for-federal-sex-offenses-what-you-need-to-know/. Leppard Law: Federal Criminal Lawyers. Last visited June 12, 2025.

[7] *Annual Determination of Average Cost of Incarceration Fee (COIF)*. Available at https://www.federalregister.gov/documents/2023/09/22/2023-20585/annual-determination-of-average-cost-of-incarceration-fee-coif. FEDERAL REGISTER, September 22, 2023. Last visited, June 27, 2024.

While a period of incarceration is mandatory, the question before the Court is what length is necessary to achieve the goals of sentencing in Mr. Terranova's case. For all these reasons, a 15-year sentence would be both appropriate and just.

3)  **Concurrent sentences, in addition to a lifetime term of supervised release, would greatly reduce any risk of Mr. Terranova's recidivism and would allow him to once again positively contribute to society**

The Supreme Court has long acknowledged that modern penal philosophy tailors punishments to not just fit a crime, but also to fit the offender. *See* Williams v. New York, 337 U.S. 241 (1949). As important as it is for the Court to understand the person that Mr. Terranova is, it is equally important that the Court understand the person that Mr. Terranova is <u>not</u>. Mr. Terranova's case begs careful consideration. In pursuit of that consideration, counsel requests that the Court impose a 180-month concurrent with a term of lifetime supervised release.

The Court should consider whether the sentence imposed will provide Mr. Terranova with correctional treatment. Although a period of incarceration is mandated here, rehabilitation is <u>not</u> best achieved through a sentence of imprisonment longer than 15 years. If the Court were to sentence Mr. Terranova to 15 years imprisonment, he will be approximately 50 years old at the time of his release. Despite having lost a significant period of his life to incarceration, Mr. Terranova would still be able to reintegrate into society. If, however, the Court sentences him to the advisory guideline range of life in prison, Mr. Terranova will have lost all hope of rehabilitation.

As the Court knows, Mr. Terranova's sentence is not meant simply to punish him. Ideally, a sentence of incarceration is meant to rehabilitate Mr. Terranova. Mr. Terranova has never received adequate mental health or psychiatric treatment, though he deeply wishes to.

Research shows that sentencing sex offenders to prison has "little, if any, impact on sexual and violent recidivism following release." K.L. Nunes et al., Incarceration and Recidivism among Sexual Offenders, 31 Law & Human Behavior, 305 (2007); *see also* Tapia v. United States, 564 U.S. 319 (2011) (confirming that sentencing courts may not impose or lengthen a term of incarceration for purposes of treatment and recognizing that "imprisonment is not an appropriate means of promoting correction and rehabilitation").

6

Studies have shown and courts have found that the returns—the sentencing goals—may not only be diminishing, but that in fact extended sentences of incarceration may serve to defeat many of the sentencing goals, including, perhaps the most important: rehabilitation. *See, e.g.* United States v. Rivera, 281 F. Supp. 3d 269 (E.D.N.Y. 2017) (Weinstein, J.) ("[L]onger prison sentences were associated with a three    percent increase in recidivism.") (emphasis added) (quoting Valerie Wright, Ph. D., *Deterrence in Criminal Justice*, The Sentencing Project, Nov. 2010, at 6).

Concurrent sentences adequately punishes Mr. Terranova, while also providing a mechanism to allow him to get the treatment he needs to be successful. A lengthier period of incarceration does <u>not</u> serve those goals.  Rather, a substantial period of supervised release can be imposed with appropriate special conditions of supervision.  Those conditions should include mental health counseling and sex offender treatment.  While no one disputes that Mr. Terranova acted inappropriately or that the John Does in this case deserve some semblance of closure, the pertinent concern is that there are <u>no</u> returns of a sentence of incarceration beyond the minimum of 15 years.

### 4)    Mr. Terranova presents a low risk of recidivism according to court-appointed forensic psychiatrist Dr. Richard Krueger, M.D.

Probation noted that Mr. Terranova's lack of previous criminal convictions resulted in a total criminal history score of zero.  *See* PSR at ¶ 135.  Despite this, Probation found that "[Mr. Terranova] is a repeat and dangerous sex offender against minors; therefore, per USSG §4B1.5(a)(2), the criminal history category is I. USSG §4B1.5."  *See* PSR at ¶ 136.

Dr. Richard Krueger, a professor at Columbia Medical School and a board-certified forensic and addiction psychiatrist, evaluated Mr. Terranova and conducted psychiatric and risk assessment testing.  Dr. Krueger computed Mr. Terranova's score on the Static-99R—arguably the most validated and thoroughly studied risk assessment instrument for sexual recidivism—as being 1, which places Mr. Terranova in the average risk category for sexual recidivism due to his advanced age and lack of previous criminal or sexual arrests.  *See* Dr. Krueger Report at 8 (Exhibit 1).

On the Sex Offender Needs Assessment Rating, which attempts to incorporate dynamic factors into an individual's risk assessment, Dr. Krueger scored Mr.

Terranova as being 4 on a scale of 14, meaning within the low-moderate category of risk of re-offense. *See* Dr. Krueger Report at 8 (Exhibit 1).

On the Level of Service/Case Management Inventory, which assesses an offender's needs and risks, Mr. Terranova received a score of 4 out of 43 compared with individuals in the community, he is in the 11.4th percentile in terms of risk, meaning that 88.6% of offenders who are in the community have a higher risk of re-offense than Mr. Terranova. *See* Id.

> ### 5) Dr. Richard Krueger, M.D. concluded that Mr. Terranova's risk of re-offense is moderate and could be managed by the usual condition of federal supervision of sexual offenders

Dr. Krueger concluded that Mr. Terranova's "risk of re-offense in [his] best judgment [is] moderate and could be easily managed by the usual condition of federal supervision of sexual offenders." *See* Dr. Krueger Report at 10 (Exhibit 1).

Considering Mr. Terranova's lack of criminal history and Dr. Krueger's findings, his risk of recidivism is low. An excessive carceral sentence for Mr. Terranova, a first-time offender, would be unjust. Instead, concurrent sentences for Mr. Terranova could be made meaningful through a lifetime of community supervision the Court sees fit, which matches Mr. Terranova's mental health struggles and lack of criminal history.

Ms. Regina Ferretti, Mr. Terranova's friend of over fifteen years, attested to Mr. Terranova's kind nature, desire to help others, and capacity for growth.

> Chris had a bright future and can still fulfill his dreams given the opportunity. I am not saying this will happen overnight but with the proper support this could be possible.

Ms. Regina Ferretti Support Letter (Exhibit 2).

8

**B.** **Under Section 3553(a)(2) Concurrent Sentences Of 15 Years And 10 Years And A Lifetime of Supervised Release Sufficiently 1) Reflect The Seriousness Of The Offenses, Promote Respect For The Law, And Provide Just Punishment For The Offenses; 2) Afford Adequate Deterrence To Others Similarly Situated; 3) Protect The Public From Further Crimes By Mr. Terranova; And 4) Provide Mr. Terranova With The Needed Correctional Treatment— Professional Mental Health Treatment And Time With His Family And Support Network**

**1)** **Mr. Terranova faced undue hardship, including childhood abuse and struggles with his sexual identity**

Mr. Terranova was born in Brooklyn, New York in 1990 and raised in Staten Island, where he lived until his arrest in September of 2023. Mr. Terranova was primarily raised by his mother, Ms. Gina Matthies. His father, Mr. Mario Terranova, was mostly absent due to his work at the family's marble business, Acme Marble. Mr. Terranova described his father as "never really a father," noting that his father often became excessively angry over minor issues. *See* PSR at ¶ 144.

Mr. Terranova's father was verbally and emotionally abusive to Mr. Terranova and his mother. When not working, Mr. Terranova's father drank heavily and, while intoxicated, became physically abusive. *See* Id.

Mr. Terranova's parents separated when he was 10 years old. He and his brother resided with their mother, visiting their father a couple of weeknights and every other week. Mr. Terranova's relationship with his father remained strained. Mr. Terranova's father often used slurs such as "faggot" when referring to Mr. Terranova. *See* PSR at ¶ 150. Growing up, Mr. Terranova was very small, a fact that angered Mr. Terranova's father. His anger caused him to regularly refer to Mr. Terranova as "a faggot" or "queer." *See* Dr. Krueger Report at 2 (Exhibit 1). At school, Mr. Terranova found no relief from his turmoil at home. His classmates also bullied him for his size. *See* Dr. Krueger Report at 3 (Exhibit 1).

This ongoing verbal abuse and social bullying intensified the confusion Mr. Terranova felt about his sexual orientation as a young person. While not offering his confusion over his sexual orientation as an excuse, Mr. Terranova acknowledges that his struggle to understand and accept his homosexuality is linked in some measure to the underlying issues in the instant offenses. *See* PSR at ¶ 93.

9

One of the tests Dr. Krueger conducted during his examination of Mr. Terranova was the Adverse Childhood Experience Scale, which was developed by Kaiser-Permante and the National Institute of Health to quantify the degree of adverse childhood experiences an individual has endured. Dr. Krueger found that Mr. Terranova had a score of 3, a significant score indicating that Mr. Terranova experienced serious childhood adversity. *See* Dr. Krueger Report at 7 (Exhibit 1).

Ms. Gina Bruno, Mr. Terranova's family friend of 15 years, recognizes how Mr. Terranova's damaged relationship with his father impacted much of his life.

> I DO BELIEVE CHRIS IS REMORSEFUL FOR HIS ACTONS [sic] AND HAS THE POTENTIAL TO MAKE POSITIVE CHANGES IN HIS LIFE DUE TO THE FACT THAT HE WAS MENTALLY [sic] ABUSED BY HIS OWN DAD AND HAD TO LIVE WITH THAT AND WAS SRUGGLING [sic] WITH IT AND COUDNT [sic] HAVE A RELATIONSHIP WITH HIM.

Ms. Gina Bruno Support Letter (Exhibit 3).

The severe emotional turmoil of Mr. Terranova's childhood, in addition to the alcoholism he later developed to cope with his trauma, led him to exhaust every opportunity that would help individuals avoid the same struggles with their identities. Though Mr. Terranova now recognizes that his actions were inappropriate, this was the mindset that led him to the instant offenses.

Ms. Susan Albarano, age 26, is a New York City Department of Education teacher and is Mr. Terranova's friend of 20 years. She teaches students with disabilities and runs the Special Education Department at a Brooklyn public school. Ms. Albarano admires how Mr. Terranova was always a support system and mentor figure for her throughout her life.

> However, his age did not reflect the maturity that shined through his actions toward my sister and I. He became an older brother to me. Chris and I have always had a special bond. Being introduced to him at such a young age has shaped me into the person I am today.
>
> Now, at 26 years old, I still feel the same way about Chris as I did when I was six years old when I met him. He

10

helped me through my own struggles of life whether it be friend disagreements or boy troubles. Like I have said, he became my older brother. He became a safety net for me that no matter what I did or said, he would be proud of me. For my Confirmation, I was told to choose a Sponsor to help guide me in my faith and become a mentor to me in my life. The only person I had in mind was Chris because he was already doing this for me. So, I chose him.

Ms. Susan Albarano Support Letter (Exhibit 4).

### 2) Mr. Terranova suffers from several mental health conditions which contributed to his behavior in the instant offenses

Mr. Terranova did not have a documented history of mental health disorders due to stigmatization against seeking treatment. Mr. Terranova grew up in an abusive household, and his family and community lacked the resources and awareness to recognize his need for mental health treatment. *See* PSR at ¶ 158. During his late teens and early 20's, Mr. Terranova "looked down on therapy," and relied upon talking to friends as his only source of care. *See* PSR at ¶ 158.

Mr. Terranova's inexperience with treatment is regrettable considering that "[c]hildhood adversity is among the most potent risk factors for developing mood and anxiety disorders later in life." Anne Albrecht et al., Neurobiological Consequences of Juvenile Stress: A GABAergic Perspective on Risk and Resilience, 74 Neuroscience and Biobehavioral Reviews 21 (2017).

It wasn't until July 2023 that Mr. Terranova became able to take initiative and seek treatment for his mental health, speaking to a psychiatrist once via telephone. *See* PSR at ¶ 159. Mr. Terranova reported that he has "always had anxiety" and "nervous energy." *See* PSR at ¶ 158.

In 2023, Mr. Terranova finally received psychiatric care while at MDC. When Mr. Terranova arrived to MDC, he was "put in a cell for three days" with no contact other than when his food was delivered. *See* PSR at ¶ 160. He had a panic attack during the placement of a purified protein derivative and was hyperventilating. The clinician examining Mr. Terranova asked if he was contemplating suicide to which he stated that he was.

On December 19, 2023, Mr. Terranova was evaluated by MDC mental health

11

staff following his arrest in his state matter and diagnosed with Adjustment Disorder with mixed anxiety and depressed mood. *See* PSR at ¶ 162. Despite his diagnosis, Mr. Terranova receives <u>no</u> such psychiatric care today.

Suicide accounted for over half of federal inmate deaths in Federal Bureau of Prisons ("BOP") institutions in 2024. The Department of Justice ("DOJ")'s own evaluation of issues surrounding inmate deaths highlights that, "[BOP] staff did not always communicate to Psychology Services or Health Services psychiatry staff known concerns about inmates who later died by suicide, which limited the ability of these clinical staff to see or potentially treat the inmates."[8] The DOJ's findings present a real concern for Mr. Terranova's welfare if he were to be incarcerated to nonconcurrent sentences.

Dr. Richard Krueger conducted a psychiatric and sexual evaluation of Mr. Terranova on May 23, 2025. Dr. Krueger diagnosed Mr. Terranova with the paraphilic disorder ephebophilia, which is a dysfunctional interest in post-pubertal males or females who are legally unable to consent, severe alcohol use disorder, and generalized anxiety disorder. *See* Dr. Krueger Report at 7 and 10 (Exhibit 1).

During the evaluation, Mr. Terranova stated that he began using alcohol at the age of 16 and as he got older, he began to use it daily. He admitted to using alcohol and marijuana in the past and that alcohol has been a problem impacting his daily life, but that he has never undergone substance abuse treatment. *See* Dr. Krueger Report at 7 (Exhibit 1). Mr. Terranova reported that throughout his childhood, he witnessed his father's alcohol abuse. *See* PSR at ¶ 144. He admitted that he was often under the influence of alcohol when engaging in interactions with John Does 1, 2, 3, and 4.

In his recommendation, Dr. Krueger suggested that Mr. Terranova would be an "excellent candidate for the Residential Drug and Alcohol Program (RDAP) in the Federal Correctional System" as Mr. Terranova himself would like to seek treatment for his alcohol use disorder. *See* Dr. Krueger Report at 10 (Exhibit 1).

Mr. Terranova wasn't diagnosed with ephebophilia prior to Dr. Krueger's psychiatric and sexual evaluation. Dr. Krueger noted that Mr. Terranova is "in

---

[8] *Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prisons Institutions.* Available at https://oig.justice.gov/reports/evaluation-issues-surrounding-inmate-deaths-federal-bureau-prisons-institutions. U.S. DEPARTMENT OF JUSTICE OFFICE OF THE INSPECTOR GENERAL, February 15, 2024. Last visited, June 27, 2024.

denial regarding his pattern of sexual interest in post-pubescent teenagers," but added that much of this denial is convoluted with his struggles regarding his sexual identity. Denial is often the initial target of programs treating individuals who have committed sexual offenses, and that denial is not associated with an increased risk of recidivism. *See* Dr. Krueger Report at 10 (Exhibit 1). Ephebophilia is often the target of sex offender-specific treatment—Mr. Terranova has had no such sex offender-specific treatment. *See* Dr. Krueger Report at 9 (Exhibit 1). Dr. Krueger recommended that the best way to reduce Mr. Terranova's risk in the long term would be a sentence of lifetime community supervision, as his risk of re-offense is moderate and easily managed by the usual condition of federal supervision of sex offenders. *See* Dr. Krueger Report at 10 (Exhibit 1).

### 3) Despite his conviction, Mr. Terranova was a productive member of society

Mr. Terranova began work as a teenager, delivering newspapers for the Staten Island Advance. *See* PSR at ¶ 176. He continued this work through his early 20s, taking on greater responsibilities in adulthood. *See* Id. For three years in high school, Mr. Terranova also worked at a local CVS pharmacy as a stock person, before he was promoted to head cashier. *See* PSR at ¶ 177. Throughout his young adulthood, Mr. Terranova balanced odd jobs with his father's marble business and uncle's meat business. *See* PSR at ¶ 178. His early work ethic serves as a testament to his initiative, entrepreneurship, and ability.

Up until the advanced development of the immediate matter, Mr. Terranova was consistently employed in public service for over twelve years. He served as a police officer in the New York City Police Department (NYPD) from July 6, 2011, to September 27, 2023. *See* PSR at ¶ 175. Mr. Terranova is vested in the NYPD retirement system. *See* Dr. Krueger Report at 1 (Exhibit 1).

Mr. Terranova's employment also serves as a testament to his caring nature. Ms. Nicole Albarano works as a police administrative aide for the NYPD and has known Mr. Terranova since she was eight years old.

> Growing up, Chris did a newspaper route to make extra money and was able to build the rapport with his customers and create a successful living off this paper route. When he saw my mother was struggling with bills being a single mother, he gave the newspaper route to her to help her financially, still physically helped her, and took

13

no money.

Ms. Nicole Albarano Support Letter (Exhibit 5).

Ms. Nicole Appice can corroborate Ms. Nicole Albarano's observations. "I consider Chris an honest, humble, hardworking reliable man who is always looking out for others. When I first met Chris he was working 2 jobs because he wanted to save money for a house and help his mom out financially." Ms. Nicole Appice Support Letter (Exhibit 6).

Ms. Gianna Bruno is a paraprofessional in Staten Island and a family friend of Mr. Terranova, who can attest to Mr. Terranova's commitment to helping others. She writes, "He started off as a paper boy and worked his way up to the best career to change his life. He has showed us how much he loved his job to help and protect." Ms. Gianna Bruno Support Letter (Exhibit 7).

Mr. Peter Martino, Mr. Terranova's cousin, describes how Mr. Terranova, even at a very young age, was committed to helping others. Mr. Terranova regularly woke up exceedingly early for work, as his customers relied on his diligence. Mr. Peter Martino writes, "For a few years he helped my mother and father run their business. I remember seeing how he managed himself with customers, collected money, he was always on time with deliveries and developed a relationship with many customers." Mr. Peter Martino Support Letter (Exhibit 8).

Ms. Destinee German, who was Mr. Terranova's subordinate while at the NYPD, can speak to the quality of his work.

> [T]he time I served in the program under his leadership was truly the best years the program has ever seen, in my opinion. I have been through three coordinators and Christopher was by far the best, because he cared about his job and his team so much so that it showed in every decision he made. He had been aware for a long time that I too wanted to join NYPD as a police officer. With knowing this information, he took every opportunity to teach me about the job when we went on patrols together. This included having me go over the radio to talk to central knowing I was nervous to do it. Any other person wouldn't have bothered to teach me anything or make me grow in places that I was lacking, but he cared that much.

14

Ms. Destinee German Support Letter (Exhibit 9).

Mr. Craig Matthies, Mr. Terranova's stepfather, perhaps sums it up best.

> He is ambitious, driven, and extremely focused not only the present [sic], but for his future. His discipline has stemmed from an early age when he started his first job at 14, delivering newspapers for the Staten Island Advance. It is here where he built up an impeccable reputation for organization, reliability, punctuality and determination. He is well loved throughout the community. His honesty and law-abiding attitude led him towards being a part of the NYPD. It is through these two jobs where I have witnessed just first-hand the integrity and compassion of his true character with countless interactions within the community, to which I am extremely proud.

Mr. Craig Matthies Support Letter (Exhibit 10).

From 2004 until September 27, 2023, Mr. Terranova consistently held jobs and had been a productive member of society. His present incarceration prevents him from making contributions to society. Upon release, however, Mr. Terranova will doubtlessly be able to contribute to society through employment. A Bureau of Prisons SENTRY database report shows that Mr. Terranova has participated in the following courses: Developing Creativity; Entrepreneurship; Health Journal; Basketball Referee Officiating; Male Book Club; Yoga/Stress Reduction Program; Recreation & Leisure Journal; Money Smart; and Your Money Value Influences. Despite his circumstances, Mr. Terranova's studies reflect his commitment to improving himself personally and professionally. *See* PSR at ¶ 153.

### 4) Mr. Terranova's impact on his community, along with his natural compassion, is demonstrated by the 15 attached support letters

Mr. Terranova's family, friends, and colleagues have been highly supportive of him throughout his case. Mr. Terranova's family—his mother Ms. Gina Matthies, his stepfather Mr. Craig Matthies, and his cousin Mr. Peter Martino—and his longtime friends and colleagues—Ms. Susan Albarano, Ms. Gina Bruno, Ms. Destinee German, Ms. Marilyn Mackhan, and Ms. Anna Bappoo—were a constant

presence at Mr. Terranova's trial and all wrote support letters to aid in his sentencing.

Ms. Anna Bappoo, age 38, works as a community habilitation worker for the mentally disabled and met Mr. Terranova through her sister, Ms. Destinee German, who worked alongside Mr. Terranova as an auxiliary officer at the 121st precinct. She has witnessed Mr. Terranova's compassion to help others firsthand.

> In 2023 my sister decided to inform Christopher she was going to leave the auxiliary program due to my mom having a stroke and she wouldn't be able to attend auxiliary regularly anymore. Christopher dropped everything he was doing and came to our house to talk to my sister and to encourage her to stay in auxiliary and even gave recommendations to my mom because his mother had a stroke the year prior and was very knowledgeable about treatments and therapy. Christopher didn't just stop with that one visit. He always reached out to my sister to make sure she was doing well and to see if she needed anything.

Ms. Anna Bappoo Support Letter (Exhibit 11).

Ms. Marilyn Mackhan, mother to Mses. Destinee German and Anna Bappoo, writes about how Mr. Terranova always provided a support system to her daughters.

> As the years went by I had witnessed first hand [sic] how Christopher was always there to help Destinee with anything she needed for her NYPD process as well as teaching her things about the job and giving insight on what she can expect. We all came to know him as a kind-hearted person who cares about those around him. Christopher always being there for Destinee went a long way with me and over time had become a family friend and not just her mentor.

Ms. Marilyn Mackhan Support Letter (Exhibit 12).

Mr. Terranova has always been a source of support to his family members, who depend on him for his help and kindness. In 2017, Mr. Terranova's mother, Ms. Matthies, suffered a stroke, leaving her unconscious and unresponsive. She was

hospitalized for three months and has undergone extensive treatment since then. Ms. Matthies is not fully verbal, using a Lingraphica to communicate. She relies primarily on a wheelchair due to mobility restrictions. *See* PSR at ¶ 147.

While incarcerated, Mr. Terranova has expressed distress over his separation from his mother during her time of need. Ms. Matthies, in her support letter, expressed a reciprocal sentiment for her son.

> I would like to ask, if you can, for some leniency. I would hope to have my son home as soon as possible whereas [sic] Craig and I can help Christopher recover and rehabilitate. Years in jail will not only take its toll on his life, but ours as well. The pain in our hearts is overwhelming.

Ms. Gina Matthies Support Letter (Exhibit 13).

Others in Mr. Terranova's life have observed how his history of anxiety and depression have taught him to lead with empathy in his interactions with others. Ms. Jacqueline Martino, Mr. Terranova's aunt, can speak to his commitment to his immediate and extended family despite dysfunctional challenges.

> On a personal level, when I was going through a traumatic divorce, Christopher was right there to help console my kids and I just by spending time with us laughing, making plans for the future, setting goals and listening to their anxieties and teaching them to cope with depression.

Ms. Jacqueline Martino Support Letter (Exhibit 14).

Indeed, Mr. Terranova has no shortage of family and friends who would be deeply affected by his absence.

### 5)    Mr. Terranova takes accountability for the actions charged in the conviction

Mr. Terranova takes accountability for how his actions may have impacted John Does 1, 2, 3, and 4.

In regard to the charged conduct with John Doe 1, Mr. Terranova denied

17

engaging in any sexual activity with John Doe 1 until he was 17 or 18 years old, which is the age of consent in both New York and Texas. *See* PSR at ¶ 84. He maintains this both in his Presentence Interview and in his psychiatric evaluation with Dr. Krueger. Dr. Krueger writes in his report, "[Mr. Terranova] had engaged in sexual relations with John Doe 1 only after he had turned 17 despite evidence to the contrary cited in the Pre-Sentence Report." *See* Dr. Krueger Report at 9 (Exhibit 1). John Doe 1 was already the legal age of consent when he was a sophomore in high school, graduating at 19 years old. *See* Dr. Krueger Report at 10 (Exhibit 1).

Thirty-one states and the District of Columbia define the age of consent as 16 and would not even proscribe the conduct at issue in this case. *See* Esquivel-Quintana v. Sessions, 137 S.Ct. 1562, 1571 (2017). The Supreme Court held in Esquivel-Quintana that the "generic" age of consent for purposes of defining "sexual abuse of a minor" under Section 1101(a)(43)(A) of the Immigration and Nationality Act ("INA") was 16. While the statute here proscribes sexual conduct for someone older 18 with someone younger than 18, the Court can consider this inconsistency between the statute here and the INA as a factor in favor of Mr. Terranova.

John Doe 1's age is particularly important in determining the severity of the punishment. The age of consent in more than half of the United States is 16. *See Age of Consent by State*, available at http://www.legalmatch.com/law-library/article/age-of-consent-by-state.html (last visited Jun. 25, 2025). The age of consent in all the states surrounding New York—New Jersey, Pennsylvania, Connecticut, Massachusetts, and Vermont—is 16. *See Id*. The age of consent in Texas, where John Doe 1 resides, is 17 years old. Had Mr. Terranova and John Doe 1 engaged in the purported sexual acts in any state bordering New York, there would be no crime. Consequently, in considering the nature and circumstances of these crimes, the Court should consider that the conduct Mr. Terranova is said to have engaged in is not a crime in 33 other states. *See Id*.

Mr. Terranova maintains his innocence as to charges of sexual contact with John Doe 2, and denies any sexual interest or sexual motivation in his interactions with the other John Does. *See* Dr. Krueger Report at 9 (Exhibit 1). He acknowledges that some of the conduct was inappropriate as he was an adult and a police officer, and he wants to "take accountability for [his] actions." *See* PSR at ¶ 82. Mr. Terranova maintains that he is not a predator and has "never used [his] position as a police officer to manipulate children or groom children." *See* PSR at ¶ 83. At his sentencing, Mr. Terranova plans to address and acknowledge how his actions have negatively impacted John Does 1, 2, 3, and 4.

18

Those close to Mr. Terranova have observed a change in his demeanor since his conviction.  Mr. Terranova's friend, Mr. John Malczewski, who works as a director at a local non-profit agency in Staten Island with young adults on the autism spectrum, wrote the following.

> I fully understand that Chris committed wrongdoing and speaking with him weekly, he understands this as well. I am pleading that he is protected during this time. NYPD officers, daily, have a target on their back. These last few months have been eye opening for him. He has had a surplus of time to think and reflect on the decisions he has made. He routinely asks for strength from God- as this whole process has been extremely rough, mentally, physically, emotionally and financially. Please let Chris prove that he has learned from his decisions and actions and let him return back to his family as a new and changed man.

Mr. John Malczewski Support Letter (Exhibit 15).

Mr. Terranova's long-time family friend, Ms. Nicole Albarano, adds how Mr. Terranova has already begun to face the consequences of his conviction.

> I believe I know him well enough to know the reasonings in making these mistakes and how much he regrets how his choices ended him up in this current situation. Right when we all found about what happened I immediately felt concerned on how he would survive in a prison setting, being that there is not one bad bone in his body. Considering he made a stupid decision; I don't feel that he should be punished so harshly being with the general population of dangerous criminals. It should be considered, based on the point that he is not dangerous and was a police officer that he should be placed in a protective custody so he can be safe. [...]
>
> With that being said I feel that is the ultimate consequence of his actions and does not deserve to feel unsafe during having to serve his time.[sic] The damages these decisions

19

have left him with has turned his life upside down and his life will never be the same. Regardless of anything that has happened, knowing Chris the way I do, I know the person that he is, and I will ALWAYS stick beside him no matter what.

Ms. Nicole Albarano Support Letter (Exhibit 5).

### 6) Concurrent sentences of 15 years and 10 years and a lifetime of supervised release will provide sufficient deterrence to others similarly situated

Mr. Terranova's case has appeared in *The New York Times, ABC7 New York*, *Staten Island Live*, *New York Daily News,* and *Brooklyn Daily Eagle*.[9] [10] [11] [12] [13] The extensive coverage of Mr. Terranova's case by the media affords adequate deterrence to others similarly situated.

Mr. Terranova recognizes he is facing a very lengthy prison sentence. When looking at the deterrent effect of such a sentence, certainly, a concurrent term of imprisonment has a deterrent effect for almost anyone who has ever spent time in prison. Counsel recognizes that the Court must impose a lengthy prison term, and at a minimum of 15 years, followed by a lifetime of supervised release of five years, and registration as a sex offender. Essentially, Mr. Terranova will be under Court supervision for the remainder of his life. The Court will have the ability to impose substantial supervised release conditions that will serve as further deterrence.

---

[9] *NYPD Officer Accused of Sexual Abuse of Boys Used His Position to Gain Access, Prosecutors Say*. Available at https://www.nytimes.com/2024/11/22/nyregion/nypd-sex-crime-christopher-terranova.html. *The New York Times*, November 22, 2024. Last visited, June 27, 2025.

[10] *Ex-NYPD Officer Convicted of Sex Offenses Involving 4 Underaged Boys*. Available at https://abc7ny.com/post/ex-nypd-officer-convicted-sex-offenses-involving-4-underaged-boys/15577714/. ABC7 New York, November 22, 2024. Last visited, June 27, 2025.

[11] *Love Letter Allegedly Written by Staten Island NYPD Officer to Boy Read in Court, Alleged Grooming Tactics Detailed*. Available at https://www.silive.com/crime-safety/2024/11/love-letter-allegedly-written-by-staten-island-nypd-officer-to-boy-read-in-court-alleged-grooming-tactics-detailed.html. SILive, November 26, 2024. Last visited, June 27, 2025.

[12] *Ex-NYPD Cop Convicted of Using Position to Sexually Abuse Young Boys*. Available at https://www.nydailynews.com/2024/11/22/ex-nypd-cop-convicted-using-position-sexually-abuse-young-boys/. *New York Daily News*, November 22, 2024. Last visited, June 27, 2025.

[13] *Ex-Cop Convicted of Exploiting and Assaulting Minors*. Available at https://brooklyneagle.com/articles/2024/11/26/ex-cop-convicted-of-exploiting-and-assaulting-minors/. Brooklyn Eagle, November 26, 2024. Last visited, June 27, 2025.

These aspects of supervision will significantly curtail Mr. Terranova's freedom of movement and impose substantial restrictions on him. The loss of freedom, whether it be 15 years in prison or lifetime supervision, provides a great deterrent effect for possible future offenders. Additionally, the likelihood that Mr. Terranova will reoffend is minimal. Accordingly, Mr. Terranova submits that concurrent sentences are sufficient but not greater than necessary to provide for adequate deterrence.

Considering Dr. Krueger's evaluation, Mr. Terranova asks the Court to impose concurrent sentences so that he can complete his journey toward rehabilitation and redemption while still a relatively young man. Mr. Terranova's family has been deeply supportive and will aid Mr. Terranova's re-entry into society. Ms. Joanne Albarano, Mr. Terranova's closest friend, writes about the accountability and effort Mr. Terranova will have to dedicate toward facing the consequences of the immediate offenses.

> His loss of his entire life savings for lawyers and his appeal has been the least of the toll this mistake has taken on him. I know my best friend, the financial toll is not the concern. It's his reputation, his confidence, his loss of relationships and respect that he will never forgive himself for. It's the disappointment he faces from his loved ones, which he knows he will spend the rest of his life trying to regain.

Ms. Joanne Albarano Support Letter (Exhibit 16)

As such, sentencing Mr. Terranova to concurrent sentences and a lifetime of supervised release will afford sufficient deterrence.

21

## CONCLUSION

For the foregoing reasons, the Court should sentence Mr. Terranova to concurrent sentences of 15 years and 10 years followed by a lifetime sentence of community supervision.  Thank you.

Dated: June 26, 2025
     New York, NY

Respectfully submitted,

Varghese & Associates, P.C.
     /s/

By:   Vinoo P. Varghese

*Counsel for Mr. Christopher Terranova*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

23 cr. 516 (KAM)

CHRISTOPHER TERRANOVA

Defendant.

**EXHIBIT LIST**
1.    Dr. Krueger Report
2.    Ms. Regina Ferretti Support Letter
3.    Ms. Gina Bruno Support Letter
4.    Ms. Susan Albarano Support Letter
5.    Ms. Nicole Albarano Support Letter
6.    Ms. Nicole Appice Support Letter
7.    Ms. Gianna Bruno Support Letter
8.    Mr. Peter Martino Support Letter
9.    Ms. Destinee German Support Letter
10.   Mr. Craig Matthies Support Letter
11.   Ms. Anna Bappoo Support Letter
12.   Ms. Marilyn Mackhan Support Letter
13.   Ms. Gina Matthies Support Letter
14.   Ms. Jaqueline Martino Support Letter
15.   Mr. John Malczewski Support Letter
16.   Ms. Joanne Albarano Support Letter